ORIGINAL

FILED ___ RECEIVED
ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

APR 2 8 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY_____ DEPUTY

1  Ralph Stephen Coppola
   4785 Rio Pinar Drive
2  Reno, NV 89509
   Pro Se
3  775 827 2344

4

                    UNITED STATES DISTRICT COURT
5                    DISTRICT OF NEVADA - RENO

6  RALPH STEPHEN COPPOLA,          )   CASE NO.:    3:2011cv00074
              and                  )   DEPT. NO.:
7  DOES I to XX,                   )
          Plaintiffs               )        FIRST AMENDED
8                                  )   COMPLAINT FOR DAMAGES
              vs.                  )
9                                  )
   DARREN K. PROULX, LAND          )
10 RESOURCE INVESTMENTS,           )
   INC., LAND RESOURCE             )
11 MANAGEMENT, INC., and           )
   MARINA COMMERCIAL OFFICES, LLC) )
12            and                  )
   DOES I to XX,                   )
13        Defendants               )
   -----------------------------------

14 Comes now Plaintiffs, in the above captioned case, who allege:

15                    GENERAL ALLEGATIONS
                    (FOR ALL CAUSES OF ACTION)
16
    1.  Plaintiff Ralph Stephen Coppola  ("Coppola") is a resident of Nevada, residing in Reno,
17
        Washoe County, Nevada, and venue for this action should be in said county.
18
    2.  Plaintiff Coppola Enterprises, LLC ("CELLC") is a Nevada limited Liability Company.
19
    3.  Plaintiff Coppola is uncertain as to the true identities and capacities of Plaintiffs named
20
        herein under the fictitious names of Does I through XX, and Plaintiff Coppola will amend
21
        this complaint when the same is ascertained.  Plaintiff Coppola is informed and believes,
22
        and on such basis alleges, that Plaintiffs Does I through V may have similar federal
23
        unregistered securities claims, securities advertising claims, and securities fraud claims,
24
        and other related claims, against Defendants Darren K. Proulx ("Proulx"), Land Resource
25
        Investments, Inc. ("LRI") and Does IV through XX (all jointly referred to herein as the
26
        "Selling Defendants," and, if the context so provides,  singularly, as the "Selling
27
        Defendant") on the basis set forth below, with the resulting damages to them herein
28
        alleged.

                                        -1-

4. One or more of Plaintiffs Does I through XX is or are residents of California, and states other than Nevada.

5. Defendant Proulx who, upon information and belief and therefore it is alleged, is a resident of Nevada, and that he resides in Sparks, Washoe County, Nevada, and venue for this action should be in said county.

6. Defendant LRI is a California Corporation, California Entity Number C2134278, doing business primarily in California, although the primary office of which is located in Sparks, Washoe County, Nevada, and venue for this action should be in said Washoe County, and the agent for service of process is Defendant Proulx, 325 Harbour Cove Drive, Suite 211, Sparks, NV 89434.

7. Defendant Land Resource Management, Inc. ("LRM") is a Nevada Corporation, Nevada Business ID NV 20051725983, doing business in and the primary office of which is located in Sparks, Washoe County, Nevada, and venue for this action should be in said county, and the agent for service of process is Defendant Proulx, 325 Harbour Cove Drive, Suite 211, Sparks, NV 89434.

8. Defendant Marina Commercial Offices, LLC. ("Marina") is a Nevada Limited Liabilty Company, Nevada Business ID NV 20071091794, doing business in and the primary office of which is located in Sparks, Washoe County, Nevada, and venue for this action should be in said county, and the agent for service of process is Defendant Proulx, 325 Harbour Cove Drive, Suite 211, Sparks, NV 89434.

9. Plaintiff Coppola is uncertain as to the true identities and capacities of Defendants sued herein under the fictitious names of Does VI through XX, and will amend this complaint when the same is ascertained.  Plaintiff is informed and believed, and on such basis alleges, that Defendants Does VI through XX, contributed in some fashion and manner to the actions and damages herein alleged.

10. Upon information and belief, and therefore it is alleged that, Defendants, and each of them, were and are the agents, servants, representatives, employees and/or co-conspirators of each of the other Defendants herein, and were at all times acting within

the course and scope of such agency, representation, employees and/or co-conspirators and with the permission and consent of each of said Defendants.

11. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Defendants, including Does V1 through XX , inclusive, were, at all times herein mentioned, acting in concert with, each and every one of the remaining Defendants.

12. Wherever appearing in this complaint, each and every reference to Defendants and to any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them, named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise specifically qualified.

13. Selling Defendants were or still are in the business of selling to investors "LandBank" interests consisting of undivided Investments ("Investments or an "Investment, as the context requires).

14. Plaintiff Coppola purchased an Investment from Defendant LRI in a LandBank entitled LandBank 008 during early 2010.

15. The Selling Defendants describe LandBanking generally as "the process of buying and then holding real estate located in the path of urban growth for future sale."  LRI is engaged in a business that it characterizes as "making LandBanking available to the average person."

16. LRI purchases or options real estate that is typically used for farming, and which is located outside a major metropolitan area in California.  Upon information and belief, and therefore it is alleged that to date all subject real estate properties have been located in Lancaster, California which is located approximately sixty miles from downtown Los Angeles, California.  Such real estate is then either further subdivided into sellable parcels or marketed by itself.   The marketed real estate shall be referred to as a "Property."

17. During the late 1990's, Defendant Proulx , who, upon information and belief, and thereupon it is alleged is, the current CEO and sole shareholder of both Defendants LRI and LRM, was a builder who did work on occasion for Richard "Dick" Ramsey ("Ramsey"). At some time during or before 1999, Ramsey incorporated Land Resource Concepts, Inc.

-3-

("LRC").  In 1999, the California Department of Real Estate ["DRE"] issued a Public Report to LRC allowing LRC to subdivide property located in California into a subdivision consisting of equal undivided interests (each such undivided interest is an "Investment"). Shortly thereafter, Ramsey sold LRC to Proulx.  Thereafter LRC was renamed LRI.

18. Upon information and belief, and thereupon it is alleged, that as of the time of fling, LRI has sold to more than 1,400 individual Investors holding approximately 2,000 Investment interests in approximately 17 projects.

19. Even though the character of the instrument that is given to the Plaintiffs is that of a grant deed, the terms of the offering, the expertise held out by the Defendants, the promises of work to be done by the Defendants, the plan of distribution, and the economic inducements held out to the Plaintiffs create a security instrument.

20. Proulx and LRI ("Selling Defendants") did not as a practical matter offer naked grant deeds.  The offer made by the Selling Defendants included economic inducements of the LandBank.  The Selling Defendants promised that the Plaintiffs will receive a piece of property that the Plaintiffs have researched to insure is in the path of near-term growth. Selling Defendants promised the Plaintiffs that they would not have to manage the property, but that, rather, that Defendants would make the management decisions, by having Proulx be the president of each and every Association.  Defendants promised that the Plaintiffs were making an investment, and that such investment would be only for a three to five year period to minimize the expense of Association dues and ensure that the Plaintiffs made "a lot."

21. Further,  which it then offers for sale (the "Real Estate Sale") to third party individuals and entities ("Potential Investors").  Selling Defendants represent that by purchasing an Investment, individuals are able to participate in LandBanking a much larger piece of real estate than they might otherwise be able to afford based solely upon their individual buying power.

-4-

22. Upon information and belief, and thereupon it is alleged, that such Investments are sold pursuant to public reports issued by the California Department of Real Estate, and, on and after late 2009, but not before, under an exemption from registration under Nevada Law.

23. Upon information and belief, and thereupon it is alleged, that no such Investment is sold pursuant to either a registration with the Securities and Exchange Commission or under and exemption from registration.

24. Upon information and belief, and thereupon it is alleged, that no such Investment is sold in compliance with California's securities laws.

25. Upon information and belief, and thereupon it is alleged, that the advertising of such Investments does not comply with the requirements of federal law for the advertising of securities.

26. Upon information and belief, and thereupon it is alleged, that the advertising of such Investments does not comply with the requirements of California law for the advertising of securities.

27. Upon information and belief, and thereupon it is alleged, that prior to late 2009, the sale of such Interests in Nevada was without compliance with Nevada's subdivision laws.

28. Upon information and belief, and thereupon it is alleged, that no such Investment is sold in compliance with Nevada's securities laws.

29. Originally LRC and then LRI both sold the Investments to the Investors, and then, after the close of escrow for each Property, also managed the respective corporation created by LRI to manage each respective Property and the Investors who hold Investments in such Property (such corporations shall be referred to as an "Association," or jointly as "Associations").

30. Upon information and belief, and therefore it is alleged, that the Associations include but may not be limited to the following (with date of incorporation in California set forth in parenthesis): Cal Land Resources I Association, Inc. (03/02/1999), California Land Resources II Association, Inc. (03/02/1999), Cal Land Resources III Association, Inc. (03/02/1999), Cal Land Resources IV Association, Inc. (03/22/2001), Cal Land Resources

V Association, Inc. (03/22/2001), Cal Land Resources VI Association, Inc. (03/22/2001), Cal Land Resources VII Association, Inc. (03/22/2001), Cal Land Resources VIII Association, Inc. (01/12/2004), Cal Land Resources IX Association, Inc. (01/12/2004), Cal Land Resources X Association, Inc. (01/12/2004), Cal Land Resources XI Association, Inc. (01/12/2004), Cal Land Resources 033 Association, Inc. (09/28/2005), Cal Land Resources 034 Association, Inc. (09/28/2005), Cal Land Resources 008 Association, Inc. (12/08/2005), Cal Land Resources 1011 Association, Inc. (12/08/2005), Cal Land Resources 027 Association, Inc. (01/25/2006), Cal Land Resources 073 Association, Inc. (04/04/2007), Cal Land Resources 1718 Association, Inc. (10/10/2007 ~ Dissolved), Cal Land Resources 1920 Association, Inc. (10/10/2007 ~ Dissolved), Cal Land Resources 009 Association, Inc. (04/04/2008).

31. Plaintiff Coppola is the attorney for each and every above-named Association.

32. In approximately 2010, LRM commenced management of the Associations, from LRI.

33. LRI adopts and records certain Covenants, Conditions and Restrictions ("CC&Rs") that are appurtenant to a Property. LRI then applies to the California Department of Real Estate ("DRE") for permission to subdivide a Property into an undivided interest real estate subdivision consisting of all the Investments which constitute a Property. LRI files appropriate application documentation with the DRE seeking authority from the DRE to sell the Investments; when the application is approved, the DRE issues a Public Report authorizing the sale of the Investments. LRI acts as an incorporator and files Articles of Incorporation for a California Non-Profit Mutual Benefit Corporation (an Association"); the purpose for each Association is to allow the purchasers of the Investments a mechanism for them to coordinate the management of all Investments which constitute each Property. As the incorporator of each Association, LRI adopts bylaws for such Association. California licensed real estate brokers sell the Investments to third parties and the proceeds from such sales are deposited into a licensed escrow until 60% of the Investments in a Property are sold, at which time there is a close of escrow. From 2009 and thereafter, the 60% threshold was lowered. After the first close of escrow there are

subsequent closes of escrow as additional sales are achieved for each Property, until 100% of the Investments for that Property have been sold). Upon a close of escrow, each purchaser of an Investment ("Investor") in that escrow receives a separate grant deed to such Investor's Investment, which is guaranteed by a standard CLTA policy of title insurance.

34. Upon information and belief, and thereupon it is alleged, that historically, the average price to purchase an Investment has been in the $5,000 to $20,000 range, although the Investments for the initial Properties sold for less, resulting in gross initial investment from the Investors and gross proceeds to the Selling Defendants of approximately $14,000,000.00 to $20,000,000.00.

35. By virtue of the CC&Rs, each Investment includes one membership interest in the respective Association. The Investors use the respective Association to provide and coordinate certain services such as paying property taxes, buying insurance, paying for accounting and tax services, keeping a Property free of weeds, leasing the Property and determining if and when to sell a Property. The owners are responsible to pay a pro-rata share of the dues of the Association. The CC&Rs specifically preclude the Investors, respective Association, or any other party from developing or improving a Property in any way, or from otherwise enhancing a Property's value. It is strictly to be held in the same condition that existed as at the time of acquisition from LRI. However, in the case of one LandBank, LandBank III, after holding the parcel for a few years, 100% of the Investors voted to change the bylaws and CC&Rs to allow for seeking final map status.

36. Each Association provides an organizational structure for the Investor to sell the entire Property (i.e. sixty percent of the Investors may elect to sell the entire Property) rather than just their individual Investment.

37. The Association for each Property is theoretically independent of the Associations for each other Property, but in practice they have been jointly managed by the Managing Defendants, with the exception of a Property known as Land Bank III, which has required and received additional separate management.

-7-

38. Historically, all of the Associations have retained LRI to manage the Properties and Associations, such as the collection of dues, the payment of property taxes and the planning of the annual meetings; however, the are theoretically free to engage any entity to perform such functions or to perform them "in house," but in practice, Defendant Proulx so controls the voting that there has not been a change away from his companies as managers.

39. LRI, as incorporator of each Association, adopts the original Bylaws for each Association. As set forth in Section 1.21 of the Declaration of Covenants, Conditions and Restrictions ("CC&Rs), and incorporated into the Bylaws, Section 1.4 of the Bylaws, the Members of Record of the Association consist of "any person, firm, corporation or other entity in which title to a Property Interest is vested as shown by the Official Records of the Office of the County Recorder."

40. While LRI time of the final closing for a Property, LRI has sold all Investments to third parties and so owns no interest in a Property, in practice, after close of escrow, LRI, as a beneficiary of a mortgage, reacquires a Investments through foreclosure when an Investor has failed to make their monthly payment as outlined in the purchase promissory note. After the close of escrow for a Property, the Members may amend the Bylaws (Section15.4).

41. "Subject to the provisions of the California Nonprofit Mutual Benefit Corporation Law, and applicable Regulations of the [DRE] and any limitations contained in any of the Governing Documents relating to action required to be approved by the Members, the business and affairs of the Association shall be vested in and exercised by, the Association's Board of Directors." (Section 7.1). The "Board may delegate the management of the activities of the Association to any person or persons, management company or committee, provided that notwithstanding any such delegation the activities and affairs of the Association shall continue to be managed and all Association powers shall continue to be exercised under the ultimate direction of the Board." (Section 7.1). The Board may "[a]ppoint such agents and employ such other employees, including

attorneys and accountants, as it sees fit to assist in the operation of the Association, and to fix their duties and to establish their compensation." (Section 9.1(c)).  "The Board may, from time to time, employ the services of a manager to manage the affairs of the Association and, to the extent not inconsistent with the laws of the State of California, and on such conditions as are otherwise deemed advisable by the Board, the Board may delegate to the manager any of its day-to-day management and maintenance duties and powers under these Bylaws and the Declaration, provided that the manager shall at all times remain subject to the general control of the Board." (Section 15.1).

42. However, in practice Defendant Proulx has acquired at least one Investment in each Property and until the shareholders meeting held in 2009, had been the sole president of each Association and controlled the Directors of each Association.

43. As required by California subdivision law, LRI suggests the first budget for each Association which is attached to the Application filed with the DRE.  Thereafter, each Board adopts a budget for its respective Association and assessments are made of the Members.  (Sections 9.1(k), 12.5(a)).  However, in practice, it is the Managing Defendants who historically have determined each budget.

44. The CC&Rs were adopted "in furtherance of a plan established for the purpose of holding, for eventual resale, of a Property and a Property Interests." (Introductory provisions of CC&Rs).  The following CC&R Sections are particularly relevant:

45. Section 2.1(c), entitled, No Use or Occupancy of Property, provides, that "[d]uring the term of this Declaration, no Member, other than Declarant, shall be entitled to use or occupy the Property for any purpose, including, but not limited to listing or stating the address of the Property as the address of any Member for any purpose whatsoever. It is the intent of Declarant and the Association that the Property shall be purchased and held by the Association and the Members solely for the purpose of holding the Property for at least the Initial Determination Period and then offer the Property for sale to an unrelated third party or parties. The future sale of the Property shall be as described in the By-Laws of the Association."

46. Section 3.1, entitled, <u>Purposes and Powers</u>, "[t]he Association is formed to provide a mechanism to acquire the Property, assess the Members the requisite amounts to maintain the Property and pay the real estate taxes and assessments. The Association shall have neither power nor authority to improve the Property or to develop the Property."

47. Each purchaser of a Interest receives a traditional grant deed evidencing the ownership of a Investment in a Property.  Each grant deed is recorded with the county upon close of the purchase escrow.  Each grant deed gives the Association an irrevocable power of attorney with regard to purchaser's Investment.  The purpose of the irrevocable power is to allow for an orderly and timely transfer of ownership of 100% of the Investments in a particular Property upon the vote of the super majority of members to sell.

48. A Property is generally leased as farm real estate after LRI's purchase.  The initial lease is for five years at ONE DOLLAR ($1.00) <u>per year</u> with options to extend on a yearly basis thereafter.  After the fifth year, the lease may be terminated if a Property is sold by an Association, but the tenant has certain rights to complete its operations for a given year.

49. The primary purpose of the leasing of a Property was represented as to shift the burden of weed abatement and insurance from the owners to the farmer.

50. An undisclosed purpose of the leasing of each Property was to reduce the purchase price of the Property on the part of Defendants, thereby reducing the value of the Property to the Investors (because it was encumbered by a long-term lease) and increasing the profit to the Defendants because by encumbering the Property to the favor of the sellers, the sellers would sell it for less to the Defendants than the sellers otherwise would.

51. Undisclosed to the Investors was that the lease terms of the leases made each such Property less desirable to potential purchasers of the Property.

52. California laws and regulations require purchasers of an Investment be afforded an opportunity to read the Public Report issued by the DRE for a Property.  While the Public Report is provided by the DRE, by law it is neither a recommendation nor endorsement of the subdivision by the DRE; rather, it is for information purposes only.  The Public Report

is a summary of the material terms and conditions of the offer and sale of the Investments by LRI (the "Offering").

53. The Public Report for each Property contains, in a section entitled "Special Notes," discloses that a Property is undeveloped raw real estate and that "no representations may be made by subdivider or agent that a Property has investment merit, future appreciation potential or may be used for any purchase." It cautions potential buyers that a Property may be difficult to resell without proper marketing, that there may be competition with other undivided interest owners when the time to sell arrives, and that the 60% approval required to sell the real estate may be difficult to reach. The Public Report, however, does not contain most of the disclosures that would be required of a security offering.

54. The Public Report also informs potential buyers of their legal right to rescind the offer within three calendar days of signing the offer to purchase as provided by California law. It goes on to inform buyers that they will become members of the respective Association upon purchase and that the Profit Association will assess each Investment based on the budget prepared by LRI and submitted to the DRE as part of LRI's seeking authorization through the issuance of a Public report to sell the Investments. The Public Report notes that a Investment is subject to CC&Rs (discussed above).

55. The Selling Defendants utilized web sites maintained by third party agents. The material on such sites was not approved by any governmental agency and did not disclose that such site(s) was being maintained in order to drive sales to LRI. Such sites offered or promised profits or represented investment merit.

56. While the Selling Defendants utilized newspaper ads, radio ads and other forms of advertising, the great majority of sales occurred through word of mouth advertising which was then used to funnel potential Investors to dinner seminars at which the Investments were pitched.

57. As a means of promoting the dinner seminars, during the majority of Selling Defendants' history, LRI utilized what is known as the "Five Star Program" by which persons who had

purchased Investments, and thereby become Investors, were eligible to receive referral fees for referring an acquaintance to LRI if that acquaintance actually closed escrow on an Investment. The Five Star Program could pay several thousand dollars for such a referral.

58. Until approximately 2008 representations made to potential Investors explicitly included such representations as that the projects were a "proven plan of real estate investment" and having a "high future profit potential."

59. On April 29, 2008, The Department of Real Estate filed a complaint against LRI and its former attorney, now deceased, George R. Kucera, of advertising "between April 11, 2006 and on or about August 31, 2007," that included representations of the Subdivision being a "proven plan of real estate investment" and having a "high future profit potential," which advertising was "false and misleading," and constituted the substantial misrepresentation of material fact." Upon information and belief, and thereupon it is alleged, that such time period was the time period during which LandBank 008 was for sale.

60. Upon information and belief, and thereupon it is alleged, that LRI was also accused of causing "to be published advertisements which included statements or representations that the [California Department of Real Estate] gave approval to [LRI] to sell said Subdivision [LandBank 008 - Avenue "I" and 65th Street East]."

61. On July 17, 2008, the California Department of Real Estate filed against LRI an Order to Desist and Refrain from "causing to be published advertisements which include statements or representations which are false, misleading or deceptive in violation of Section 11022 of the Code."

62. Effective on March 24, 2009, the matter was resolved by a Stipulation and Agreement which contained an Order of the Real Estate Commissioner whereby all "licenses and licensing rights of Respondent [LRI ...] are suspended for a period of sixty (60) days" . . . but allowing for a buyout of the suspension and imposing a two year probation.

63. Upon information and belief, and thereupon it is alleged, that from and after 2008 Selling Defendants changed their public advertising to conform to the requirements of their real estate and subdivision licensing.

64. However, upon information and belief, and thereupon it is alleged, that from and after 2008 Selling Defendants also maintained a parallel and guarded advertising program that was shown only to certain trusted associates of LRI and potential purchasers of Investments.

65. Upon information and belief, and thereupon it is also alleged, that from and after some date in the 1990s, through the current date, Selling Defendants allowed certain salespeople and their associations to maintain websites not utilizing the name of the Selling Defendants, but which contained advertising material that was either or both prohibited by the California Department of Real Estate or which would constitute advertising of a security, and which were used to reach a broader audience and then funnel prospective purchasers to Selling Defendants.

66. Upon information and belief, and thereupon it is alleged, that as late at February 29, 2009, the Selling Defendants ran radio advertisements in which Defendant Proulx stated that the public reports allow a "unique ownership investment," that investors could make great profits in LandBanking, that an investment in land can result in impressive profits for the savvy investor and that the objective of LandBanking is appreciation in value of the land, all for the purposes of monetary gain by investors.

67. Upon information and belief, and thereupon it is alleged, that as late at February 29, 2009, the Selling Defendants ran video advertisements in which it the overriding theme is that Defendant LRI operates its LandBanking business so that purchasers of interests are investors, and that the purpose of investing in such business is to realize profit or appreciation, since "LandBanking is all about investment."

68. Upon information and belief, and thereupon i is alleged, that as late as May 18, 2010, the Selling Defendants had a secret website and video webinar, kept secret from most of Selling Defendants' employees, including its attorney, that stated the path of an  urban

area's growth can be verified, that inferred that the LandBanks were within a fast-growing city's sphere of influence, that the LandBanks were located within an "eyeshot" of new development, that the LandBanks were located witin "servicable, functional and practical distance to sewer and water lines,"  that the CC&Rs provide for the distribution of "profits," that "[a]ll profit is distributed to owners on a pro-rata basis," that the potential profit is "357%," and that, finally, the way you "participate" is to acquire an Investment from Selling Defendants, either by cash, 1031 exchange or eligible rollover.

69. Upon information and belief, and thereupon it is alleged, that in making sales, specifically including sales for LandBank III, the Selling Defendants presented that the land in Lancaster (where the Properties are located) would be a very productive "investment," because it was a developing expanding place, and that it is "it is best to buy 'now' so that it could be sold for the most profit."

70. Upon information and belief, and thereupon it is alleged, that in making sales, specifically including sales for LandBank III, the Selling Defendants assured potential investors that the cumulative dues from the Associations would not be significant (and hence dues would not significantly reduce profit) because, although the Properties should be held 'at least for 3 years, the most they would be held for was 5 years prior to sale for a profit.'

71. However, contrary to such assertions, upon information and belief, and thereupon it is alleged, that Defendant Proulx consistently prevented the sale of any Property, generally stating that "it was not the right time," all for the purpose of continuing Defendant Proulx's income from managing the Associations and publishing his newspaper for which he charged the Associations. Purchasers were not left to their own devices for realizing upon their rights, but rather could rely on Darren K. Proulx, as president of the Associations, to manage the Investments.  While purchasers were told that the associations could not develop the property, they were also told about the develpment of LandBank III as something that they could chose to do later.

72. Upon information and belief, and thereupon it is alleged, that at the time of the sale, the Selling Defendants, and, thereafter, the Defendant Proulx,  consistently assured potential

-14-

purchasers of the Investment that he would manage the property so that they would not have to worry about its management or management decisions.

73. While the form of what Plaintiffs received may have been a grant deed, the economic reality is that the CC&Rs attached to the grant deed created a security that constituted no more than the imposition of the unsubstantial, unlawful and fraudulent stock and investment scheme of the Defendants.  Even though the arrangement was uncommon and irregular, it was still designed by the Defendants to use the money of the Plaintiffs for the benefit of the Defendants on the promise of profits to the Plaintiffs.

74. The funds raised by the Defendants from the Investors are raised for a business venture or enterprise; (2) the transactions are offered indiscriminately to the public at large, with over 1,400 Investors to date; (3) the Investors are substantially powerless to effect the success of the enterprise; and the Investors' money is substantially at risk because it is inadequately secured.

75. An ongoing business enterprise exists.  The capital that is used to conduct operations of the Association (i.e. pay taxes, insurance, accounting, etc.) is not part of any initial purchase of the Investments..  Rather, each of the Associations creates a budget and assesses members for their pro rata share of expenses.  An individual Investor is powerless by himself or herself to affect the amount of dues that are imposed.

76. Upon information and belief, and thereupon it is alleged, that It was the reasonable understanding of the Investors who acquired interests prior to  some time in 2009 and a significant number of those who acquired Investments thereafter ("Most Investors") that a valuable benefit of some kind over and above the naked purchase of the Investment would accrue to the such Plaintiffs as a result of the operation of the enterprise.

77. That enterprise was anticipated to consist of the joint enterprise of the Associations and LRI (subsequently superseded by LRM).

78. The Investors who purchased the Investments were led by the Selling Defendants to expect a valuable benefit over and above the initial value that the Investors supplied to acquire their Investment (i.e. profits), and this expectation comes from the Selling

Defendants' representation that it would be as a result of the operation of the enterprise by the Associations with Defendant Proulx at the helm. Defendant Proulx promised that his efforts would be undeniably the significant ones in managing the Associations.

79. As stated, many of the Properties derive yearly lease income from a lease with a "farmer," which in fact is a major national carrot producer, which "farmer," sold the land to the Defendants in the first place.

80. Proulx repeatedly represented that each Association, even though each is a non-profit entity, could distribute profits from their operations to its members pursuant to California law.  This is untrue since the Associations are California mutual-benefit non-profit corporations.

81. Each individual Investor holds very little power in the operation of the Associations, if any, and even a plurality of investors fails to hold power. The reason is that actions by the Investors require a majority vote or super-majority vote. Proulx, as the owner of the Managing Defendants, and as the self-proclaimed expert in LandBanking, controls the vote. This control of the vote is further cemented by the fact that the majority of the Investors give their voting proxy to Proulx, who then votes the majority of the shares. All issues are already voted on and determined by Proulx prior to any Investor meeting.

82. For a majority of the period of time, under the bylaws and CC&Rs, LRI also had the legal authority to make any and all decisions even after the final close of escrow on the Investments due to the fact that at the time of purchase by the Majority Plaintiffs, LRI had the right to control the board and named Proulx as the President of each Association until 2009. Proulx was not voted in as President at the Investor meetings held in 2009 and 2010, but Proulx still effectively chose who would run for the boards, and, by controlling the majority of the votes through proxies, effectively solely determined who would be on the boards and in which offices.

83. Even after the relationship between the Managing Defendants and the Associations was suppose to have changed, in 2009, from managing the Investments to only providing ministerial functions for the Associations, there actually was no change in the

-16-

management of the Associations.  Proulx continued to make all decisions.  For example, with respect to the leases of the Properties, all of the leasees were contacts of Proulx. Prior to any contact with any board or board member, Proulx would make all the arrangements, discussions and negotations concerning the leases, and then would contact the board for a pro-forma vote.  Another example is that Proulx decided he wanted the attorney for the Associations removed.  Proulx then solicited support from the Board members and suggested that it was in their best interests to vote to remove the attorney for the Associations.   This dramatically demonstrates management function by Proulx and power of Proulx, rather than the his exercising a mere ministerial duty

84. The Investments, while represented by a grant deed, actually have little value but for their constituting a general intangible interest in the general assets of the venture or enterprise.  For example, if the property taxes on the Property are not paid, even thought the individual Investor may have paid that investor's Association dues, the entire Property may be sold by the county for unpaid property taxes and the individual Plaintiff will thereby lose that Plaintiff's entire Investment due to the failure of other investors to pay their Association dues.  This, in fact, did almost happen, but for the actions of the Managing Plaintiffs to loan the Association(s) the money to pay the taxes.

85. Therefore, the success or failure of each Investment is directly related to the perception of the other investors as to whether to pay their Association dues.

86. Inasmuch as the purchasers of an Investment in the Property cannot use or consume the real estate [and are, in fact, precluded from doing so], it can only be presumed that the purchase of an Investment is for investment purposes.  In the LRI offering, there is an enterprise common to an investor and the seller or promoter, as the fortunes of the Investors are interwoven with and dependent on the efforts and success of the promoters, the Defendants.  One or more of the Defendants at all times have continued to own their own Investment in each Property, either as an original purchase held from the first close of escrow for the respective Property, or through taking back an Investment with respect to which the Investor was in default on a purchase mortgage, or otherwise.

Additionally, LRI essentially has an un-seatable right to act as the agent/broker upon the ultimate sale of each Property, should that unlikely event occur. Therefore, the Defendants gain more or lose more depending upon the ultimate disposition of a Property.

87. A common enterprise also exists in this case because there is horizontal commonality (an enterprise common to a group of investors) where each individual investor's fortune is tied to the fortunes of the other investors by the pooling of assets, often combined with the pro-rata distribution of profits. Each Investor <u>must</u> have a membership in the Association for their respective Property, which creates a community of interest among the Association members. Each Investment purchased from LRI by an Investor is pooled among investors for property tax, liability and other purposes, such as the reduction of Association dues for those Properties that are leased. It would be impossible to lease just one Investment; rather, all investments in a Property must be pooled to lease the Property. An Investment is not freely transferable by an Investor at any time without restriction or limitation, because each Investment remains subject to the CC&Rs for that Property, and the ultimate profit of an Investor depends upon whether that Investor sells that Investor's Interest alone, or as part of the disposition of the Property. Each interest is worth less, individually, than if being disposed of with all Interests in a Property to a purchaser of the entire Property. Since Proulx controls the voting, Proulx controls the decisions.

88. Additionally, the Associations creates a pro rata sharing of expenses to maintain the entire respective Property. The Association also creates a pro-rata sharing of profits or proceeds, when the central purpose of the Investment is made: the ultimate disposition of the entire Property. This disposition can occur only if the Investors holding 60% of the. Investments in a Property choose to sell an entire Property.

89. Additionally, the pooling of the Investments, through the CC&Rs and respective Association   does create an enterprise similar to the conduct of a business, such as a manufacturing plant or retail store, because the Investors must meet annual to elect the

Directors who for the next year vote on whether to lease a Property, whether to hold insurance on a Property, whether to pay the property taxes on a Property, and whether to change the CC&Rs so as to permit development of a Property, as happened in the case of LandBank III, and as has been proposed for other Properties.   If the Directors vote to not pay the property taxes, the entire enterprise could be lost to the county even though the individual Investor paid that Investor's dues.

90. Upon information and belief, and thereupon it is alleged, that Proulx has caused most Associations to have reserves far in excess of those reasonably necessary, except for the fact that Proulx intends to develop the Properties at least to tentative tract map, and by having the reserves, it makes it easier to finance the development.

91. The efforts of the Managing Defendants, both as the promoter, seller or manager and potential selling agent of the Properties  are integral to the success of the enterprise, undeniably significant it their provision of essential managerial efforts, and almost inseverable to each Property's ultimate sale, if any, thereby being determinative of the failure or success of the enterprise.   In practice the Managing Defendants chose the location of the Investments, promoted each Property  as having special attributes worthy of purchase, and provided the essential functions of all management and management decisions, even notwithstanding documents later providing otherwise from the 2009 Association meetings, onward.  While the governing documents of the Associations, and the contracts between the Associations and the Managing Defendants, from and after the 2010 Association meetings, provided in print that the Managing Defendants would perform duties that described as "clerical and routine," in fact and practice no changes occurred in the practice of the Managing Defendants providing all significant management functions, whether it was negotiating leases, making all arrangements for Association meetings, choosing the Directors, or contemplating dismissing the attorney to the Associations.  This creates an absolute  association between the profits of the Investors and the efforts of the Managing Defendants.  The significant managerial duties

performed by the Managing Partners have a significant and material impact upon the profits of the investors .

92. Managing Defendants have breached their contracts with the Associations because the contracts specifically limit the power of the Managing Defendants to exercising ministerial type duties and powers; however, Managing Defendants have usurped the power of the Directors and have acted as the managers of the Associations.

93. Managing Defendants have intentionally blocked the sale of the LandBanks so that they can continue to profit from the collection of dues.

94. Managing Defendants have used their control of the proxy mechanisms to set the dues to include amounts that do not benefit the members of the associations but rather solely benefit the Managing Members.

95. The attorney for the Associations is the sole person empowered to make decisions regarding dues collection and foreclosures.  The attorney for the associations has ordered the Managing Members to cease all foreclosure and harassment efforts.

96. Managing Members have breached their contracts with the Associations which provide that the Managing members shall have no decision making ability but rather shall have only ministerial abilities, but rather have used their position to use the threat of foreclosure on behalf of the Associations against the members to force members to pay dues or face foreclosure..

97.  Plaintiff Coppola was hired as an employee on or about November 27, 2008 by Defendant LRI to act as in-house general counsel, and with the expectation that Plaintiff would also act as general counsel for approximately 17 associations ("Associations") formed by Defendant LRI to manage the Interests sold to investors.

98. 10.  Defendants failed to either (1) register the LandBank interest offerings under federal securities laws, and/or (2) disclose the true purpose of Defendants in selling the Interests which was to lock in future revenue from Association dues rather than eventually allowing the investors to sell the LandBanks.

99. Plaintiff Coppola was perceived by Defendants to have a disability which would be subject to employment accommodation under the Americans with Disabilities Act, 42 USC 12111 to 12117.

## FIRST CAUSE OF ACTION
### (Failure to Register (US))
### (Brought By all Selling Plaintiffs against all Defendants)

100.     Plaintiffs incorporate by reference all prior paragraphs of this Complaint (including all paragraphs of the General Allegations and all paragraphs of all preceding causes of action, if any) as if the same were fully set forth herein.

101.     Proulx and LRM ("Selling Defendants") and each of them, participated in the sale of Interests to the general public in violation of the requirements of the US Securities Acts to register such securities as a result of Selling Defendants being "promoters" by their acting as experts in the investment choice, controlling the investments once sold, and deriving continuing profit from the investments.

102.     As a proximate result of the actions of Selling Defendants, Plaintiffs, and each of them, have been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory and punitive damages and legal fees.

## SECOND CAUSE OF ACTION
### (Manipulation and Deceptive Devices (US))
### (Brought By All Plaintiffs Against All Defendants)

103.     Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein

104.     Defendants directly or indirectly, by the use of any means, including instrumentalities of interstate commerce or of the mails, used or employed, in connection

with the purchase or sale of the Interests, manipulative or deceptive devices or contrivances in contravention of the rules and regulations as the Commissioner of the Securities and Exchange Commission has prescribed as necessary or appropriate in the public interest or for the protection of investors.

105.     As a proximate result of the conduct of Defendants as herein alleged, Plaintiffs have incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial, and which include compensatory and punitive damages and legal fees.

### THIRD CAUSE OF ACTION
### (CA SALE OF UNEXEMPTED STOCK)
### (Brought By All California Plaintiffs Against All Selling Defendants)

106.     Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

107.     LRI is an issuer of the Interests which constitute securities under California securities laws.   LRI and Proulx offered such Interests and solicited offers and accepted orders.   Such Interests were sold both at full price and at discount without having obtained an order of exemption pursuant to Subdivision (1) of Section 25000 of the Corporate Securities Law of 1968 of California to persons in California ("California Plaintiffs").

108.     As a proximate result of the conduct of Selling Defendants as herein alleged, Plaintiffs have incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial, and which include compensatory and punitive damages.

### FOURTH CAUSE OF ACTION
### (CA FAILURE TO FILE SECURITIES ADVERTISEMENTS)
### (Brought By All California Plaintiffs Against All Selling Defendants)

109.    Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

110.    LRI is an issuer of the Interests which constitute securities under California securities laws.   Selling Defendents offered such Interests, solicited offers and accepted orders at full price and at discount without having first filed a true copy of each advertisement with the office of the Commissioner at least three business days prior to publication pursuant to Section 25300(a) of the Corporate Securities Law of 1968 of California.

111.    As a proximate result of the conduct of Selling Defendants as herein alleged, Plaintiffs have incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial, and which include compensatory and punitive damages and legal fees.

### FIFTH CAUSE OF ACTION
### (CA FALSE SECURITIES ADVERTISING)
### (Brought By All Plaintiffs Against All Defendants)

.112.    California Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

113.    LRI is an issuer of the Interests which constitute securities under California securities laws.   LRI offered such Interests, solicited offers and accepted orders at full price and at a discount by means of written and oral communications which included untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,  in violation of Section 25401 of the Corporate Securities Law of 1968 of California.

114.     As a proximate result of the conduct of Defendants as herein alleged, California Plaintiffs has incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial, and which include compensatory and punitive damages.

### SIXTH CAUSE OF ACTION
### (CA FAILURE TO FILE REAL ESTATE ADVERTISEMENTS)
### (Brought By All Plaintiffs Against Selling Defendants)

115.     Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

116.     Proulx and the management of LRI provided to its attorney advertising to have approved by the California Department of Real Estate.   The attorney did not know that such advertising was in fact not the actual advertising that was going to be and was used, so that the advertising used was in violation of the public reports issued to LRI for the sale of the interests since the actual advertising used was not pre-approved by the commissioner of Real Estate in violation of California's subdivision laws.

117.     As a proximate result of the conduct of the Selling Defendants as herein alleged, Plaintiffs has incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial, and which include compensatory and punitive damages and legal fees.

### SEVENTH CAUSE OF ACTION
### (CA FALSE REAL ESTATE ADVERTISEMENTS)
### (Brought By All Plaintiffs Against Selling Defendants)

118.     Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

119.     Selling Defendants utilized advertising that made representations in violation of the public reports issued to it for sale of the interests including representations that the Interests were investments, had investment merit, had profit potential, had a specific holding period, had any holding period,  had a profit potential of 357% or more, and other false and misleading advertisements.

120.     As a proximate result of the conduct of Selling Defendants as herein alleged, Plaintiffs have incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial, and which include compensatory and punitive damages.

**EIGHTH CAUSE OF ACTION**
**(Fraud And Intentional Misrepresentation (Interest Sale))**
**(Brought By All Plaintiffs Against Selling Defendants)**

121.     Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

122.     Plaintiffs were induced to purchase Interests upon the representation by Selling Defendants and each of them that the Interests would be ultimately sold at the time of choosing of the Plaintiffs, when if fact it was the intent of the Selling Defendants at the time of sale of each interest to block future sale of the LandBanks and to control the Associations in such manner as would maximize Selling Defendants revenue and future sales.

123.     When Selling Defendants made the above representations, they knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on these representations in the manner herein alleged.  Further, Selling Defendants, and each of them, took affirmative steps to conceal the true facts from Plaintiff.

124.     Plaintiffs, at the time these representations were made by Defendants, and at the time Plaintiffs took the actions herein alleged, were unaware of the falsity of Defendants' representations and believed them to be true.  In reliance on these representations, Plaintiffs were induced to and did purchase Interests from Defendant LRI.

125.     Had Plaintiffs known the actual facts, Plaintiffs would not have purchased the Interests.

126.     Plaintiff's reliance on the representations of Defendants were justified because Selling Defendants represented that they had special knowledge and expertise and held a professional duty under their real estate licenses.

127.     As a proximate result of the fraudulent conduct of Selling Defendants as herein alleged, Plaintiffs has incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial.

128.     The aforementioned conduct of Selling Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Selling Defendants with the intention on the part of the Selling Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship and conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.


### NINTH CAUSE OF ACTION
**(Fraud And Negligent Misrepresentation (Interest Sale))**
**(Brought By all Plaintiffs Against Selling Defendants)**

129.     Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

130.     Plaintiffs allege on information and belief that each of the representations described above was false or misleading when made by Selling Defendants (as described above), was made without a reasonable basis for believing it to be true, and was made

with intent to mislead and deceive Plaintiffs. The representations were made with the intent to induce Plaintiffs' reliance and to purchase and hold the Interests as herein alleged.

131.     Selling Defendants and each of them had a duty to disclose the true information on the grounds that the information was material to the transaction alleged herein. Selling Defendants' failure to disclose these material facts to Plaintiffs, therefore, constitutes fraud and/or negligent misrepresentation.

132.     Had Plaintiffs known of the true facts, that Selling Defendants did not intend to allow the ultimate sale of the Landbanks, Plaintiffs would not have purchased the Interests,, as herein alleged.

133.     As a proximate result of the fraudulent conduct of Selling Defendants and each of them as herein alleged, Plaintiffs have incurred damages in that Plaintiffs were induced to purchase Interests to expend other amounts, all by reason of which Plaintiffs have been damaged in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial.

**TENTH CAUSE OF ACTION**
**(Fraud And Intentional Misrepresentation (Final Map))**
**(Brought By LBIII Plaintiffs Against Selling Defendants)**

134.     Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

135.     Plaintiffs in LandBank III ("LB III Plaintiffs") were induced to give to Selling Defendants additional sums of money by Selling Defendants and each of them upon the inducement that Defendants and each of them had the expertise to bring LandBank III to final map status and that LandBank III could be brought to final map status.

136.     When Selling Defendants made the above representations, they knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs

and to induce Plaintiffs to act in reliance on these representations in the manner herein alleged.  Further, Defendants, and each of them, took affirmative steps to conceal the true facts from Plaintiff.

137.      Plaintiffs, at the time these representations were made by Selling Defendants, and at the time Plaintiffs took the actions herein alleged, were unaware of the falsity of Selling Defendants' representations and believed them to be true.  In reliance on these representations, Plaintiffs were induced to and did purchase Interests from Defendant LRI.

138.      Had Plaintiffs known the actual facts, Plaintiffs would not have purchased the Interests.

139.      Plaintiff's reliance on the representations of Selling Defendants were justified because Defendants represented that they had special knowledge and expertise and held a professional duty under their real estate licenses.

140.      As a proximate result of the fraudulent conduct of Selling Defendants as herein alleged, Plaintiffs has incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial.

141.      The aforementioned conduct of Selling Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Selling Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship and conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

### ELEVENTH CAUSE OF ACTION
**(Fraud And Negligent Misrepresentation (Final Map))**
**(Brought By LBIII Plaintiffs Against Selling Defendants)**

142.     LBIII Plaintiffs re-allege and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

143.     LBIII Plaintiffs allege on information and belief that each of the representations described above was false or misleading when made by Selling Defendants (as described above), was made without a reasonable basis for believing it to be true, and was made with intent to mislead and deceive Plaintiffs. The representations were made with the intent to induce Plaintiffs' reliance and to purchase and hold the Interests as herein alleged.

144.     Defendants and each of them had a duty to disclose the true information on the grounds that the information was material to the transaction alleged herein.  Defendants' failure to disclose these material facts to Plaintiffs, therefore, constitutes fraud and/or negligent misrepresentation.

145.     Had Plaintiffs known of the true facts, that Selling Defendants did not intend to allow the ultimate sale of the Landbanks, LB IIIPlaintiffs would not have purchased the Interests, nor provided the additional funds, as herein alleged.

146.     As a proximate result of the fraudulent conduct of Selling Defendants and each of them as herein alleged, LBIII Plaintiffs have incurred damages in that Plaintiffs were induced to purchase Interests to expend other amounts, all by reason of which Plaintiffs have been damaged in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial.

**TWELFTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**(Brought By Plaintiff Against All Defendants)**

147.     Plaintiff and each of them re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

148.     Defendants through their wrongful conduct as described in this Complaint, have reaped substantial gain from the sale of Interests by them to Plaintiffs, and in so doing has caused Plaintiffs, to suffer substantial monetary losses, all of which damages and costs were not only foreseeable but were the intended consequences of Defendants' collective actions.

149.     Based on the facts as alleged herein and as proven at trial, in equity and good conscience, it would be unconscionable and otherwise unjust for Defendants to enrich themselves at the expense of Plaintiffs.

150.     As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiffs have incurred damages in that Plaintiffs to purchase Interests from Defendants, and to expend other amounts, all by reason of which Plaintiffs have been damaged in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial.

### THIRTEENTH CAUSE OF ACTION
#### (Quantum Meruit)
#### (Brought By All Plaintiffs Against All Defendants)

151.     Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

152.     Defendants have received through their sale and management of the Interests to Plaintiffs an item of value, namely the money expended to purchase the Interests and pay the Association dues, which were not as represented to Plaintiffs.

153.     As a direct and proximate result of the actions and inactions of Defendants, Plaintiffs have been damaged in an amount to be proven at time of trial, but not less than the jurisdictional amount.

## FOURTEENTH CAUSE OF ACTION
### (Racketeer Influenced and Corrupt Organizations (RICCO) Act)
### (Brought By All Plaintiffs Against All Defendants)

154.     Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

155.     Title 18 United States Code Section 1961 to 1968 make it unlawful for a person to manipulate an enterprise in such a way that the owners remain such on paper but all the benefits flow to the defendant.

**156.**     Plaintiff's have been injured by reason of defendants investment and reinvestment of the proceeds of the payment of their purchase price to LRI and their dues to LRM which then allows the defendants to conduct the business of LRI and LRM and to prevent Plaintiffs from selling their properties because defendant Proulx, a person, who is employed by both LRI and LRM, a person engaged in and affected interstate commerce, who manages the enterprise, through a pattern of racketeering activity, including but not limited to securities fraud, effectively controls defendant's properties through control of the proxies, and prevents the sale of defendant's properties while extorting dues from defendant's through threatening foreclosure and improperly initiating foreclosure if defendants do not pay their association dues, which dues create profit for defendants.

## FIFTEENTH CAUSE OF ACTION
### (BREACH OF  WRITTEN AND ORAL AGREEMENTS (LAND SALES))
### (Brought By Plaintiff Against All Defendants)

157.     Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

158.     By written agreement and oral agreements Selling Defendants promised that the respective Landbanks each would be sold during their respective "initial holding

-31-

period(s)."  Each Plaintiff has fulfilled its obligations and complied with any and all conditions and agreements of the contracts.  The "initial holding period" has expired for all landbanks other than one.Defendants have breached the written and oral terms of said contracts.

159.     As a proximate result of the breach of the contract by Defendants, as herein alleged, Plaintiff Coppola has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

**SIXTEENTH CAUSE OF ACTION**
**(Covenant of Good Faith and Fair Dealing (Land Sales))**
**(Brought By All Plaintiffs Against All Defendants)**

160.     Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

161.     In every contract there is implied by law a covenant of good faith and fair dealing by which each party to a contract is beholden to take such further acts are necessary to be taken in good faith to carry out the intent of the parties.

162.     Implied into the contracts between Plaintiffs and Defendants is the implied promise that Defendants would act in good faith and fair dealing with Plaintiff's.  The covenant imposes on Defendants the duty to refrain from doing anything which by any act of his own to refrain from doing anything which would render performance of the contract impossible.

163.     Defendants have breached the covenant of good faith and fair dealing by interfering with the sale of the land owned by the members, interfering with the proper Association voting mechanisms by using voting machines rather than paper ballots at Association meetings, interfering with the relationship between the Association's Boards and the Association's attorney, usurping the role of the Association boards,  and by setting the Association dues too high.

164.     As a proximate result of the breach of the contract by Defendants, as herein alleged, Plaintiff Coppola has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

### SEVENTEENTH CAUSE OF ACTION
(Broker Fraud)
(Brought By Plaintiffs Against All Selling Defendants)

165.     Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

166.     Selling Defendants and each of them are licensed California Real Estate brokers. Plaintiff and each of them purchased real estate interests, the Interests, from the Selling Defendants.

167.     The Selling Defendants, and each of them, knew or should have known that one or more of the representations that the Landbanks would be sold for a profit, that the land banks would be sold during the initial holding period or that the Landbanks would be sold at all were false.

168.     The nondisclosure of such information by the Selling Defendants, and by each of them, was to induce the Plaintiffs to purchase the Interests.  The Plaintiffs would not have purchased the Interests but for the nondisclosures of such information by the Selling Defendants.

169.     As a proximate result of the breach of the contract by Defendants, as herein alleged, Plaintiff Coppola has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

### EIGHTEENTH CAUSE OF ACTION
(Breach of Contract (Associations))
(Brought By Associations Against LRM and Proulx)

170.     Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

171.     Each and every Association has a written contract with LRM that provides that LRM shall provide only "ministerial" duties and that LRM shall have no management authority.  Each Association has fulfilled its obligations and complied with any and all conditions and agreements of the contracts.  Despite the clear and specific limits LRM and Proulx have materially interfered with the management of the Associations and usurped the role of the Boards and thereby breached the contracts with the Associations.

172.     As a proximate result of the breach of the contract by Defendants, as herein alleged, Plaintiff Coppola has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

**NINETEENTH CAUSE OF ACTION**
**(Covenant of Good Faith and Fair Dealing (Against LRM))**
**(Brought By Associations Against LRM)**

173.     Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

174.     In every contract there is implied by law a covenant of good faith and fair dealing by which each party to a contract is beholden to take such further acts are necessary to be taken in good faith to carry out the intent of the parties.  Implied into the contracts between the Associations and LRM is the implied promise that Defendant LRM would not interfere with the proper functioning of the Associations.  Defendant LRM has breached the covenant of good faith and fair dealing by usurping the role of the boards, using voting machines rather than paper ballots and interfering with the role of the Associations attorney.

-34-

175.    As a proximate result of the breach of the contract by Defendants, as herein

alleged, Plaintiff Coppola has been damaged in an amount to be proven at time of trial,

which sum is in excess of the twentieth jurisdictional amount of this Court.

### TWENTIETH CAUSE OF ACTION
#### (Fraud And Intentional Misrepresentation (Against Proulx))
#### (Brought By All Plaintiffs Against All Defendants)

176.    Plaintiff re-alleges and reincorporates each and every allegation contained in the

General Allegations and all previous paragraphs of all previous sections and Causes of

Action this Complaint, inclusive, as though fully set forth herein.

177.    Plaintiff Coppola was given one series of advertising to submit to the California

Department of Real Estate when in Proulx authorized and LRI was using a an additional

series of advertising which violated the terms of the public reports issued to the

LPandbanks because the advertising referred to the purchasers as investors and to

potential profit. Proulx utilized this mechanism so that LRI could "fly under the radar" of

the department of real estate and Proulx could tell potential purchasers that XXX. fact in

LandBank III ("LB III Plaintiffs) were induced to give to Defendants additional sums of

money by Defendants and each of them upon the inducement that Defendants and each

of them had the expertise to bring LandBank III to final map status and that LandBank III

could be brought to final map status.

178.    When Defendants made the above representations, they knew them to be false

and made these representations with the intention to deceive and defraud Plaintiffs and

to induce Plaintiffs to act in reliance on these representations in the manner herein

alleged. Further, Defendants, and each of them, took affirmative steps to conceal the

true facts from Plaintiff. Plaintiffs, at the time these representations were made by

Defendants, and at the time Plaintiffs took the actions herein alleged, were unaware of

the falsity of Defendants' representations and believed them to be true. In reliance on

these representations, Plaintiffs were induced to and did purchase Interests from

-35-

Defendant LRI. Had Plaintiffs known the actual facts, Plaintiffs would not have purchased the Interests. Plaintiff's reliance on the representations of Defendants were justified because Defendants represented that they had special knowledge and expertise and held a professional duty under their real estate licenses.

179.     As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiffs has incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial.

180.     The aforementioned conduct of Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship and conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

### TWENTY FIRST CAUSE OF ACTION
**(Fraud And Negligent Misrepresentation (Against Proulx))**
**(Brought By All Defendants Against Proulx)**

181.     Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

182.     Plaintiff alleges on information and belief that each of the representations described above was false or misleading when made by Defendants (as described above), was made without a reasonable basis for believing it to be true, and was made with intent to mislead and deceive Plaintiffs. The representations were made with the intent to induce Plaintiffs' reliance and to purchase and hold the Interests as herein alleged. Defendants and each of them had a duty to disclose the true information on the grounds that the information was material to the transaction alleged herein. Defendants' failure to disclose these material facts to Plaintiffs, therefore, constitutes fraud and/or negligent

1    misrepresentation.   Had Plaintiffs known of the true facts, that Defendants did not intend

2    to allow the ultimate sale of the Landbanks, Plaintiffs would not have purchased the

3    Interests, as herein alleged.

4    183.      As a proximate result of the fraudulent conduct of Defendants and each of them

5    as herein alleged, Plaintiffs have incurred damages in that Plaintiffs were induced to

6    purchase Interests to expend other amounts, all by reason of which Plaintiffs have been

7    damaged in at least the sum in excess of the jurisdictional amount of this Court, and

8    additional amounts according to proof at time of trial.

9

10                            **TWENTY SECOND CAUSE OF ACTION**
                                      **(VOTING FRAUD)**
11              **(Brought By All Defendants Against  Proulx and LRM)**

12

13    184.      Plaintiff re-alleges and reincorporates each and every allegation contained in the

14    General Allegations and all previous paragraphs of all previous sections and Causes of

15    Action this Complaint, inclusive, as though fully set forth herein.

16    185.      California Civil Code Section 1363.03 sets forth a very specific set of procedures

17    which must be followed, and in particular provides that " [n]otwithstanding any other law

18    or provision of the governing documents, elections regarding assessments legally

19    requiring a vote, election and removal of members of the association board of directors,

20    amendments to the governing documents, ... pursuant to Section 1363.07 shall be held by

21    secret ballot in accordance with the procedures set forth in this section, which requires

22    the use of secret written ballets in envelopes inside envelopes.  Proulx and LRM have

23    violated this provision by using electronic voting machines.  As a proximate result of the

24    breach of the contract by Defendants, and each of them, as herein alleged, Defendants,

25    and each of them,  have been damaged in an amount to be proven at time of trial, which

26    sum is in excess of the jurisdictional amount of this Court.

27

28

186.    As a result of these actions, Proulx and LRM have violated their contract with the Associations and the contract for ministerial services between the Associations and LRM should be immediately terminated.

### TWENTY THIRD CAUSE OF ACTION
### (ILLEGAL ACTION BY DIRECTOR PROXY)
### (Brought By All Defendants Against  Proulx and LRM)

187.    Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

188. California Corporation Code Section 1363.05 requires that board meeting agendas and notice be provided to all members at least thirty days before the proposed meeting. California Corp. Code §7211(c) provides that " [n]o director may vote at any meeting by proxy.  Civil Code Section 1363.05 requires that all community associations are regulated by the "Open Meeting Act" which requires that any member of the association may attend meetings of the baord of directors. Proulx and LRM violated the proceeding laws by advising the associations that they could hold, and by holding, a purported meeting by secret proxy over the course of the latter part of 2010 in which Proulx sought to remove Coppola as the attorney for the associations.

189.    As a proximate result of the breach of the contract by Defendants, and each of them, as herein alleged, Defendants, and each of them,  have been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

190.    As a result of these actions, Proulx and LRM have violated their contract with the Associations and the contract for ministerial services between the Associations and LRM should be immediately terminated.

### TWENTY THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT BY ILLEGAL ACTION BY DIRECTOR PROXY)

**(Brought By All Defendants Against Proulx and LRM)**

191.     Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

192.     California Corporation Code Section 1363.05 requires that board meeting agendas and notice be provided to all members at least thirty days before the proposed meeting. California Corp. Code §7211(c) provides that " [n]o director may vote at any meeting by proxy. Civil Code Section 1363.05 requires that all community associations are regulated by the "Open Meeting Act" which requires that any member of the association may attend meetings of the board of directors.

193.     Proulx and LRM violated the proceeding laws by advising the associations that they could hold, and by holding, a purported meeting by secret proxy over the course of the latter part of 2010 in which Proulx sought to remove Coppola as the attorney for the associations.

194.     As a proximate result of the breach of the contract by Defendants, and each of them, as herein alleged, Defendants, and each of them, have been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

195.     As a result of these actions, Proulx and LRM have violated their contract with the Associations and the contract for ministerial services between the Associations and LRM should be immediately terminated.

**TWENTY FOURTH CAUSE OF ACTION**
**(BRIBERY)**
**(Brought By All Plaintiffs Against Proulx and LRM)**

196.     Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

197.     On or about April 26, 2011, Proulx and LRM offered each person who provided

Proulx with a proxy with a raffle ticket to win an Apple IPAD.

198.     As a proximate illegal action of Defendants, and each of them, as herein alleged,

Defendants, and each of them,  have been damaged in an amount to be proven at time of

trial, which sum is in excess of the jurisdictional amount of this Court.

199.     As a result of these actions, Proulx and LRM have violated their contract with the

Associations and the contract for ministerial services between the Associations and LRM

should be immediately terminated.

200.     As a result of these actions of Proulx and LRM, any vote held with such proxies

should be declared null and void.


## TWENTY FIFTH CAUSE OF ACTION
## (ILLEGAL PROXY)
### (Brought By All Plaintiffs Against  Proulx and LRM)

201.     Plaintiff re-alleges and reincorporates each and every allegation contained in the

General Allegations and all previous paragraphs of all previous sections and Causes of

Action this Complaint, inclusive, as though fully set forth herein.

202.     On or about April 26, 2011, Proulx and LRM jointly solicited proxies on behalf of

Proulx. The soliciation of proxies on behalf of Proulx by LRM violates Cilvil Code Section

1363.03(d)1)(A) which limits proxies to members acting as members and not to

management type companies. Since Proulx is soliciting proxies through his management-

type company he does not have standing to act as a proxy holder.

203.     As a proximate illegal action of Defendants, and each of them, as herein alleged,

Defendants, and each of them,  have been damaged in an amount to be proven at time of

trial, which sum is in excess of the jurisdictional amount of this Court.

204.     As a result of these actions, Proulx and LRM have violated their contract with the

Associations and the contract for ministerial services between the Associations and LRM

should be immediately terminated.

205.     As a result of these actions of Proulx and LRM, any vote held with such proxies should be declared null and void.


## TWENTY SIXTH CAUSE OF ACTION
### (NV SALE OF UNREGISTERED STOCK)
### (Brought By All Nevada Plaintiffs Against All Defendants)

206.     Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

207.     LRI is an issuer of the Interests which constitute securities under Nevada securities laws.  LRI offered such Interests and solicited offers and accepted orders.  Such Interests were sold both at full price and at discount without having either registered such securities or obtained an order of exemption pursuant to Nevada Revised Statute 90.470 to persons in Nevada ("Nevada Plaintiffs").

208.     As a proximate result of the conduct of Defendants as herein alleged, Nevada Plaintiffs has incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial, and which include compensatory and punitive damages.


## TWENTY SEVENTH CAUSE OF ACTION
### (NV FAILURE TO FILE SECURITIES ADVERTISEMENTS)
### (Brought By All Nevada Plaintiffs Against All Defendants)

209.     Nevada Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

210.     LRI is an issuer of the Interests which constitute securities under Nevada securities laws.  LRI offered such Interests, solicited offers and accepted orders at full price and at

discount without having first filed a true copy of each advertisement with the office of the Administrator prior to publication pursuant to Nevada Revised Statute 90.560.

211.    As a proximate result of the conduct of Defendants as herein alleged, Nevada Plaintiffs have incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial, and which include compensatory and punitive damages and legal fees.

### TWENTY EIGHTH CAUSE OF ACTION
### (NV FALSE SECURITIES ADVERTISING)
### (Brought By All Nevada Plaintiffs Against All Defendants)

212.    Nevada Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

213.    LRI is an issuer of the Interests which constitute securities under Nevada securities laws. LRI offered such Interests, solicited offers and accepted orders at full price and at a discount by means of written and oral communications which included untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Nevada Revised Statute 90.570.

214.    As a proximate result of the conduct of Defendants as herein alleged, Nevada Plaintiffs have incurred damages in at least the sum in excess of the jurisdictional amount of this Court, and additional amounts according to proof at time of trial, and which include compensatory and punitive damages.

### TWENTY NINTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### (Brought By Coppola Against Proulx)

215.     Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

216.     Defendant Proulx made false reports to the Sparks Police Department in which he knowingly made the false accusations which he knew to be false that Coppola had broken into premises which Coppola had no right to enter, when in fact Coppola held a valid lease of said premises, that Coppola had used stolen employee keys to enter said premises when in fact such keys were the leasehold keys, that Proulx and his companies had fired Coppola when in fact Coppola had resigned, that Coppola had stolen materials when in fact no materials had been stolen.   Defendant Proulx's behavior was outrageous because making false statements to the police is a crime itself and exceeds the bounds of common decency.  Proulx he knew that plaintiff was susceptible to injuries though mental distress, or because Defendant Proulx acted intentionally or unreasonably with the recognition that the aforementioned acts were likely to result in such conduct of Proulx was outrageous.  Proulx acted with substantial certainty or disregard that such actions could result in mental distress.  Such conduct of Proulx was directed as Coppola.  Proulx's actions were the cause of the mental distress of Coppola which was serious and enduring as Coppola had to worry for several days that he was going to be arrested at any time by the Sparks Police Department.

217.     As a proximate result of the acts of Proulx, as herein alleged, Plaintiff Coppola has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory and punitive damages.

**THIRTIETH CAUSE OF ACTION**
**(Negligent Infliction of Emotional Distress)**
**(Brought By Coppola Against Proulx)**

218.    Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

219.    Defendant Proulx made false reports to the Sparks Police Department in which he knowingly made the false accusations which he knew to be false that Coppola had broken into premises which Coppola had no right to enter, when in fact Coppola held a valid lease of said premises, that Coppola had used stolen employee keys to enter said premises when in fact such keys were the leasehold keys, that Proulx and his companies had fired Coppola when in fact Coppola had resigned, that Coppola had stolen materials when in fact no materials had been stolen.

220.    Defendant Proulx's negligently inflicted emotional distress upon Coppola because Proulx had a statutory duty of honesty  which he knowingly breached by knowingly said making false statements.

221.    Proulx he knew that plaintiff was susceptible to injuries though mental distress, or because Defendant Proulx acted intentionally or unreasonably with the recognition that the aforementioned acts were likely to result in such conduct of Proulx was outrageous.  Proulx acted with substantial certainty or disregard that such actions could result in mental distress.  Such conduct of Proulx was directed as Coppola.    Proulx's actions were the cause of the mental distress of Coppola which was serious and enduring as Coppola had to worry for several days that he was going to be arrested at any time by the Sparks Police Department.

222.    As a proximate result of the acts of Proulx, as herein alleged, Plaintiff Coppola has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.


## THIRTY FIRST CAUSE OF ACTION
### (Covenant of Good Faith and Fair Dealing)
### (Brought By Plaintiff Coppola Against All Defendants)

223.     Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

224.     In every contract there is implied by law a covenant of good faith and fair dealing by which each party to a contract is beholden to take such further acts are necessary to be taken in good faith to carry out the intent of the parties.

225.     Implied into the contracts between Plaintiff Coppola and Defendants is the implied promise that Defendants would not interfere with Plaintiff Coppola's contracts with the Associations.

226.     Defendants have breached the covenant of good faith and fair dealing tortuously interfering in said contracts.

227.     As a proximate result of the breach of the contract by Defendants, as herein alleged, Plaintiff Coppola has been damaged in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court.

### THIRTY SECOND CAUSE OF ACTION
### (Violations of ADA)
### (Brought By Plaintiff Coppola Against All Defendants)

228.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

229.     Defendants and each of them came to believe that Plaintiff Coppola suffered from a health condition which among other sections, Section 12112 of the Americans with Disabilities Act of 1990 ("ADA") would require reasonable accommodation thereof.

230.     In fact, Defendants did not reasonably accommodate Plaintiff Coppola but rather constructively terminated Plaintiff Coppola.

231.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory and punitive damages.

### THIRTY THIRD CAUSE OF ACTION
### (MISUSE OF PROCESS)
### (Brought By Plaintiff Coppola Against All Defendants)

232.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

233.     Defendant Proulx made false reports to the Sparks Police Department in which he knowingly made the false accusations which he knew to be false that Coppola had broken into premises which Coppola had no right to enter, when in fact Coppola held a valid lease of said premises, that Coppola had used stolen employee keys to enter said premises when in fact such keys were the leasehold keys, that Proulx and his companies had fired Coppola when in fact Coppola had resigned, that Coppola had stolen materials when in fact no materials had been stolen.

234.     Such acts of Defendants were a willful misuse of the power of the state with an improper purpose.

235.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory and punitive damages.

### THIRTY FOURTH CAUSE OF ACTION
### (Intentional Interference with Prospective Economic Advantage)
### (Brought By Plaintiff Coppola Against All Defendants)

236.     Plaintiff Coppola re-alleges and reincorporates each and every allegation

contained in the General Allegations and all previous paragraphs of all previous sections

and Causes of Action, inclusive, as though fully set forth herein.

237.     Plaintiff Coppola has an existing business relationship with the Associations with

the probability of future economic benefit.  Defendant Proulx, acting on his behalf and on

behalf of LRI and LRM has engaged in a course of action that has been injurious to such

relationship including obtaining a vote which purportedly removed Plaintiff Coppola as

attorney for the Associations.   Such action by Proulx was based upon slanderous

statements about Coppola's legal abilities.   Proulx intended to interfere with such

relationship between Coppola and the Associations.

238.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be

proven at time of trial, which sum is in excess of the jurisdictional amount of this Court,

and which include compensatory and punitive damages.


**THIRTY FIFTH CAUSE OF ACTION**
**(Negligent Interference with Prospective Economic Advantage)**
**(Brought By Plaintiff Coppola Against All Defendants)**

239.     Plaintiff Coppola re-alleges and reincorporates each and every allegation

contained in the General Allegations and all previous paragraphs of all previous sections

and Causes of Action, inclusive, as though fully set forth herein.

240.     A special relationship existed between Defendants Proulx, LRM and LRI as a result

of the joint relationship between the parties and the Associations.  Plaintiff Coppola has

an existing business relationship with the Associations with the probability of future

economic benefit.  Defendant Proulx, acting on his behalf and on behalf of LRI and LRM

has engaged in a course of action that has been injurious to such relationship including

obtaining a vote which purportedly removed Plaintiff Coppola as attorney for the

Associations.   Such action by Proulx was based upon slanderous statements about

Coppola's legal abilities.  Proulx intended to interfere with such relationship between Coppola and the Associations.

241.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory and punitive damages.

## THIRTY SIXTH CAUSE OF ACTION
### (Violation of Unruh Act)
### (Brought By Plaintiff Coppola Against All Defendants)

242.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

243.     Defendant Proulx, acting in his own capacity and through LRI and LRM intentionally attempted to interfere with and terminate the association between Plaintiff Coppola and the Associations on the basis of Proulx's perception that Plaintiff Coppola belongs to one or more protected classes under the Unruh Act, including but not limited to disability and sexual orientation.

244.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory and punitive damages.

## THIRTY SEVENTH CAUSE OF ACTION
### (Employment Discrimination)
### (Brought By Plaintiff Coppola Against All Defendants)

245.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

246.     Defendant Proulx, acting in his own capacity and through LRI and LRM constructively terminated Plaintiff Coppola due to Proulx's perception that Coppola belonged to one or more protected classes under Nevada law, including but not limited to disability and sexual orientation (*NV. REV. STAT. 233.010(2); 613.330*).

247.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory and punitive damages.

### THIRTY EIGHTH CAUSE OF ACTION
### (RELIGIOUS AFFILIATION)
### (Brought By Plaintiff Coppola Against All Defendants)

248.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

249.     Defendant Proulx, acting in his own capacity and through LRI and LRM required group prayer at employee meetings in violation of NRS 63.330.

250.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory damages.

### THIRTY NINTH CAUSE OF ACTION
### (BREACH OF REAL ESTATE CONTRACT)
### (Brought By Plaintiff Coppola Against Proulx and Marina)

251.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

252.     Coppola Enterprises, LLC ("CELLC") and Coppola, as lessees and Marina Commercial Offices, LLC ("Marina") had a lease agreement whereby CELLC and or

Coppola leased premises from Marina constituting 325 Harbour Cove Drive, the west most approximately 600 sq. feet of Suite 219, Sparks, NV 89434.   CELLC performed fully under such written contract.  Proulx acting on his own behalf, and on behalf of Marina constructively terminated such lease without cause.

253.      By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory damages.

### FORTIETH CAUSE OF ACTION
### (Slander)
### (Brought By Plaintiff Coppola Against all Defendants)

254.      Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

255.      Proulx's oral statements to the Sparks Police Department contained false statements of fact which were not privileged.  Proulx, on his own behalf and on behalf of LRI and LRM,  also made oral statements to the members of the Associations' boards that Coppola should be removed as the attorney for the associations because Coppola's work was substandard and Coppola was unreliable.

256.      By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory damages.

### FORTY FIRST CAUSE OF ACTION
### (Slander Per Se)
### (Brought By Plaintiff Coppola Against all Defendants)

257.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

258.     Proulx's oral statements to the Sparks Police Department contained false statements of fact which were not privileged.  Proulx, on his own behalf and on behalf of LRI and LRM,  made oral statements to the members of the Associations' boards that Coppola should be removed as the attorney for the associations because Coppola's work was substandard and Coppola was unreliable.

259.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory damages.

### FORTY SECOND CAUSE OF ACTION
**(Libel)**
**(Brought By Plaintiff Coppola Against all Defendants)**

260.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

261.     Proulx, on his own behalf and on behalf of LRI and LRM,  also made written statements to the members of the Associations' boards that Coppola should be removed as the attorney for the associations because Coppola's work was not adequate for the needs of the Associations.

262.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory damages.

### FORTY THIRD CAUSE OF ACTION
**(Libel Per Se)**
**(Brought By Plaintiff Coppola Against all Defendants)**

263.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

264.     Proulx, on his own behalf and on behalf of LRI and LRM, made written statements to the members of the Associations' boards that Coppola should be removed as the attorney for the associations because Coppola's work was not adequate for the needs of the Associations.

265.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory damages.

### FORTY FOURTH CAUSE OF ACTION
**(Employer's Breach of Implied Covenant of Good Faith and Fair Dealing)**
**(Brought By Plaintiff Coppola Against all Defendants)**

266.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

267.     Coppola had an oral employment contract with LRI. Implied in that employment contract, is a covenant of good faith and fair dealing by LRI. Proulx, on his own behalf and on behalf of LRI and LRM, utilized Coppola's services to commit securities and real estate violations and other violations of law, all in frustration of Coppola's enjoyment of his contract rights.

268.     By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory damages.

### FORTY FIFTH CAUSE OF ACTION
**(Wages)**

**(Brought By Plaintiff Coppola Against LRI)**

269.     Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

270.     Coppola had an oral employment contract with LRI.  LRI failed to pay Coppola all wages due Coppola.

271.     By their actions, LRI has harmed Plaintiff Coppola in an amount to be proven at time of trial, which sum is in excess of the jurisdictional amount of this Court, and which include compensatory damages.

**PRAYER**

**WHEREFORE**, Plaintiffs pray as follows with regard to each of the above causes of action which may be asserted by the one or more of the various Plaintiffs:

AS TO ALL CAUSES OF ACTION:

1.   For general, specific, exemplary and punitive damages according to proof at time of trial;

2.   For attorneys' fees and costs according to proof;

3.   For interest as allowed by law; and

4.   For cost of suit herein.

5.   For such other and further relief as the court deems just.

Dated:                                                       Wednesday, April 27, 2011


_____
Ralph Stephen Coppola
Plaintiff