1  Robert A. Koenig (NV SBN 3203)
   Ryan Kerbow (NV SBN 11403)
2  ALESSI & KOENIG, LLC
   9500 W. Flamingo, Suite 205
3  Las Vegas, Nevada 89147
   Phone: (702) 222-4033
4  Fax:    (702) 254-9044
   Attorney for Defendants DARREN K. PROULX;
5  LAND RESOURCE INVESTMENTS, INC;
   LAND RESOURCE MANAGEMENT, INC; and
6  MARINA COMMERCIAL OFFICES, LLC

7              **UNITED STATES FEDERAL DISTRICT COURT**

8          **FOR THE DISTRICT OF NEVADA - NORTHERN DIVISION**

9

10  RALPH STEPHEN COPPOLA; DOES I to       | Case No. 3:2011-CV-00074
    XX,
11                                          | DEFENDANTS' OPPOSITION TO
             Plaintiffs,                    | MOTION FOR PARTIAL SUMMARY
12                                          | JUDGMENT; COUNTER MOTION
          vs.                               | FOR SUMMARY
13                                          | JUDGMENT/ADJUDICATION;
    DARREN K. PROULX; LAND RESOURCE        | MOTION FOR JUDGMENT ON THE
14  INVESTMENTS, INC., LAND RESOURCE       | PLEADINGS; AFFIDAVIT IN
    MANAGEMENT, INC.; MARINA               | SUPPORT
15  COMMERCIAL OFFICES, LLC; and DOES I
    to XX,
16
             Defendants.
17

18

19

20      **DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY**
21  **JUDGMENT, COUNTER MOTION FOR SUMMARY JUDGMENT/ADJUDICATION,**
        **AND MOTION FOR JUDGMENT ON THE PLEADINGS**
22

23      COME NOW, Defendants DARREN K. PROULX, LAND RESOURCE

24  INVESTMENTS, INC., LAND RESOURCE MANAGEMENT, INC., and MARINA

25
    COMMERCIAL OFFICES, LLC, by and through their counsel of record, Alessi & Koenig,
26
    LLC, and hereby oppose Plaintiff's Motion for Partial Summary Judgment and move this court
27

28

for summary judgment/adjudication pursuant to FRCP 56 and judgment on the pleadings pursuant to FRCP 12(c).

Defendants' opposition and counter motion are made and based upon the attached Memorandum of Points and Authorities, the supporting Affidavit of Darren Proulx, the pleadings and papers on file herein, and any argument of counsel the court may consider at the hearing on this Motion.

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's lawsuit and subsequent motions place Defendants in a unique situation.  Land Resource Investments, Inc. (hereinafter, "LRI"), headed by Defendant Darren Proulx, is in the business of selling fractional interests in parcels of real property.  Land Resource Management, Inc. (hereinafter "LRM"), also headed by Mr. Proulx, engages in the management of the property owners associations that LRI forms for the properties it sells.  Mr. Coppola (hereinafter, "Plaintiff") is an attorney licensed in the State of California.  He served as counsel for LRI and LRM from November of 2007 until his resignation in May of 2010.

Since his resignation, Plaintiff has engaged in a determined effort to harm his former clients.  Namely, he has filed complaints against LRI and Darren Proulx with the following state and federal agencies: the Office of the Nevada Labor Commissioner, the Nevada Secretary of State, the Nevada Department of Real Estate, the California Department of Corporations – Securities Regulation Division, the California Department of Real Estate, the U.S. Securities and Exchange Commission, and the U.S. Equal Employment Opportunity Commission.  To top things off, Plaintiff now brings the present lawsuit – consisting of forty five causes of action – against Darren Proulx and his companies.

Like the complaints Plaintiff filed against Defendants with state and federal agencies, the present litigation concerns the subject matter of the legal representation Plaintiff provided for Defendants.  For example, as counsel for LRI, Plaintiff argued to multiple state agencies that LRI's sale of interests in real property does not fall within the purview of federal and state securities regulations.  Every state agency that has inquired into the issue has been persuaded to call off any investigation into LRI.  Plaintiff brings the present lawsuit on the grounds that LRI's sale of interests in real property *does* violate federal and state securities laws.  Plaintiff thereby takes the *opposite* position to what he argued as counsel for LRI.

In filing this lawsuit, Plaintiff has committed a serious violation of the fiduciary obligations he owes to his former clients.  These fiduciary obligations prohibit Plaintiff from (1) engaging in adverse litigation against a former client where client confidences may be compromised, or (2) taking any action which harms a former client with respect to the subject matter of the legal representation the attorney provided.

If the Court dismisses Plaintiff's federal causes of action, the Court will lose the ability to exercise subject matter jurisdiction over the state law claims.  Of the First Amended Complaint's forty-five causes of action, only four are based on federal law.  These are: the first and second causes of action (federal securities laws); the fourteenth cause of action (RICCO Act); and the thirty-second cause of action (Americans with Disabilities Act).  Of these four causes of action, Defendants are entitled to summary adjudication on the first three because they fall within Plaintiff's former legal representation of Defendants.  With respect to the purported violation of the Americans with Disabilities Act (the "ADA"), Plaintiff merely makes the conclusory allegation that Defendant failed to accommodate Plaintiff's "perceived disability" without even

identifying the perceived disability. Defendants are therefore entitled to judgment on the pleadings with respect to the ADA claim.

Defendants ask that the Court do more than just dismiss the federal causes of action. Clearly, Plaintiff's lawsuit is not a serious effort. He is simply using this Court as a tool to harass his former clients in a blatant violation of the rules of professional conduct. Plaintiff's lack of seriousness can be seen in the use of "doe plaintiffs," which are listed in the caption of the complaint. Many of the causes of action are brought on behalf of "all plaintiffs" or the "associations" (i.e. doe plaintiffs who are not presently part of this lawsuit). Defendants simply have no obligation, or any effective means, to participate in a lawsuit where the plaintiffs are fictional "does." Moreover, even if a procedure did exist for substituting in real plaintiffs for doe plaintiffs, Plaintiff is not a Nevada licensed attorney and could not represent them. Furthermore, numerous causes of action, such as the ADA claim, are simply thrown in with no attempt to properly allege the elements.

Put simply, Plaintiff's complaint and his motions are a horrid mess of careless pleading brought for the sole purpose of harassing his former clients. The Court should not allow itself to be misused in this way. Defendants request that the entire action be dismissed with prejudice.

## II.    **FACTUAL BACKGROUND**

### A. Land Resource Investment, Inc.

LRI sells a product which is describes as "land banking." LRI describes land banking as the process of buying and then holding real estate located in the path of urban growth for future sale. (Affidavit of Darren Proulx.)

Specifically, LRI purchases or options a large parcel of undeveloped real estate situated on the outskirts of a major metropolitan area (a "Property"). LRI adopts and records Covenants, Conditions and Restrictions ("CC&Rs") that are appurtenant to a Property. LRI then applies to the California Department of Real Estate ("DRE") for permission to subdivide a property into an undivided interest subdivision. Once approved, the DRE issues a Public Report authorizing the sale of the real estate interests. LRI acts as an incorporator and files Articles of Incorporation for a California Non-Profit Mutual Benefit Corporation (an "Association"), and adopts Bylaws for the Association. The purpose of the Association is to provide the purchasers of the real estate interests a mechanism to manage a Property themselves. (Affidavit of Darren Proulx.)

Upon a close of escrow, each purchaser of a real estate interest receives a separate grant deed to his or her undivided fee simple ownership interest in the real estate guaranteed by a standard CLTA policy of title insurance. By virtue of the CC&Rs, each undivided fees simple ownership interest includes one membership interest in the Association. The owners of the real estate interest in a Property use the Association to provide and coordinate certain ministerial services such as paying property taxes, buying insurance, paying for accounting and tax services, keeping a Property fee of weeds, etc. The owners are responsible to pay a pro-rata share of the dues of the Association. The CC&Rs provide a mechanism for enforcing the payment of dues. (Affidavit of Darren Proulx.)

At present, there are seventeen (17) Associations. Each Association is named a variation of "Cal Land Resources ### Association, Inc.," with the numerical portion of the name different for each Association. (Affidavit of Darren Proulx.)

Each owner may freely sell, transfer and/or assign his or her undivided fee simple interest in the real estate to any other party at any time without restriction. Further, the CC&Rs provide a

mechanism by which to sell the entire parcel, at which time all owners will receive a pro-rata distribution of the proceeds from the sale. (Affidavit of Darren Proulx.)

Defendant, Land Resource Management, Inc. ("LRM"), is a company headed by Defendant Darren Proulx. Most of the Associations have hired LRM to perform management duties. (Affidavit of Darren Proulx.)

## B. Plaintiff Stephen Coppola's Legal Representation Of LRI, LRM And The Associations

On or around November 27, 2007, LRI hired Plaintiff Stephen Coppola ("Plaintiff") to provide general counsel for the businesses. Plaintiff is a California-licensed attorney living in Reno, Nevada. In or around January of 2010, Plaintiff applied for admission to the Nevada State Bar pursuant to Nevada's multijurisdictional laws which allow out-of-state attorneys to practice law in Nevada while providing in-house counsel for a Nevada company. The Nevada State Bar issued Plaintiff a bar number, 11343C, with the "C" indicating Plaintiff's limited ability to practice as in-house counsel for LRI (Affidavit of Darren Proulx.)

During his tenure as counsel for LRI, Plaintiff also provided general legal services for LRM. In or around March of 2010, the Associations also hired Plaintiff to perform general legal services. With respect to Plaintiff's simultaneous representation of LRI, LRM and the Associations, Plaintiff generated a conflict of interest waiver which the Associations signed. (Affidavit of Darren Proulx.)

Whether state or federal securities laws apply to LRI's sale of real estate interests is an issue that has arisen multiple times since LRI retained Plaintiff as general counsel. The issue first arose in or around December 2007 when the Nevada Secretary of State, Securities Division ("Nevada Securities Division"), contacted LRI and Mr. Proulx regarding an investigation into

whether LRI's sale of real estate interests violated Nevada's securities laws. LRI hired the law firm of Gordon & Silver, Ltd. to generate a response for the Nevada Securities Division. The efforts of Gordon & Silver, Ltd., with assistance from Plaintiff who helped coordinate between LRI and Gordon & Silver, Ltd., culminated in a thorough legal opinion letter explaining why the property interests LRI sells are not securities subject to federal or state securities laws. After the legal opinion letter was submitted to the Nevada Securities Division, the Nevada Securities Division sent LRI and Mr. Proulx a notice that it would be closing the investigation. (Affidavit of Darren Proulx.)

On multiple subsequent occasions, Plaintiff provided legal representation for LRI with respect to the issue of whether LRI's sale of property interests falls within securities laws. Those occasions include the following:

1.      On July 2, 2008, Plaintiff generated and signed a legal opinion letter, similar to the legal opinion authored by Gordon & Silver, Ltd., which was submitted to the State of Arizona, Department of Real Estate. Like the Gordon & Silver, Ltd. legal opinion, Plaintiff's legal opinion letter concluded that LRI's property interests were not securities. The letter reads, in part: "Therefore, since virtually the same analysis applies under Arizona securities law, as the federal law, the LandBank interests are not securities." (Affidavit of Darren Proulx, Exhibit 6.)

2.      In March of 2009, Plaintiff generated and signed a similar legal opinion letter submitted to the State of California, Department of Real Estate. That letter concluded: "For all the above reasons, we respectfully request that you determine that the Real Estate Interests are not securities and that therefore the DRE has sole authority over the advertising by LRI in connection with the sale of the Real Estate Interests." (Affidavit of Darren Proulx, Exhibit 7.)

3.      In March of 2010, Plaintiff generated and signed a letter to the State of Arizona, Department of Real Estate.  This letter provided notice of LRI's intent to sell subdivided land and a request for an order of exemption from Arizona's requirement that a public report regarding the land be issued because a similar report had already been issued from the State of California, Department of Real Estate.  The letter stated, in part, "Please find enclosed a separate letter addressed to you as to why we do no believe the sale of the undivided interests in the Subdivision constitutes the sale of a security for either Federal or Arizona securities law purposes." (Affidavit of Darren Proulx, Exhibit 8.)

Plaintiff resigned as counsel for LRI in a letter dated May 8, 2010.  In Plaintiff's resignation letter, he accused Mr. Proulx of violating numerous state and federal laws.  (Affidavit of Darren Proulx, Exhibit 5.)

## III.   STATEMENT OF UNCONTROVERTED FACTS

1.      LAND RESOURCE INVESTMENTS, INC. (hereinafter, "LRI") was a California corporation authorized to do business in Nevada as a foreign corporation.  The corporation was dissolved in February of 2011.  **(Affidavit of Darren Proulx.)**

2.      LAND RESOURCE MANAGEMENT, INC. (hereinafter "LRM") is a Nevada corporation duly organized and authorized to do business in the State of Nevada.  **(Affidavit of Darren Proulx.)**

3.      DARREN PROULX is the Chief Executive Officer of LRI and LRM.  **(Affidavit of Darren Proulx.)**

4.      Plaintiff is an attorney licensed to practice in California.

5.    On or about November 27, 2007, LRI retained Plaintiff to serve as general legal counsel. **(Affidavit of Darren Proulx, Exhibit "1")** Plaintiff signed a retainer agreement and confidentiality agreement with LRI dated November 27, 2007 and November 28, 2008, respectively. **(Affidavit of Darren Proulx Exhibit "2.")**

6.    During his tenure as counsel for LRI, Mr. Coppola also provided general legal counsel for Land Resource Management, Inc. **(Affidavit of Darren Proulx, Exhibit 3.)**

7.    In or around March of 2010, the Associations hired Mr. Coppola to provide general legal counsel. **(Affidavit of Darren Proulx, Exhibit 3.)**

8.    In or around January of 2010, Plaintiff registered with the State Bar of Nevada as in-house counsel for LRI. He was given the Nevada State Bar number 11343C. **(Affidavit of Darren Proulx, Exhibit "4.")**

9.    Plaintiff continued to act as counsel for LRI and LRM until he resigned in May of 2010. **(Affidavit of Darren Proulx, Exhibit "5.")**

10.   In July of 2008, Plaintiff generated and signed a legal opinion letter on behalf of LRI which was submitted to the State of Arizona, Department of Real Estate. Plaintiff's legal opinion letter argued that the LRI's sale of property interests did not fall within Arizona's securities laws. The concluding sentence of the letter reads: "Therefore, since virtually the same analysis applies under Arizona securities law, as the federal law, the LandBank interests are not securities." **(Affidavit of Darren Proulx, Exhibit "6.")**

11.   In March of 2009, Plaintiff generated and signed a legal opinion letter on behalf of LRI which was submitted to the State of California, Department of Real Estate. **(Affidavit of Darren Proulx, Exhibit "7.")** Plaintiff's legal opinion letter argued that LRI's sale of property interests did not fall within Arizona's securities laws. The concluding sentence of that letter

reads: "For all the above reasons, we respectfully request that you determine that the Real Estate Interests are not securities and that therefore the DRE has sole authority over the advertising by LRI in connection with the sale of the Real Estate Interests." **(Affidavit of Darren Proulx, Exhibit "7.")**

12.    In March of 2010, Plaintiff generated and signed a letter which was submitted to the State of Arizona, Department of Real Estate.  This letter provided notice of LRI's intent to sell subdivided land and requested an order that LRI would be exempt from Arizona's requirement that a public report regarding the land be issued.  The letter reads, in part, "Please find enclosed a separate letter addressed to you as to why we do no believe the sale of the undivided interests in the Subdivision constitutes the sale of a security for either Federal or Arizona securities law purposes." **(Affidavit of Darren Proulx, Exhibit "8.")**

13.    Plaintiff is not currently licensed to practice law in Nevada in any capacity.

14.    Subsequent to Plaintiff's resignation as legal counsel for LRI, Plaintiff filed complaints against LRI with the following government agencies:

- • Office of the Nevada Labor Commissioner

- • Nevada Secretary of State

- • Nevada Department of Real Estate

- • California Department of Corporations – Securities Regulation Division

- • California Department of Real Estate

- • U.S. Securities and Exchange Commission

- • U.S. Equal Employment Opportunity Commission

**(Affidavit of Darren Proulx, Exhibit "9.")**

15.     The complaints Plaintiff filed with the Nevada Secretary of State, California Department of Corporations – Securities Regulation Division, and U.S. Securities Exchange Commission all concern subject matter within the scope of Plaintiff's legal representation of LRI and LRM. **(Affidavit of Darren Proulx, Exhibits "10" and "11.")**

## IV.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. (See Adickes v. S.H. Kress & Co., 398 U.S. 144, 26 L.Ed.2d 142, 90 S.Ct. 1598 (1970); Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982), cert. denied, 460 U.S. 1085, 76 L.Ed.2d 349, 103 S.Ct. 1777 (1983).) A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  (See Admiralty Fund v. Hugh Johnson & Co., 677 F.2d 1301, 105-06 (9th Cir. 1982).)  The movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).)

If the party seeking summary judgment meets its burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. (First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290, 20 L.Ed.2d 569, 88 S.Ct. 1575 (1968), reh'g denied, 393 U.S. 901, 21 L.Ed.2d 188, 89 S.Ct. 63 (1968); Commodity Futures

Trading Comm'n v. Savage, 611 F.2d 270 (9th Cir. 1979).)  Parties seeking to defeat summary

judgment cannot stand on their pleadings once the movant has submitted affidavits or other

similar materials.  Affidavits that do not affirmatively demonstrate personal knowledge are

insufficient.  (British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978), cert.

denied, 440 U.S. 981, 60 L.Ed.2d 241, 99 S.Ct. 1790 (1979), reh'g denied, 441 U.S. 968, 60

L.Ed.2d 1074, 99 S.Ct. 2420 (1979).)  Likewise, "legal memoranda and oral argument are not

evidence and do not create issues of fact capable of defeating an otherwise valid motion for

summary judgment." (Id.)


## V.   **ARGUMENT**

### A. **In Bringing The Present Lawsuit, Plaintiff Has Violated Fiduciary Obligations Owed To Defendants As Their Former Counsel**

As an attorney licensed with the State Bar of California, Plaintiff is governed by

California's rules of professional conduct.  Research reveals two cases from California case law

that are essentially on point.

i. Styles v. Mumbert: An Attorney May Not Become The Opposing Party In A Lawsuit

Against His Former Client In A Lawsuit Where The Attorney Possesses Client

Confidences

In Styles v Mumbert, 164 Cal. App. 4th 1163 (2008), an attorney, Pagkas, represented

Mumbert, a defendant in a civil case which resulted in a default judgment against Mumbert in

the amount of $730,466.  (Styles, 164 Cal. App. 4th at 1166).  The default judgment resulted

because terminating sanctions were issued against Mumbert because of Pagkas's admitted

inattention to the case.  (Id.)  After hiring new counsel, and after new counsel was unable to

have the terminating sanctions set aside, Mumbert appealed from the default judgment. (Id.)
Pagkas then purchased the rights to the judgment against Mumbert and filed a motion to
substitute into the appeal as respondent. (Id.)

The court held: "Pagkas's attempt to substitute into the appeal as respondent violates his
fiduciary duty to Mumbert. The proposed substitution also violates the relevant Rules of
Professional Conduct and the Business and Professions Codes. […]" (Id.) The court continued:

> Few precepts are more firmly entrenched than the fiduciary nature of the attorney-
> client relationship, which must be of the highest character. (Frazier v. Superior
> Court (2002) 97 Cal.App.4th 23, 35, 118 Cal.Rptr.2d 129, citing Yorn v. Superior
> Court for City and County of San Francisco (1979) 90 Cal.App.3d 669, 675, 153
> Cal.Rptr. 295.) So fundamental is this precept that an attorney continues to owe a
> former client a fiduciary duty even after the termination of the relationship.
> (Zador Corp. v. Kwan (1995) 31 Cal.App.4th 1285, 1293, 37 Cal.Rptr.2d 754.)
> For example, an attorney is forever forbidden from using, against the former
> client, any information acquired during such relationship, or from acting in a way
> which will injure the former client in matters involving such former
> representation. (Frazier v. Superior Court, supra, 97 Cal.App.4th at p. 35, 118
> Cal.Rptr.2d 129; Yorn v. Superior Court, supra, 90 Cal.App.3d at p. 675, 153
> Cal.Rptr. 295.) These duties continue after the termination of the relationship in
> order to protect the sanctity of the confidential relationship between and attorney
> and client. (People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems,
> Inc. (1999) 20 Cal.4th 1135, 1147, 86 Cal.Rptr.2d 816, 980 P.2d 371; Jeffry v.
> Pounds (1977) 67 Cal.App.3d 6, 9, 136 Cal.Rptr. 373.)

> Therefore, even though Pagkas no longer represents Mumbert, he continues to owe
> Mumbert the duty to protect their prior confidential relationship. Where a substantial
> legal and factual relationship exists between a former representation and the attorney's
> current position, a presumption arises that the attorney possesses confidential
> information about the former client which would be compromised if an attorney were

allowed to take an adverse position after the representation ended. (Fox Searchlight
Pictures, Inc. v. Paladino (2001) 89 Cal.App.4th 294, 300, 106 Cal.Rptr.2d 906; People
ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra, 20 Cal.4th
1135, 86 Cal.Rptr.2d 816, 980 P.2d 371.) Typically, this becomes an issue where an
attorney seeks to represent multiple adverse parties in successive representations. In
those cases, the former client can step in and prevent the attorney from representing his
adversary in order to safeguard his confidences. (City and County of San Francisco v.
Cobra Solutions, Inc. (2006) 38 Cal.4th 839, 847, 43 Cal.Rptr.3d 771, 135 P.3d 20.)
Here, Pagkas is not only attempting to represent the opposing side, his is trying to be the
opposing side in the very same litigation in which he represented Mumbert.  There is
more than merely a "substantial" legal and factual relationship between the prior
representation and the current appeal.  (Fox Searchlight Pictures, Inc. v. Paladino, supra,
89 Cal.App.4th at p. 300, 106 Cal.Rptr.2d 906.)  Since the appeal is from the judgment
in which Pagkas represented Mumbert, it is the same case. Under any analysis, this
scenario not only raises the presumption, but establishes for a certainty that Pagkas
possesses confidential information adverse to Mumbert, which would be compromised if
his motion were granted.  Therefore, by objecting, Mumbert can prevent Pagkas from
stepping into the shoes of his adversary in order to safeguard his confidences. The duty
of confidentiality of client information involves public policies of paramount
importance. (In Re Jordan (1974) 12 Cal.3d 575, 116 Cal.Rptr. 371, 526 P.2d 523.)  The
preservation of confidentiality contributes to the trust that is the hallmark of the client-
lawyer relationship. (Rule 3–100, Discussion § 1.)  Pagkas may not reveal or use
confidential information, gained through his prior representation of Mumbert, in this
appeal because it would be contrary to public policy and would undermine the very
nature of the attorney client relationship.

(Id. at 1167-68.)

The court in Styles focused on the presumption that an attorney possesses confidential
information concerning his former client as a basis for disallowing the attorney from becoming

his former client's adversary. However, there are also broader grounds. Namely, an attorney is prohibited from acting in any way which harms a former client with respect to a matter in which the attorney represented the client.

ii. People ex. Rel. Deukmejian v. Brown: An Attorney May Not Harm A Former Client With Respect To The Subject Matter Of Legal Representation The Attorney Provided

The issue of harming a former client arose in People ex rel. Deukmejian v. Brown, 29 Cal. 3d 150 (1981). There, the California Attorney General recommended that the Governor sign into law the State Employer-Employee Relations Act ("SEERA") which the legislature had adopted. Later, the Pacific Legal Foundation and the Public Employees Service Association filed a petition for writ of mandate seeking to have SEERA declared unconstitutional. (Id.) A summons was served on the defendants, including the Governor and the State Personnel Board. (Id.) As counsel to the State Personnel Board, the Attorney General met with the board and outlined the board's legal options. (Id.) The Attorney General subsequently withdrew as counsel for his state clients as he believed a potential conflict of interest existed. (Id.) The Attorney General then filed an independent petition for writ of mandate in the Court of Appeal against the Governor and other state agencies asking that SEERA be declared unconstitutional. (Id.)

In finding the Attorney General's actions to be in violation of the rules of professional conduct, the discussed the case Wutchumna Water Co. v. Bailey 216 Cal. 564, 573-574 [15 P.2d 505] (1932), as follows:

> In [Wutchumna], this court declared that "an attorney is forbidden to do either of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any manner in which he formerly represented him nor may he at any time use against his former client

knowledge or information acquired by virtue of the previous relationship." While the record here does not reveal whether the Attorney General acquired any knowledge or information from his clients, the prohibition is in the disjunctive: he may not use information or "do anything which will injuriously affect his former client." Unquestionably the Attorney General is now acting adversely to the position of his statutory clients, one of which consulted him regarding this specific matter.

(Id. at 155-56.)

The present case is similar to both Styles and Deukmejian.

iii. Plaintiff Is Attempting To Harm Defendants With Respect To Legal Issues For Which He Represented Defendants And About Which He Possesses Confidential Information

The indisputable facts show that Plaintiff is attempting to harm his former clients with respect to the subject matter of legal representation he provided. Further, the nature of Plaintiff's representation of Defendants establishes for a certainty that Plaintiff possesses confidential information adverse to Defendants.

Plaintiff's first cause of action, titled "Failure to Register (US), alleges as follows:

• Defendants "participated in the sale of Interests to the general public in violation of the requirements of the US Securities Acts to register such securities […]"

(First Amended Complaint, page 21, lines 11-13.)

Plaintiff's second cause of action, titled "Manipulation and Deceptive Devices (US)," alleges as follows:

• "Defendants directly or indirectly, by the use of any means, including instrumentalities of interstate commerce or of the mails, used or employed, in

connection with the purchase or sale of the Interests, manipulative or deceptive devices

in contravention of the rules and regulations as the Commissioner of the Securities and

Exchange Commission has prescribed as necessary or appropriate in the public interest

or for the protection of investors."

(First Amended Complaint, page 21 line 27 to page 22 line 4.)

Plaintiff's fourteenth cause of action, titled "Racketeer Influenced and Corrupt

Organizations (RICCO) Act," alleges as follows:

• Defendants engaged in a "pattern of racketeering activity, including but not

limited to securities fraud."

(First Amended Complaint, page 31, lines 10 through 16.)

Plaintiff's lawsuit brings a legal challenge to the core business practices LRI, a business

for which he provided legal counsel – even serving as in-house counsel – for approximately two

and one half years. As in Mumbert, "Under any analysis, this scenario not only raises the

presumption, but establishes for a certainty that [Plaintiff] possesses confidential information

adverse to [Defendants] […]"

Furthermore, Defendants have provided the Court with three examples of legal opinions

submitted to state agencies which Plaintiff generated and signed, and which conclude that LRI's

sale of interest in parcels of real estate does not fall within the purview of securities regulations.

**(Affidavit of Darren Proulx, Exhibits "6," "7" and "8.")**  Plaintiff's lawsuit addresses the

*exact subject* of Plaintiff's legal representation and takes the *exact opposite* position to what

Plaintiff argued as counsel for LRI.

It is difficult to conceive of a more blatant violation of the precept that an attorney is

forbidden from doing "anything which will injuriously affect his former client in any manner in

which he formerly represented him." (Wutchumna Water Co. v. Bailey 216 Cal. 564, 573-574

[15 P.2d 505] (1932).) As the court stated in Mumbert, allowing the present litigation to

continue "would be contrary to public policy and would undermine the very nature of the

attorney client relationship." (Mumbert, 164 Cal. App. 4th at 1168.)

## B. Defendants Are Entitled To Judgment On the Pleadings With Respect to Plaintiff's ADA Claim

Granting a motion for judgment on the pleadings under Federal Rule of Civil Procedure

12(c) is proper when "the moving party clearly establishes on the face of the pleadings that no

material issue of fact remains to be resolved and that it is entitled to judgment as a matter of

law." (Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir.1989).  In

analyzing a Rule 12(c) motion, the court must assume the pleading's factual allegations to be true

and must construe all reasonable inferences in favor of the nonmoving party. (Seventh–Day

Adventists, 887 F.2d at 230.)

Here, with respect to Plaintiff's ADA claim, Plaintiff's 1st Amended Complaint contains

the following allegations:

> 99. Plaintiff Coppola was perceived by Defendants to have a disability which
> would be subject to employment accommodation under the Americans with
> Disabilities Act, 42 USC 12111 to 12117.
>
> [...]
>
> 229.    Defendants and each of them came to believe that Plaintiff Coppola
> suffered from a health condition which among other sections, Section 12112 of
> the Americans with Disabilities Act of 1990 ("ADA") would require reasonable
> accommodation thereof.

230.    In fact, Defendants did not reasonably accommodate Plaintiff Coppola but rather constructively terminated Plaintiff Coppola.

(First Amended Complaint, page 21 lines 1-3, page 45 lines 22-26)

Clearly, Plaintiff fails to provide any substantial factual allegations whatsoever.  Instead, Plaintiff simply makes conclusory statements from which it is impossible to discern whether any elements of an ADA claim are present.  Plaintiff even fails to mention what the alleged "perceived disability" might have been.  Therefore, even assuming all of Plaintiff's factual allegations are true, Defendants are entitled to judgment as a matter of law.

## VI. CONCLUSION

Since Plaintiff's resignation from LRI and LRM, Plaintiff has acted with utter belligerence against his former clients.  He has filed meritless complaints against them with at least seven state and federal agencies, basing those complaints on knowledge he learned as counsel for defendants.  The present lawsuit is merely the most recent manifestation of Plaintiff's outrageous behavior.

As in Styles and Deukmejian, the Court cannot allow Plaintiff to continue any further.  This lawsuit constitutes a serious breach of the fiduciary responsibilities Plaintiff owes to his former clients.  Furthermore, the lawsuit is bereft of merit.  It is filed principally on behalf of "doe plaintiffs" – which would qualify as Plaintiff's unauthorized practice of law if the doe plaintiffs were more than figments of Plaintiff's imagination.  Without question, Plaintiff's lawsuit and subsequent motions were slopped together for no purpose other than furthering Plaintiff's twisted goal of causing harm to Defendants.  For these reasons, Defendants' request that their motion be granted and the entire action be dismissed with prejudice.

DATED this 26th day of July, 2011.

ALESSI & KOENIG, LLC

Robert A. Koenig (NV SBN 3203)
Ryan Kerbow (NV SBN 11403)
ALESSI & KOENIG, LLC
9500 W. Flamingo, Suite #205
Las Vegas, Nevada 89147
Phone: (702) 222-4033
Fax:   (702) 254-9044
Attorney for Defendants

### AFFIDAVIT OF DARREN K. PROULX

### IN SUPPORT OF DEFENDANTS' COUNTER MOTION FOR SUMMARY JUDGMENT

I, Darren K. Proulx, hereby declare:

1.     LAND RESOURCE INVESTMENTS, INC. (hereinafter, "LRI") was a California corporation authorized to do business in Nevada as a foreign corporation.  The corporation was dissolved in February of 2011.

2.     LAND RESOURCE MANAGEMENT, INC. (hereinafter "LRM") is a Nevada corporation duly organized and authorized to do business in the State of Nevada.

3.     I am the Chief Executive Officer for LRI and LRM.

4.     LRM engages in the management of property interest communities.

5.     LRI sells a product which is describes as "land banking."  LRI describes land banking as the process of buying and then holding real estate located in the path of urban growth for future sale.

6.     Specifically, LRI purchases or options a large parcel of undeveloped real estate situated on the outskirts of a major metropolitan area (a "Property").  LRI adopts and records Covenants, Conditions and Restrictions ("CC&Rs") that are appurtenant to a Property.  LRI then applies to the California Department of Real Estate ("DRE") for permission to subdivide a property into an undivided interest subdivision.  Once approved, the DRE issues a Public Report authorizing the sale of the real estate interests.  LRI acts as an incorporator and files Articles of Incorporation for a California Non-Profit Mutual Benefit Corporation (an "Association"), and adopts Bylaws for the Association.  The purpose of the Associations is to provide the purchasers of the real estate interests a mechanism to manage the Property themselves.

7.      Upon a close of escrow, each purchaser of a real estate interest receives a separate grant deed to his or her undivided fee simple ownership interest in the real estate guaranteed by a standard CLTA policy of title insurance.  By virtue of the CC&Rs, each undivided fee simple ownership interest includes one membership interest in the Association.  The owners of the real estate interest in a Property use the Association to provide and coordinate certain ministerial services such as paying property taxes, buying insurance, paying for accounting and tax services, keep a Property fee of weeds, etc.  The owners are responsible to pay a pro-rata share of the dues of the Association.  The CC&Rs provide a mechanism for enforcing the payment of dues.

8.      At present, there are seventeen (17) Associations.  Each Association is named a variation of "Cal Land Resources ### Association, Inc.," with the numerical portion of the name different for each Association.

9.      Each owner may freely sell, transfer and/or assign his or her undivided fee simple interest in the real estate to any other party at any time without restriction.  Further, the CC&Rs provide a mechanism by which to sell the entire parcel, at which time all owners will receive a pro-rata distribution of the proceeds from the sale.

10.     On or about November 27, 2007, LRI retained Mr. Coppola to serve as general legal counsel.  Mr. Coppola signed a retainer agreement and confidentiality agreement with LRI dated November 27, 2007 and November 28, 2008, respectively.  True and correct copies of said agreements are attached hereto as **Exhibit "1"** and **Exhibit "2,"** respectively.

11.     During his tenure as counsel for LRI, Mr. Coppola also provided general legal counsel to Land Resource Management, Inc.  In or around March of 2010, the Associations hired Mr. Coppola to provide general legal counsel.

12.     For his simultaneous legal representation of LRI, LRM and the Associations, Plaintiff generated a conflict waiver for the Associations to sign.  A true and correct copy of the waiver signed by Cal Land Resources 008 Association, Inc. is attached hereto as **Exhibit "3."**

13.     In or around January of 2010, Mr. Coppola registered with the State Bar of Nevada as in-house counsel for LRI.  He was given the Nevada State Bar number 11343C.  A true and correct copy of a letter from the State Bar of Nevada asking me to respond to questions concerning Mr. Coppola's moral character is attached hereto as **Exhibit "4."**  My responses are also attached as **Exhibit "4."**

14.     Mr. Coppola continued to act as counsel for LRI and LRM until he resigned in May of 2010.  A true and correct copy of said letter of resignation is attached hereto as **Exhibit "5."**

15.     Whether state or federal securities laws apply to LRI's sale of real estate interests is an issue that has arisen multiple times since LRI retained Plaintiff as general counsel.  The issue first arose in or around December 2007, when the Nevada Secretary of State, Securities Division ("Nevada Securities Division"), contacted LRI and PROULX regarding an investigation into whether LRI's sale of real estate interests violated Nevada's securities laws.  LRI hired Gordon & Silver, Ltd., to generate a response for the Nevada Securities Division.  The efforts of Gordon & Silver, Ltd., with assistance from Mr. Coppola who helped coordinate between LRI and Gordon & Silver, Ltd., culminated in a thorough legal opinion letter explaining why the property interests LRI sells are not securities subject to federal or state securities laws.  After the legal opinion letter was sent to the Nevada Securities Division, the Nevada Securities Division sent LRI and myself a notice that it would be closing the investigation.

16.     In July of 2008, Mr. Coppola generated and signed a legal opinion letter on behalf of LRI which was submitted to the State of Arizona, Department of Real Estate.  Mr. Coppola's legal

opinion letter argued that the LRI's sale of property interests did not fall within Arizona's securities laws. The concluding sentence of the letter reads: "Therefore, since virtually the same analysis applies under Arizona securities law, as the federal law, the LandBank interests are not securities." A true and correct copy of said legal opinion letter is attached hereto as **Exhibit "6."**

17. In March of 2009, Mr. Coppola generated and signed a legal opinion letter on behalf of LRI which was submitted to the State of California, Department of Real Estate. Mr. Coppola's legal opinion letter argued that LRI's sale of property interests did not fall within Arizona's securities laws. The concluding sentence of that letter reads: "For all the above reasons, we respectfully request that you determine that the Real Estate Interests are not securities and that therefore the DRE has sole authority over the advertising by LRI in connection with the sale of the Real Estate Interests." A true and correct copy of said legal opinion letter is attached hereto as **Exhibit "7."**

18. In March of 2010, Mr. Coppola generated and signed a letter which was submitted to the State of Arizona, Department of Real Estate. This letter provided notice of LRI's intent to sell subdivided land and requested an order that LRI would be exempt from Arizona's requirement that a public report regarding the land be issued. The letter stated, in part, "Please find enclosed a separate letter addressed to you as to why we do no believe the sale of the undivided interests in the Subdivision constitutes the sale of a security for either Federal or Arizona securities law purposes." A true and correct copy of said legal opinion letter is attached hereto as **Exhibit "8."**

19. Subsequent to Mr. Coppola's resignation as legal counsel for LRI, Mr. Coppola filed complaints against LRI with the following government agencies:

• Office of the Nevada Labor Commissioner

• Nevada Secretary of State

• Nevada Department of Real Estate

• California Department of Corporations – Securities Regulation Division

• California Department of Real Estate

• U.S. Securities and Exchange Commission

• U.S. Equal Employment Opportunity Commission

A true and correct of an email I received from Mr. Coppola informing me that he filed said complaints is attached hereto as **Exhibit "9."**

20.     The complaints Mr. Coppola filed with the Nevada Secretary of State, the California Department of Corporations – Securities Regulation Division, and the U.S. Securities Exchange Commission all concern whether LRI's sale of interests in real estate violate securities regulations.

21.     Attached hereto as **Exhibit "10"** are true and correct copies of communications between myself and the Nevada Secretary of State in regards to the investigation of LRI that the Nevada Secretary of State initiated in response to Mr. Coppola's complaint.

22.     Attached hereto as **Exhibit "11"** are true and correct copies of email communications between myself and Kimberly P. Stein, Esq. of the Office of the Nevada Secretary of State.  In an email dated May 26, 2011, Ms. Stein informed me: "As an FYI – we have reviewed the matter and have concluded the matter at this time, as we did back in 2007."

23.     The documents attached hereto were made at or near the time of the event the documents concern, and are kept within my custody and control as records in the ordinary course of business for LRI and LRM.

1        I am over the age of eighteen (18), competent to stand trial and have personal knowledge

2    of the foregoing.  If called to testify as a witness, I could and would competently testify thereto.

3

4        This declaration is made and entered on this 26th day of July, 2011 in the city of Sparks,

5    State of Nevada.

6

7

8                              Darren K. Proulx

9

10   SUBSCRIBED and SWORN to before me

11

12   this 26th day of July, 2011.

13

14

15   H. CHRISMAN
     Notary Public - State of Nevada
     Appointment Recorded in Washoe County
16   No: 10-2648-2 - Expires May 19, 2014

17   NOTARY PUBLIC for said County and State

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of July, 2011, I electronically filed the foregoing DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT; COUNTER MOTION FOR SUMMARY JUDGMENT/ADJUCIATION; MOTION FOR JUDGMENT ON THE PLEADINGS; AFFIDAVIT IN SUPPORT with the Clerk of the Court by using the CM/ECF system, and that service will be accomplished on all counsel and persons requesting notice by the court CM/ECF system.

I also sent a copy of said document via US Mail, postage prepaid, to the following:

Ralph Stephen Coppola
4785 Rio Pinar Drive
Reno, NV 89509

An employee of Alessi & Koenig, LLC