

**FILED** _____ **RECEIVED**
_____ **ENTERED** _____ **SERVED ON**
COUNSEL/PARTIES OF RECORD

**AUG - 5 2011**

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
_____ **DEPUTY**

O

1   **Ralph Stephen Coppola**
    **4785 Rio Pinar Drive**
2   **Reno, NV 89509**
    **Pro Se**
3   **775 827 2344**

4

                    UNITED STATES DISTRICT COURT
5                   DISTRICT OF NEVADA - RENO

6   RALPH STEPHEN COPPOLA,          )   CASE NO.:    3:2011cv00074
              and                   )
7   DOES I to XX,                   )   PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION
         Plaintiffs                 )   TO MOTION FOR PARTIAL SUMMARY JUDGEMENT
8                                   )   AND OPPOSITION TO DEFENDANTS' MOTION
              vs.                   )   FOR SUMMARY JUDGMENT/ADJUICATION; AND
9                                   )   OPPOSITION TO DEFENDANTS' MOTION FOR
    DARREN K. PROULX, LAND          )   JUDGMENT ON THE PLEADINGS
10  RESOURCE INVESTMENTS,           )
    INC., LAND RESOURCE             )
11  MANAGEMENT, INC., and           )
    MARINA COMMERCIAL OFFICES, LLC) )
12            and                   )
    DOES I to XX,                   )
13        Defendants                )
    ------------------------------------

14

15                         **I. REPLY.**

16  COMES NOW, Ralph Stephen Coppola, the named Plaintiff, herein, (hereinafter "Coppola") who

17  hereby respectfully files this PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO

18  MOTION FOR PARTIAL SUMMARY JUDGMENT; AND OPPOSITION TO DEFENDANTS'

19  MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; AND OPPOSITION TO

20  DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ("Reply"), pursuant to

21  Fed.R.Civ.P. 56, Local Rule 7-2(e)(as amended ) (the time for filing of a motion for summary

22  judgment, a response to a motion for summary judgment, and a reply to a motion for summary

23  judgment shall be governed by Federal Rules of Civil Procedure 56(c)).

24

25                  **II.       LEGAL STANDARD.**

26  An important initial observation is that in reading DEFENDANTS' OPPOSITION TO MOTION

27  FOR PARTIAL SUMMARY JUDGMENT; COUNTER MOTION FOR SUMMARY

28  JUDGMENT / ADJUDICATION; MOTION FOR JUDGMENT ON THE PLEADINGS;

    AFFIDAVIT IN SUPPORT (the "Defendants Response"), it is necessary to carefully separate the

mountain of facts and law alleged in the pleadings, from the very, very, limited evidence and law actually presented.   In ruling on the Amended Motion for Partial Summary Judgment, each and every allegation of fact which is merely averred in the pleadings, but which is unsupported by admissible evidence must be ignored.   As plead by the Defendants (at Defendants' Response, p. 12, ll 1 - 9):

> Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. (British Airways Bd. v. Boeing Co., 585 F. 2d 946, 952 (9th Cir. 1978), cert. denied, 440 U.S. 981,60 L. Ed. 2d 241,99 S. Ct. 1790 (1979), reh'g denied, 441 U.S. 968, 60 L. Ed. 2d 1074, 99 S. Ct. 2420 (1979).) Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." (Id.)

It is curious that Defendants, by pleading the above, demonstrated their knowledge that the great bulk of the material in their own Defendants' Response must be ignored as not supported by any evidence.  In fact, even though Defendant Proulx's very short and not informative AFFIDAVIT IN SUPPORT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ("Defendants' Affidavit") was not filed in support of Defendants' Response, the facts contained in such affidavit do not controvert any fact set forth by Plaintiff.

If one inventories the facts that actually constitute admissible evidence averred in Defendants' Response one finds that none of the so called "facts" alleged by Defendants in that portion of their pleading constituting the DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT have any evidence to support any such alleged "fact" at all, and, hence, no "fact" alleged by Defendants in that portion of their pleading constituting the DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT is a legally admissible fact at all.

Further, the great majority of so called "facts" set forth in any portion of Defendants' Response are "facts" at all (since they are not properly supported) and hence, the great majority of alleged "facts" by Defendants in their pleadings in this case are not facts at all.

That is because, with only *one possible* exception, no "fact" alleged in Defendants' Affidavit is contrary in any material respect to any fact alleged by Plaintiffs in either the affidavit filed in support of the Plaintiff's motion for partial summary judgment or the affidavit filed in support of this Reply. The one "fact" alleged by Defendants that *possibly* could be construed as contrary to the facts set forth in Plaintiff's affidavits is as follows:

> "The purpose of the Associations is to provide the purchasers of the real estate interests a
> mechanism to manage the Property themselves."
> (At Defendants' Response, p. 21, ll 26-28).

However, it cannot be said that the probative value of the above fact is significant or even material since such single fact alleged does not aver whether that mechanism was in fact followed or supplanted or thwarted. Simply put, that fact alleged in Defendant's Affidavit is not material. As plead by Defendants:

> "A material issue of fact is one that affects the outcome of the litigation and requires a trial
> to resolve the differing versions of the truth. (See Admiralty Fund v. Hugh Johnson &
> Co.,677 F.2d 1301, 105-06 (9th Cir. 1982).)"
> (At Defendants' Response, p. 11, ll. 16-19).

A careful review of each affidavit filed in this case demonstrates that the Defendants have not stated *any* probative evidence that if true would create a "differing version of the truth." In fact, Defendants failed to put into evidence a *single fact contrary to the facts presented by Plantiff* in support of Plaintiff's legal theories ("Plaintiff's Legal Theories) that:

1. An undivided real estate interest (the "Investment") sold by the Selling Defendants is a "security" as that term is defined for purposes of both The Securities Act of 1933 (the

"1933 Act") and The Securities and Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 77b(a)(1), 15 U.S.C. § 77b(a)(1), and,

2.   That the Selling defendants failed to register that Investment (if it is a security) as registration is required by the 1933 Act, 15 U.S.C. § 77e(c), and thereafter sold and delivered such Investments without a registration statement as required by the 1933 Act, 15 U.S.C. § 77e(a)(2).

Equally important, a careful review of each exhibit filed in this case by Defendants demonstrates that the Defendants have not produced any probative evidence contrary to Plaintiff's Legal Theories.  Therefore, partial summary judgment in favor of Plaintiff's Legal Theories is appropriate, according to the standard plead by the Defendants, as follows:

"Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. (See Adickes v. S.H. Kress & Co., 398 U.S. 144,26 L.Ed.2d 142, 90 S.Ct. 1598 (1970); Zoslaw v. MCA Distrib. Corp., 693 F.2d 870,883 (9th Cir. 1982), cert. denied, 460 U.S. 1085, 76 L.Ed.2d 349, 103 S.Ct. 1777 (1983).)

[....] The movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L.Ed.2d 202,106 S.Ct. 2505 (1986).)

[¶]

If the party seeking summary judgment meets its burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal

theory. (First Nat'l Bank v. Cities Servo Co., 391 U.S. 253, 290, 20 L.Ed.2d 569, 88 S.Ct. 1575 .

(1968), reh'g denied, 393 U.S. 901,21 L.Ed.2d 188,89 S.Ct. 63 (1968); Commodity Futures

Trading Comm'n v. Savage, 611 F.2d 270 (9th Cir. 1979).) "

(At Defendants' Response, pp. 11-12, ll. 8-28, 1-9).

When the muddied water of Defendants' Response is allowed to settle (at which stage it is still

murky) the simple fact is that Defendants did argue a single case or standard or admissible fact

that the real estate interests are not securities under federal law.  A cursory finding by a state

agency, such as one in Nevada, that an investigation will be closed, does not equal a finding by

that a real estate interest is not a security under federal law.  Even if a state agency did make such

a finding, the finding of a state agency (or mislead attorney) is merely an opinion, and is not

evidence that a real estate interest is not a security under federal law.

III.     **UNCONTROVERTED FACTS CONCERNING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT and DEFENDANTS' OPPOSITION TO MOTION
FOR PARTIAL SUMMARY JUDGMENT.**

1.  Defendants chose to not file an affidavit or other evidence in support of that portion of
Defendants' Response that opposes Plaintiff's Motion for Partial Summary Judgment, filed
on July 14, 2011.

2.  As noted above, Defendants fail to put at issue any fact contained in Plaintiff's Affidavit In
Support of [Plaintiff's] Motion for Partial Summary Judgment, filed on July 14, 2011
(Plaintiff's Motion Affidavit"), and, therefore, each and every fact contained in Plaintiff's
Affidavit In Support of [Plaintiff's] Motion for Partial Summary Judgment, filed on July
14, 2011, is uncontroverted.

3.  The only affidavit filed in this action by Defendants is the Affidavit of Darren K. Proulx in
Support of Defendants' Counter Motion for Summary Judgment ("Proulx's Affidavit).  The

facts and exhibits contained in Proulx's Affidavit do not controvert any fact in Plaintiff's motion Affidavit or in Plaintiff's Reply Affidavit (attached and made a part of this pleading).

## IV. DEFENDANTS' COUNTER MOTION FOR SUMMARY JUDGMENT/ADJUDICATION, AND MOTION FOR JUDGMENT ON THE PLEADINGS.

Each and every alleged fact and issue presented in that portion of Defendants' Response concerning **DEFENDANTS' COUNTER MOTION FOR SUMMARY JUDGMENT/ADJUDICATION, AND MOTION FOR JUDGMENT ON THE PLEADINGS** will be responded to separately by Plaintiff, below.

## V. CONCLUSION REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

Wherefore, for the reasons stated in this pleading, Plaintiff Coppola respectfully hereby moves for summary judgment, pursuant to Fed.R.Civ.P. 56, on all the first Count filed against the Defendants, namely that the Court find:

1.  The undivided real estate interests sold by the Selling Defendants is a "security" as that term is defined for purposes of both The Securities Act of 1933 (the "1933 Act") and The Securities and Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 77b(a)(1), 15 U.S.C. § 77b(a)(1), and,

That the Defendants failed to register the real estate interests sold to Plaintiffs as registration is required by the 1933 Act, 15 U.S.C. § 77e(c), and thereafter sold and delivered such real estate interest without a registration statement as required by the 1933 Act, 15 U.S.C. § 77e(a)(2).

## VI. PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS'

## MOTION FOR PARTIAL SUMMARY JUDGMENT.

Defendants appear to argue that their COUNTER MOTION FOR SUMMARY JUDGMENT/ADJUDICATION should be granted in favor of Defendants because (and Plaintiff disagrees):

" Plaintiff engaged in a determined effort to harm his former clients."

(At Defendants' Response, p. 2, ll. 19-20).

"Plaintiff has committed a serious violation of the fiduciary obligations he owes to his former clients."

(At Defendants' Response, p. 3, ll. 10-12).

"Plaintiff's lawsuit is not a serious effort."

(At Defendants' Response, p. 4, l. 4 - 5).

"Plaintiff's lack of seriousness can be seen in the use of 'doe plaintiffs.'"

(At Defendants' Response, p. 4, ll. 5 - 7).

"Put simply, Plaintiff's complaint and his motions are a horrid mess of careless pleading brought for the sole purpose of harassing his former clients. The Court should not allow itself to be misused in this way"."

(At Defendants' Response, p. 4, ll. 16 - 19).

Defendants make such base arguments even while admitting that Defendant Proulx considered Plaintiff Coppola to be:

"honest," and

"thorough in fulfilling obligations."

(At Defendants' Response, <u>Affidavit of Darren K. Proulx</u>, p. 23, ll. 5 - 10, and Defendants' Response, <u>Exhibit</u> 4, questions 3. a. and b., dated January 8, 2010).

## VII. <u>UNCONTROVERTED FACTS CONCERNING DEFENDANTS'</u>
## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>.

1.  As noted above, Defendants fail to put at issue any fact contained in Plaintiff's Affidavit In Support of [Plaintiff's] Motion for Partial Summary Judgment, filed on July 14, 2011, and, therefore, each and every fact contained in Plaintiff's Affidavit In Support of [Plaintiff's] Motion for Partial Summary Judgment, filed on July 14, 2011, is uncontroverted.

2.  Plaintiff Coppola does not controvert any fact set forth in the AFFIDAVIT OF DARREN K. PROULX IN SUPPORT OF DEFENDANTS' COUNTER MOTION FOR SUMMARY JUDGMENT/ADJUDICATION.

3.  Plaintiff Coppola has no desire to "harm" his former employer/clients, but rather has the desire to right the wrong perpetrated by such employer/clients, to the degree "righting such wrong" is allowed by law; such wrong being the fraudulent actions of Defendants and the use by Defendants of Plaintiff Coppola's legal abilities to further Defendants fraud.

4.  Defendants attached as part of <u>Exhibit 4</u>, a letter dated January 8, 2010, to the State Bar of Nevada, which according to Proulx's Affidavit, at page 23, lines 5-10, "ask[ed Mr. Proulx] to respond to questions concerning Mr. Coppola's moral character ... [and Mr. Proulx's] responses are also attached as **Exhibit '4.'"** Mr. Proulx makes two admissions against interest, namely, that Plaintiff Coppola is both honest and thorough in fulfilling his obligations. Such admissions were made after Mr. Proulx had known Plaintiff Coppola for approximately two years and two months (November, 2007, to the date of signing the

letter, some time after January 8, 2010), and only slightly before Coppola's resignation in May, 2010.

5. Defendants do not submit any fact that Plaintiff Coppola is not honest.

6. Defendants do not submit any fact that Plaintiff Coppola is not thorough in fulfilling his obligations.

7. Plaintiff Coppola also submits, not for the truth of the matter within, but in support of Mr. Proulx's admission that Plaintiff Coppola is honest, a "LinkedIn" recommendation of a then and current employee of LRI, Hollie Vendittelli, that:

> "Stephen Coppola has great insight on how decisions should be made and the effect of them with his wealth of knowledge. He adds a genuine attitude to the work environment and you know you're going to get the truth when he's involved. His work is thorough and is willing to take the time to explain the information so it can be understood and taken into practice. It is a pleasure to have him on the team and simply put, he is a good guy."
>
> (Plaintiff's Exhibit 1).

8. Plaintiff Coppola also submits, not for the truth of the matter within, but in support of Mr. Proulx's admission that Plaintiff Coppola is honest, a "LinkedIn" recommendation of a then employee of LRI, Jacob Camp, that:

> "Mr. Coppola is an outstanding person, with a high work ethic ..."
>
> (Plaintiff's Exhibit 2).

9. Plaintiff Coppola was first licensed to practice law some 24 years ago, and in that time period has never had a complaint filed against him (and hence no discipline of any type), unless Defendants in this case have filed a complaint that Plaintiff Coppola is of yet not aware.

10. Since Defendants' have put Plaintiff Coppola's character into question, in addition to the attached exhibits, supra, concerning Plaintiff Coppola's character, Plaintiff Coppola notes the old adage that "the apple does not fall far from the tree," and notes that just a few months ago Plaintiff Coppola was at a Nevada State Medical Society dinner which in part

honored Plaintiff Coppola's father, Ralph James Coppola, with an award that was newly created and for which he was the first recipient, that being for lifetime achievement and service to both the medical community and to patients.

(Plaintiff's Exhibits 3 & 4).

11. Plaintiff Coppola submits Exhibits 3 & 4 in support of the fact that Plaintiff Coppola has brought this action to right wrongs by Defendants and as part of Plaintiff's professional work ethic to advance the legal community and confidence in the honesty of its members.

12. Plaintiff Coppola submits Plaintiffs Exhibit 5, an email from Ronald L. Melluish, an attorney licensed and practicing law in California, dated May 25, 2011, which Plaintiff Coppola submits not for the truth of the matters therein, but rather to show Plaintiff Coppola's state of mind in pursing this case, by showing that other licensed attorneys have concluded that Defendants' "whole deal is mostly a fee generating enterprise for the 'management'" that for the purchasers of the Investments is nothing other than an "albatross," and that "we would like to avoid losing our shirts."

13. Plaintiff Coppola submits Defendants' Exhibit 5 and Plaintiff's Exhibit 6 to demonstrate that Plaintiff was concerned about the unethical behavior of Defendants. Plaintiff Coppola submits Plaintiff's Exhibit 7, an email from Menchie Eugenio, another owner of real estate interests sold by Defendants, dated June 6, 2011, which Plaintiff Coppola submits not for the truth of the matters therein, but rather to show Plaintiff Coppola's state of mind in pursing this case, and which states,

> "Kudos to you!  I hope we will all 'see the light at the end of the tunnel[']; soon through your unselfish efforts.  Thank you for keeping us informed.  If there is anything we as a group [can do], please do not hesitate to let us know."

14. Defendants used Plaintiffs legal services to obtain various rulings and licenses from various state agencies by providing Plaintiff Coppola with information Defendants knew was false.  Defendants use of Plaintiff's letters to argue that Plaintiff Coppola should somehow lose this case.  The Defendants ill conceived theory is that Plaintiff Coppola

cannot change his opinion once he knows the true facts, rather than the false facts fed to Plaintiff Coppola by Defendants.

16. It can be inferred that Defendants sought to use such rulings and licenses to essentially keep various agencies off track.

17. While Defendants tout that the legal opinion authored by Gordon & Silver Ltd. resulted in the closing by Nevada Securities Division of its investigation, Defendants fail to note three important facts: (1) Defendants fraudulently supplied both Plaintiff Coppola and Gordon & Silver Ltd. with false information, (2) the counsel at Gordon & Silver Ltd. for some reason are not counsel to Defendants in the instant action, (3) that counsel at Gordon & Silver Ltd. privately opined, as Defendants know, that such counsel was seriously concerned that the real estate interests might be found to constitute securities if investigated by the SEC or if customers brought the issue to trial.

18. Plaintiff Coppola had discussed on numerous occasions with Mr. Proulx, in his individual capacity and as the CEO and owner of the Defendants, that it was the personal opinion of every attorney that was consulted, that there existed an extremely high probability that the offering by Defendants might well be found to be a security under The Securities Act of 1933 (the "1933 Act") and The Securities and Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 77b(a)(1), 15 U.S.C. § 77b(a)(1) either by an agency or in a lawsuit

19. Defendants' Exhibit 10 demonstrates how Mr. Proulx, and the Defendants in general, continue to mislead governmental agencies.

20. The Subpoena Duces Tecum dated September 15, 2010, from the Nevada Secretary of State, in its paragraph numbered "9)" asks for copies of any and all presentation or sales materials ...." However, Mr. Proulx pulled one of his favorite tricks, that being found in Mr. Proulx's letter to Mitchell W. Howard, dated September 17, 2010, attached in Defendants' Exhibit 10 which claims that answering such subpoena "is a hardship and overly burdensome."

21. Defendants next, in Exhibit 10, include a letter dated October 6, 2010 (the "October 16th Letter"), in which Plaintiff Coppola knows from reading the items listed in such letter as

being provided to the State of Nevada completely mislead the State of Nevada because the items listed in the October 6, 2010 letter omit reference to all of the fraudulent advertising material that led to Plaintiff Coppola's resignation.

22. For example, the October 16th Letter refers to an "Audio CD with recording of a client compliance call interview," but Mr. Proulx fails to disclose that the "compliance call interview program," which I tried to have implemented, was for some reason quickly discontinued, and used with only a small number of clients, which makes it highly misleading to include in the package to the State of Nevada without explanation.

23. The October 16th Letter includes a "Ministerial Duties Agreement," but the letter fails to state that such agreement is completely unrepresentative of the completely different management agreement and relationship that existed between the Defendants and the Associations from the beginning through 2009.

24. The October 16th Letter includes a "Ministerial Duties Agreement," but the letter fails to state that the terms of such agreement were not in fact followed, but instead the Defendants provided active management rather than mere ministerial functions.

25. The amount of materials that are significantly-material to such investigation but which are not referred to in the October 16th Letter is mountainous.

26. Of note, note how the *first* item included in the October 16th Letter is the California "Department of Real Estate Authorization (Public Reports)" which is a prime example of how Mr. Proulx and the other Defendants utilize such agency reports (which were fraudulently obtained in part through Plaintiff Coppola's unwitting services) to mask Defendant's activities with others.

27. Defendants falsely claim to comply with the terms of the subpoena.

28. The letter dated November 27, 2007, in Defendants' Exhibit 1, was never put into effect, but rather the operative agreement was that Plaintiff Coppola's legal work for Defendants would be only as a licensed Nevada 'In-house' counsel, per the January 8,2010 letter, in Defendants' Exhibit 4.

29. The reason for this was the mutual desire to avoid the cost of malpractice insurance.

30. Curiously, while Defendants allege that there are almost ten investigations that have been launched by governmental agencies, Defendants refer to only one as having been concluded.

31. Defendants allege that other doe plaintiffs are a figment of Plaintiffs imagination, which is curious because Defendants have met with the members of the plaintiffs' committee knowing it to be as such, and the members of which are listed, in part, in **PLAINTIFF'S NOTICE TO COURT OF RELATED CASE** filed contemporaneously with this pleading.

32. Defendants essentially are misleading this Court by acting as if Defendants do not know of such other doe plaintiffs and have not known of such other doe plaintiffs since before this action was filed.

## VIII.   LEGAL ANALYSIS REGARDING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT/ADJUDICATION.

Defendants, appear to rely upon what therefore is best characterized as an untenable defense by Defendants that 'Plaintiff is a bad person.'

Included in that mischaracterization, is that somehow, because Plaintiff is licensed as a California attorney, the California Rules of Professional Conduct magically attach to Plaintiff's representation of Defendants even though the Defendants admit that Plaintiff was acting in the capacity of a limited Nevada license in Plaintiff's representation of Defendants.

Getting to the crux of the matter, a review of Defendants' Response, pp. 12 - 18, fails to show what law Defendants' specifically claim is at issue.  Rather, Defendants review California cases which speak of policy.  Rather, Defendants merely review certain California cases in a general manner. It is significant that Defendants fail to cite the purported rule of professional conduct that Plaintiff purportedly violated.  In fact, Defendants' counsel have artfully recited the California cases they

discuss in a manner which avoids reciting a relevant California legal standard of professional conduct or statute.  It is surprising that Defendants did not recite:

Rule 3-100 Confidential Information of a Client

(A) A member shall not reveal information protected from disclosure by Business and Professions Code section 6068, subdivision (e)(1) without the informed consent of the client, or as provided in paragraph (B) of this rule,

or,

Business and Professions Code section 6068, which provides:

.It is the duty of an attorney to do all of the following:

(e) (1) To maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.

Defendants completely fail to address how they or any of them were "clients" of Plaintiff for purposes of the California Rules of Professional Conduct when Plaintiff represented them in his capacity as a Nevada licensed in-house counsel for purposes of malpractice insurance.  The letter presented by Defendants as Exhibit 1, never went into effect and Plaintiff was never paid on the basis set forth in such letter, but rather Plaintiff was immediately hired as an employee as in-house counsel due to Plaintiff's concerns about licensing and the cost of malpractice insurance.  It is misleading of Defendants to attach Exhibit 1 without such explanation.

Indeed, Defendants, through their  affidavit admit that:

"[i]n or around January of 2010, Mr. Coppola registered with the State Bar of Nevada as in-house counsel for LRI.  He was given the Nevada Sate Bar number 11343C."

It should be noted Plaintiff mailed the original application upon employment with LRI.

1  Therefore, the relevant Rules of Professional Conduct are those of Nevada, which Defendants fail

2  to even address, and which provide, in relevant part:

3      Rule **1.6. Confidentiality of Information.**

4         (b) A lawyer may reveal information relating to the representation of a client to the

5  extent the lawyer reasonably believes necessary:

6           (2) To prevent the client from committing a criminal or fraudulent act in

7  furtherance of which the client has used or is using the lawyer's services, but the lawyer

8  shall, where practicable, first make reasonable effort to persuade the client to take suitable

9  action;

10           (3) To prevent, mitigate, or rectify the consequences of a client's criminal or

11  fraudulent act in the commission of which the lawyer's services have been or are being

12  used, but the lawyer shall, where practicable, first make reasonable effort to persuade the

13  client to take corrective action;

14           (5) To establish a claim or defense on behalf of the lawyer in a controversy

15  between the lawyer and the client, to establish a defense to a criminal charge or civil claim

16  against the lawyer based upon conduct in which the client was involved, or to respond to

17  allegations in any proceeding concerning the lawyer's representation of the client; ....

18

19

20  The very reason for and essence of this case involves the fact that Defendants utilized Plaintiff

21  Coppola's services to commit fraud on some 1,400 investors and that Plaintiff has since attempted

22  to prevent, mitigate and rectify the consequences of such fraudulent actions of Defendants. Such

23  actions of Plaintiff in bringing this action are expressly allowed by the controlling Nevada Rules

24  of Professional Conduct and do not violate any law alleged by Defendants.

25

26      **IX.**     **CONCLUSION REGARDING DEFENDANTS' COUNTER**

27                 **MOTION FOR SUMMARY JUDGMENT.**

28      Wherefore, for the reasons stated in this pleading, Plaintiff Coppola respectfully hereby

moves that the Defendants' COUNTER MOTION FOR SUMMARY JUDGMENT, pursuant to

Fed.R.Civ.P. 56, be denied as there is no fact in evidence that Plaintiff Coppola violated any relevant law.

## X.  FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS.

1. As early as 1995, the Social Security Administration, and as late as 2011, concluded that Plaintiff Coppola has a disability that can prevent him from engaging in any gainful employment.

2. Further, from 1995 through the current year, Plaintiff Coppola has received substantial monthly payments upon such disability from a private insurance company.

3. It is because of such disability that Plaintiff Coppola informed Defendants upon their first meeting that Plaintiff Coppola did not desire anything more than a part-time job.

4. Such disability is a health condition for purposes of the Americans with Disabilities Act of 1990.


## XI.  CONCLUSION REGARDING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS.


Wherefore, because Plaintiff Coppola has had a clearly established disability at all times relevant to this action that is a health condition for purposes of the Americans with Disabilities Act of 1990, Plaintiff Coppola respectfully hereby moves that the Defendants' MOTION FOR JUDGMENT ON THE PLEADINGS be denied.

Dated:                                          Friday, August 5, 2011




_____

Ralph Stephen Coppola
Plaintiff

## CERTIFICATE OF MAILING

I hereby certify that on this 5th day of August, 2011, I deposited the foregoing **PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT; OPPOSITION TO COUNTER MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; AND OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADING** into the US Mail, Postage prepaid, addressed to:

Robert A. Koenig
Ryan Kerbow
Alessi & Koenig, LLC
9500 W. Flamigo, Suite 205
Las Vegas, NV 89147

Dated:                                    Friday, August 05, 2011

_____
Ralph Stephen Coppola

1   **Ralph Stephen Coppola**
    **4785 Rio Pinar Drive**
2   **Reno, NV 89509**
    **Pro Se**
3   **775 827 2344**

4
                        UNITED STATES DISTRICT COURT
5                       DISTRICT OF NEVADA - RENO

6   RALPH STEPHEN COPPOLA,          )    CASE NO.:     3:2011cv00074
                    and             )
7   DOES I to XX,                   )    PLAINTIFF'S NOTICE TO COURT OF RELATED CASE
                                    )
8          Plaintiffs               )
                                    )
9          vs.                      )
                                    )
10  DARREN K. PROULX, LAND          )
    RESOURCE INVESTMENTS,           )
    INC., LAND RESOURCE             )
11  MANAGEMENT, INC., and           )
    MARINA COMMERCIAL OFFICES, LLC) )
12              and                 )
    DOES I to XX,                   )
13         Defendants               )
    --------------------------------------

14

15
                    **PLAINTIFF'S NOTICE TO COURT OF RELATED CASE**
16

17  Comes now, Plaintiff, Ralph Stephen Coppola, who, pursuant to Local Rule 7-2.1(b)-(c)

18  respectfully provides notice to this Court of a possible related case, that being a case which will

19  be filed in this Court by the below named plaintiffs should their upcoming Motion(s) for Joinder

20  be denied.  The plaintiffs who will be named in the possible related case include, but are not

21  limited to:

22
            1.    FE P. ASTRERO
23          2.    MENCHIE D. EUGENIO
            3     BELEN LUMAS
24          4.    FLORA LUMAS FEQUERRAS
25          5     JOSEPH IBANEZ
            6.    IMELDA IBANEZ LB
26          7.    KATRINA LUMAS LB
27          8.    RAMSES M. AGUSTIN

28

9.      JOEMARIE JOPANDA
10.     WILMA JOPANDA
11.     GERARDO P. ASTRERO

Dated:                                                    Friday, August 5, 2011

_____
Ralph Stephen Coppola
Plaintiff

1

## CERTIFICATE OF MAILING

2

3       I hereby certify that on this 5th day of August, 2011, I deposited the foregoing

4    **PLAINTIFF'S NOTICE TO COURT OF RELATED CASE AND AFFIDAVIT** into the US Mail, Postage

5    prepaid, addressed to:

6

7    Robert A. Koenig
     Ryan Kerbow
8    Alessi & Koenig, LLC
9    9500 W. Flamigo, Suite 205
     Las Vegas, NV 89147

10

11

12

13

14

15

16                              Ralph Stephen Coppola

17

18

19

20

21

22

23

24

25

26

27

28

1

# EXHIBIT 1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# EXHIBIT 1

28

## Hollie Vendittelli has recommended you on LinkedIn

From: **Hollie Vendittelli**
Date:
October 9, 2009
To:
Stephen Coppola
Status:
Viewed
Dear Stephen,
I've written this recommendation of your work to share with other LinkedIn users.

Details of the Recommendation: "Stephen Coppola has great insight on how decisions should be made and the effect of them with his wealth of knowledge. He adds a genuine attitude to the work environment and you know you're going to get the truth when he's involved. His work is thorough and is willing to take the time to explain the information so it can be understood and taken into practice. It is a pleasure to have him on the team and simply put, he is a good guy."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

# EXHIBIT 2

**Jacob Camp**
*. Assistant to the Vice President of Sales, Land Resource Investments, Inc. (colleague)*
worked indirectly for you
"Mr. Coppola is an outstanding person, with a high work ethic, and he possess critical thinking skills that have solved many dilemmas. Mr. Coppola has a high aptitude for problem solving inside of a timely manners. I highly recommend Mr. Coppola to any organization, as he has been invaluable in the numerous projects I have collaborated with him." *April 4, 2010*
<u>Request a new or revised recommendation from Jacob Camp</u>

1

# EXHIBIT 3

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

# Washoe County Medical Society
# Celebrates New Officers

THE WASHOE COUNTY MEDICAL SOCIETY (WCMS) RECENTLY RECOGNIZED THREE SPECIAL INDIVIDUALS DURING THE AWARD & INAUGURAL CEREMONIES AT ITS 2011 PRESIDENTIAL INAUGURAL CELEBRATION.  ATTENDANCE AT THE "FIESTA" EVENT WAS AT AN ALL TIME HIGH.

T**OMAS HINOJOSA, JR., M.D.,** has been elected as the 105th President of the WCMS. Dr. Hinojosa is a board-certified gastroenterologist and practices at Digestive Health Associates in Reno. Dr. Hinojosa grew up in San Diego, attended college at the University of California, graduate school at Creighton University and completed medical school, internship, residency and fellowship at the University of Missouri. Dr. Hinojosa is certified by the American Board of Internal Medicine for internal medicine and gastroenterology. He also belongs to these professional organizations: American College of Gastroenterology and American Society for Gastrointestinal Endoscopy. Dr. Hinojosa is a clinical assistant professor, University of Nevada, Reno School of Medicine. His honors include Fellow, American College of Physicians, 1997 and Fellow, American College of Gastroenterology, 1998.

Dr. Hinojosa came to Reno in 1993



Wesley Hall VI, M.D., accepting the C H Woods Award.

and helped develop Digestive Health Center, which is a freestanding endoscopy center, which opened its door in 1995. He serves as Chief of Gastroenterology at Saint Mary's Regional Medical Center. He has organized a continuing medical education course held annually at Lake Tahoe. He enjoys all aspects of inpatient and outpatient gastroenterology. Dr. Hinojosa has been an active member in good standing with the WCMS and the Nevada State Medical Association since 1996. He has served on the WCMS Board of Directors since 2008 and is also a Delegate to the Nevada State Medical Association.

**Wesley W. Hall, Sr., M.D.,** was this



Dr. Kieckbusch passing the gavel to new President Tomas Hinojosa, M.D.

PHOTOS © DAVID REICHERT

year's recipient of the WCMS's C.H. Woods Award. C.H. Woods Award recipients are nominated by their fellow physicians.

Dr. Hall, Sr. attended the University of Mississippi and did his internship at Presbyterian-St. Luke's Medical Center in Denver, CO. He served as a medical officer in the U.S. Navy and, upon completion from military service, went back to finish his medical education and completed his surgical residency from the University of Colorado in 1971. Dr. Hall was board certified by the American Board of Surgery in 1973. He started performing trauma patient services at Washoe Medical Center (Renown) in 1988 and has served as Chief of Surgery and Chief of Staff at Washoe Medical Center.

Dr. Hall, Sr. has spent many years dedicated to working with Access to Healthcare Network, taking care of patients that wouldn't otherwise have access to the treatment they need. Early in the program, he was the only participating general surgeon. For several years, he was the only surgeon at all. Dr. Hall, Sr. currently performs and specializes in state-of-the-art hair transplants.

**Ralph J. Coppola, M.D.,** was this year's recipient of the WCMS's Presidential Service Award. This is a special honorary award only awarded by the WCMS President to an individual, organization or company who has gone above and *See Page 14*

*Continued from Page 5*

beyond the call of duty. Dr. Coppola was chosen for this award because of his contributions to the Society and to medicine for his exceptional and longstanding service as the northern Nevada Delegate to the American Medical Association.

Dr. Coppola got his medical degree at Georgetown University in Washington, DC, in June 1959. His internship was completed at the University of Utah in June of 1960, with his residency done at Baylor University, Houston, TX, otolaryngology 1962 to 1963, general surgery 1963 to



... and this is just a part of the audience.

1964, ear, nose and throat, 1964 to 1965.

Dr. Coppola served on the Saint Mary's

Regional Medical Center's Credentialing Privilege Committee for 30 years. He is also an elected member for the Surgical Service Committee and Executive Committee at Saint Mary's Regional



In the "fiesta" spirit are Jan Schiff and her husband Steven Schiff, M.D.



Dr. Coppola

Medical Center. He has also held the following positions: a member of WCMS, Nevada State Medical Association and the American Medical Association since 1966; American Academy of Ophthalmology and Otolaryngology; Reno Surgical Society; American Council of Otolaryngology; Centurion Club (Otolaryngology); and Fellow of American College of Surgery.



**Love your hot tub, now love it even more...**

**SALINE SYSTEM UPGRADES**
Makes your own water treatment from salt.
Virtually Maintenance Free

**50% off**

**The Ace Salt Water Sanitizing System***

*"Our Hot Springs Spa has been a gift to the entire family. My husband usually starts his day with 20-30 minutes in the hot tub while reading his kindle. In the evenings, my 14 year old son uses the spa to relax after his homework. And on weekends, our daughter in college and her friends come over to enjoy it. We really enjoy our spa. Thank you Tony."*

*Ellen McBride, M.D.*

**HotSpring**®
*Portable Spas*
Built for a lifetime of relaxation.®

3331 S. Carson St. Carson City, NV 89705
www.yourSpaStore.com • 775-884-4884

3/19/2011

RENO.GAZETTE-JOURNAL/RGJ.COM

# BUSINESS

## PEOPLE ON THE MOVE

### PHYSICIANS HONOR COPPOLA

The Washoe County Medical Society recognized **Ralph J. Coppola** M.D., with the Presidential Service Award at the recent Award & Inaugural Ceremonies at its 2011 Presidential Inaugural Celebration. 

*Send news and photos of Northern Nevada business people to business@rgj.com*

1
2                                    EXHIBIT 5
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
                                     EXHIBIT 5

-25-

**From:** RMelluish@aol.com (RMelluish@aol.com)
**To:** RSC@StephenCoppola.com;
**Date:** Wed, May 25, 2011 3:29:26 PM
**Cc:**
**Subject:** Landbank IV

Hello Mr. Coppola;

My dad purchased an interest in Land Bank IV in 2001 for $9K.

He died in 2004 and my sister and I inherited this albatross.

We're now down the road over $2,500 in "dues" and transfer fees.

I have just skimmed your Amended Complaint in the federal action in Nevada.   (Found Googling "complaints 'Land Resource Investments'").   At least I feel less along in my opinion that this whole deal is mostly a fee generating enterprise for the "management."

Anyway, other than wishing you luck, I just wanted to ask:  is there any organized resistance that you know of?  A blog?  A site?  whatever?

They are apparently pretty desperate for proxies for this June 4th meeting.  This is the first time I've ever gotten a phone call asking for a proxy, or the threat that the meeting may have to canceled "at the expense of the members" no less.

So it makes me wonder if there's organized resistance, OR if many folks like me are uninformed of specifics but nonetheless fed up generally, OR if it's just garden variety diminution of interest over the years and folks just aren't returning their proxies?

Again, good luck.  Please share any info you have that might be of interest to me.  We are not vested enough to make this a full time job, but we would like to avoid loosing our shirts!

Ron Melluish

Law Offices Of Ronald L. Melluish
P.O. Box 2800
Elk Grove, CA 95759

(916) 683-1599
Fax (916) 683-1782
e mail RMelluish@AOL.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 6

# EXHIBIT 6



**Amanda Lee** February 9 at 8:13pm Report
Wow, I wish I could say I am surprised but the only thing that surprises me is that its taken this long for an action like that to be taken. One of the main reasons I was trying to find way to jump ship ...didn't want to get embroiled in what I felt to be an imminent legal quandry. I trust your instincts and your ethics after getting to "know" you better via Facebook, and thanks for letting me know. I hope all is well with you and yours.

**Amanda Lee** February 10 at 6:38pm Report
I'll have to see, things are chaotic for me I'm normally scheduled tight as can be around work and the boys and being sick almost all of the time... but let me know when/where. You should REALLY hit up Michael Fiore, he has a grasp on more information than I did and has already been contacted once or twice by lawyers in CA regarding some of the landbanks. Most of what I can remember, is being forced to fudge or damned near falsify a lot of information we advertised with but can't remember specifics?

I never did hear that story though of how you became guardian to those kids?

1
2                         EXHIBIT 7
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28                          EXHIBIT 7

**From:** Menchie Eugenio (menchieugenio@gmail.com)
**To:** RSC@stephencoppola.com;
**Date:** Mon, June 6, 2011 10:56:58 AM
**Cc:** meredith.agustin61@gmail.com; jome97@sbcglobal.net;
**Subject:** Re: Revised letter

Hi Steve,

Kudos to you! I hope we will all "see the light at the end of the tunnel: soon through your unselfish efforts. Thank you and please keep us informed. If there is anything we as a group, please do not hesitate to let us know.

Sincerely,
Menchie D. Eugenio

On Mon, Jun 6, 2011 at 3:40 AM, Ralph &quot;Stephen&quot; Coppola, Esq. <RSC@stephencoppola.com> wrote:

# Here is the final version as just faxed.

Ralph "Stephen" Coppola

"This message and accompanying documents are covered by the electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, and may contain privileged, proprietary, confidential and/or attorney client - privileged information intended for the specified individual(s) only. If you are not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, copying, or the taking of any action based on the contents of this information is strictly prohibited. If you have received this communication in error, please notify us immediately by E-mail, and delete the original message. Although we have taken steps to insure that this email and attachments are free from any virus, we advise that in keeping with good computing practice the recipient should ensure they are actually virus free. Any tax advice contained in this e-mail is not intended and may not be used to avoid penalties under U.S. federal tax laws, or to promote, market or recommend to another party any transaction or matter addressed herein."