John White, Esq., S.B.#1741
White Law Chartered
Twentieth Century Building
335 West First St. Reno, NV 89503
775-322-8000
775-322-1228 (Fax)
john@whitelawchartered.com
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | CASE NO.: 3:11-CV-00074-LRH-VPC |
| RALPH STEPHEN COPPOLA, | |
| COPPOLA ENTERPRISES, LLC AND | |
| RALPH STEPHEN COPPOLA, | |
| TRUSTEE OF THE R. S. COPPOLA | **SECOND AMENDED** |
| TRUST DATED OCTOBER 19, 1995. | **COMPLAINT** |
| Plaintiffs | |
| vs: | |
| DARREN K. PROULX, LAND | |
| RESOURCE INVESTMENTS,INC., | |
| LAND RESOURCE | |
| MANAGEMENT, INC., and MARINA | |
| COMMERCIAL OFFICES, LLC | |
| Defendants | |

COMES NOW PLAINTIFFS, above-named, who, for claim against Defendants, alleges as follows:

## NATURE OF THE ACTION

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
35 W. FIRST STREET
RENO, NV 89503

ʳ (775) 322-8000
ʳ (775) 322-1228

1

1. INTRODUCTION.

Ralph Stephen Coppola, a Nevada employee, who acted in part as in-house counsel for his employer is (together as to some claims, with such employee's solely owned LLC and his living trust) is Plaintiff.  In this Complaint, Coppola seeks rescission for selling unregistered securities, reinstatement by reason of Proulx's whistleblower retaliation, damages for securities fraud, including refund of dues paid, refund of purchase price for the Interest, damages for lost wages, for damages to professional reputation, damages for emotional distress, and damages for lost future wages.

2. JURISDICTION AND VENUE.

    a.  Section 22 of the Securities Act of 1933 gives the district courts of the United States jurisdiction under cases involving the Securities Act of 1933.

    b.  Section 27(a) of the Securities Act of 1934 gives the district courts of the United States jurisdiction under cases involving the Securities Act of 1934.

    c.  18 U.S.C. Section 1965(b) confers jurisdiction upon the district courts under the Racketeer Influenced and Corrupt Organizations Act (RICO).

    d.  This court also has supplemental jurisdiction under 28 U.S.C. §1367(a).

    e.  This Court also has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. § 1331.

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
25 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

f.  The Securities Whistleblower Incentives and Protection provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6, passed in July 2010, includes a private cause of action for whistleblowers alleging retaliatory discharge or other discrimination. §8u-6(h)(1)(B)(i), § 78u-6(h)(1)(C).

g.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, including because many of the acts occurred in this judicial district..

h.  In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, and interstate telephone communications.

i.  This court has personal jurisdiction because Defendant Proulx is a resident of the State of Nevada.

3.  PARTIES.

a.  Plaintiff Ralph Stephen Coppola ("Coppola") is a resident of Nevada. Plaintiff was counsel for the defendant LRI from November 27, 2007 to May 8, 2010, and for the other defendants during approximately the same period, during which time he regularly dealt with the various Nevada and California agencies charged with monitoring investment schemes of this nature.

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
38 W. FIRST STREET
RENO, NV 89803

T (775) 322-8000
F (775) 322-1228

b.  Plaintiff Coppola Enterprises, LLC ("CELLC") is a Nevada limited Liability Company.

  i.  This LLC is the lessee of Plaintiff Coppola's office space.

c.  Plaintiff Ralph Stephen Coppola, trustee of the R. S. Coppola (Revocable Living) Trust dated October 19, 1995,  is the owner of an Interest in Landbank 008.  As this Trust is revocable, Ralph Stephen Coppola and his living trust will be, unless the context otherwise requires, referred to together as "Coppola," and reference to "Coppola" will include his living trust where the context so requires.

d.  Defendant LRI is a California Corporation, California Entity Number C2134278, doing business primarily in California, although its administrative headquarters is located at  325 Harbour Cove Drive, Suite 211, Sparks, NV 89434.

  i.  LRI operates primarily as a sales organization to sell the undivided real estate interests in the Landbanks (which interests are referred to herein as "Interests").  The sale of such Interests appears to have ceased in 2010.

  ii.  Prior to 2010, LRI also provided management services to the Associations discussed herein.

e.  Defendant Land Resource Management, Inc. ("LRM") is a Nevada Corporation, Nevada Business ID NV 20051725983, doing business in

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
38 W. FIRST STREET
RENO, NV 89603

f (775) 322-8000
f (775) 322-1228

Nevada and the primary office of which is located at 325 Harbour Cove Drive, Suite 211, Sparks, 89434, Washoe County, Nevada.

    i. LRM operates primarily by contract to perform "ministerial" services to the Associations as discussed further, herein, commencing in 2010. LRM was organized in 2005 for this purpose but did not undertake this role until 2010.

f. Defendant Marina Commercial Offices, LLC. ("Marina") is a Nevada Limited Liability Company, Nevada Business ID NV 20071091794, doing business in Nevada. Marina's primary office is located at 325 Harbour Cove Drive, Suite 211, Sparks, 89434, Washoe County, Nevada.

    i. Marina operates primarily as the holding company for the ownership of the real estate located at 325 Harbour Cove Drive, Sparks, NV.

g. Defendant Darren K. Proulx is a resident of Washoe County, Nevada:

    i. Proulx is the sole shareholder (setting aside community property issues) and CEO of LRI.

    ii. Proulx is the sole shareholder (setting aside community property issues) and President of LRM.

    iii. Proulx is the sole member (setting aside community property issues) and managing member of Marina.

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
38 W. FIRST STREET
RENO, NV 89503

f (775) 322-8000
f (775) 322-1228

5

iv.  Proulx, because of his position of control and authority as officer and or director of LRI was able to and did control the content of all public releases, seminars, and statements, during the relevant period and was provided with copies of all of the documents that were misleading and had the ability or opportunity to prevent their issuance or to correct their issuance and therefore is primarily liability for their issuance and accuracy.

v.  Each of the Selling Defendants is liable to Plaintiff (and any plaintiffs which may be permitted to intervene in this action) for a fraudulent scheme that operated as a racket employing deceptive facts based upon fraud or deceit perpetrated upon purchasers of Interests.

vi.  The scheme deceived the purchasers regarding the intrinsic value of the Investment.

vii.  The scheme caused investment at inflated prices.

4.  NON-PARTY UNINCORPORATED ENTERPRISE.

a.  "The unincorporated Landbank 008 Enterprise" ("Landbank 008") is the name used in this Complaint for the ownership of the Landbank 008, being the Landbank in which Coppola purchased and now owns an Interest.

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
35 W. FIRST STREET
RENO, NV 89603

T (775) 322-8000
F (775) 322-1228

       i.  Landbank 008  is approximately 76.57 acres, situate at Avenue I &

          65th Street East, Lancaster, California, APN, 3384-003-008.

      ii.  Coppola owns a 0.05% interest in the enterprise of which the other

          132 Interest holders of the securities are shareholders.

   b.  Coppola paid $16,500.00 for such interest, plus dues.  Such interest was

      recently valued by LRI at approximately $11,500.00 on resale sheets.

5.  NON-PARTY ASSOCIATIONS.

   a.  This complaint regularly refers to the 17 active non-profit Associations

      created by one or more Defendants to facilitate the sale of Interests

      referred to herein,  The Associations are not parties to this lawsuit at this

      time.  They include, but may not be limited to the following (with date of

      incorporation in California set forth in parenthesis):

       i.  Cal Land Resources I Association, Inc. (03/02/1999),

      ii.  California Land Resources II Association, Inc. (03/02/1999),

     iii.  Cal Land Resources III Association, Inc. (03/02/1999),

     iv.  Cal Land Resources IV Association, Inc. (03/22/2001),

      v.  Cal Land Resources V Association, Inc. (03/22/2001),

     vi.  Cal Land Resources VI Association, Inc. (03/22/2001),

    vii.  Cal Land Resources VII Association, Inc. (03/22/2001),

   viii.  Cal Land Resources VIII Association, Inc. (01/12/2004),

     ix.  Cal Land Resources IX Association, Inc. (01/12/2004),

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
28 W. FIRST STREET
RENO, NV 89503

f (775) 322-8000
f (775) 322-1228

    x.  Cal Land Resources X Association, Inc. (01/12/2004),

    xi.  Cal Land Resources XI Association, Inc. (01/12/2004),

    xii.  Cal Land Resources 033 Association, Inc. (09/28/2005),

    xiii.  Cal Land Resources 034 Association, Inc. (09/28/2005),

    xiv.  Cal Land Resources 008 Association, Inc. (12/08/2005),

    xv.  Cal Land Resources 1011 Association, Inc. (12/08/2005),

    xvi.  Cal Land Resources 027 Association, Inc. (01/25/2006),

    xvii.  Cal Land Resources 073 Association, Inc. (04/04/2007),

    xviii.  Cal Land Resources 1718 Association, Inc. (10/10/2007 ~ Dissolved),

    xix.  Cal Land Resources 1920 Association, Inc. (10/10/2007 ~ Dissolved),

    xx.  Cal Land Resources 009 Association, Inc. (04/04/2008).

## GENERAL ALLEGATIONS

6. PRELIMINARY STATEMENT

    a.  Coppola was an employee of defendant LRI, and in part acted as its as in-house counsel under a limited Nevada law license.  All the Defendants, except Defendant Proulx, individually, are his former clients.

    b.  The defendants were selling undivided real estate interests ("Interests") in land banks located in Lancaster, California.

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
38 W. FIRST STREET
RENO, NV 89803

(775) 322-8000
(775) 322-1228

    i.   A buyer ("Investor") of an Interest would get a traditional grant deed to an undivided interest in the land bank.

    ii.   The land itself was initially owned by one of Proulx's entities.

    iii.   When another entity of his, LRI, had sold a given percentage of interests in a particular Landbank, such entity would convey the land to LRI.

    iv.   Escrow would issue grant deeds to the Investors.

c.   Over one thousand Investors, precisely 1,346 investors, including Plaintiff, are victims of this investment scheme.  To date, these Investors have transferred over $40,000,000 to Defendant LRI by reason of this scheme.   Several of the Investors have filed motions to intervene, which are pending in this Court.  Many more have expressed interest.

d.   The representation was that at some later date the land would be sold at a profit and the sales proceeds would be distributed to the investors as is more specifically shown hereinafter, including by the exhibits to this Complaint.

e.   During 2008, Coppola and the attorneys at two other law firms began advising Proulx that the nature of the Interests probably required them to be registered as securities under state and federal securities laws.  However, Proulx stated such registration was not acceptable.  Among other things, Proulx did not want to change LRI's business model because

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
35 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

this would require him to hire securities brokers rather than utilize real estate agents.

f.   Eventually, Coppola discovered that LRI was engaged in false advertising.  Coppola  then consulted with the Nevada State Bar ethics panel.  On the basis of the information given by that panel, Coppola immediately demanded that LRI cease such false advertising and register with the Securities and Exchange Commission.  When LRI refused, Coppola submitted his resignation [Document 24-5, filed 07/26/11] and advised the regulatory agencies which he had been unintentionally misleading, as well as the SEC, that Defendant LRI was engaged in false advertising and selling unregistered securities in violation of applicable state and federal law.

g.   Not long after he resigned, Coppola was, in retaliation, fired by the 17 associations, at the instance and request of LRI's sole shareholder and CEO, Proulx.

7.   THE INTERESTS ARE SECURITIES.

a.   Proulx and LRI (jointly,"Selling Defendants") sold Interests in land banks from approximately the beginning of 2000 through 2010 to Investors.

   i.   References to LRI include reference to Land Resource Concepts, Inc., the predecessor in interest to LRI.

b.   These Interests were and are securities under federal law.

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
25 W. FIRST STREET
RENO, NV 89503

r (775) 322-8000
r (775) 322-1228

i.   Under Section 2(a)(1) of the Securities Act of 1933, "unless the context otherwise requires," the term "security" includes any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

c.   These Interests were and are securities under Nevada state law (NRS 90.295).

i.   "'Security' means a note, stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in a profit-

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
38 W. FIRST STREET
RENO, NV 89503

' (775) 322-8000
' (775) 322-1228

sharing agreement, a limited partnership interest, an interest in a limited-liability company, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, viatical settlement investment, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in an oil, gas or other mineral lease or in payments out of production of such a lease, right or royalty, a put, call, straddle or option on a security, certificate of deposit or group or index of securities including any interest therein or based on the value of any of the foregoing, or, in general, any interest or instrument commonly known as a security or any certificate of interest or participation in, temporary or interim certificate for, receipt for, whole or partial guarantee of or warrant or right to subscribe to or purchase any of the foregoing...."

d.  As such, they were therefore required to be registered under the Securities Exchange Act of 1934.

e.  As such, they were therefore required to be registered under Nevada securities laws (NRS 90.460 to 90.510).

f.  The sale of Interests were securities under a "promoter" theory for the following reasons:

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG.
35 W. FIRST STREET
RENO, NV 89503

r (775) 322-8000
r (775) 322-1228

i. Selling Defendants represented that they held particular expertise as experts in Landbanking.

   1. Landbanking is the practice of purchasing raw land near the edge of a rapidly growing city with the intent to hold on to it until such a time as it is profitable to sell it on to others for more than was initially paid. Land is popular as an investment as it is a tangible asset as opposed to shares or bonds.  The intended increase in value may come from inflation, conversion for use as housing, or potential for extraction of raw materials.  Typically,  parcels of land desirable for Landbanking are those that lie directly in the growth path of rapidly developing cities. The initial goal is to buy undeveloped land that will increase in value because it lies in the path of urban growth. The investment objective is to identify these parcels well in advance of the developers and wait for the value to be realised.  In the case of LRI, LRI represented that it made Landbanking available to the average individual by allowing individuals to combine their investments and thereby combine their purchasing power.

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
25 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

    ii.  Selling Defendants represented that they had utilized such expertise in selecting Properties that met the requirements of the Landbanking theory.

    iii.  Proulx represented that he was an expert in Landbanking.

    iv.  Proulx gave as an example of his expertise that he had written the book, "Paydirt."

        1.  In fact, the book "Paydirt," was ghostwritten by someone else.

    v.  Oral representations that LRI and Proulx would provide continuing expert management included:

        1.  During 2000 through 2001, and thereafter, Selling Defendants, through their salespeople, and directly by Proulx, made oral representations at sale seminars held in various locations of California, but mainly in the Bay Area of California, with a large concentration in the area around Vallejo.

        2.  These representations were made predominately to persons whose first language is not English, to potential purchasers of Interests in Landbanks I through III.

        3.  The representation was that should a potential investor purchase an Interest, then the Selling Defendants would

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
38 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

continue to participate as the parties responsible for exercising their expertise in Landbanking during the holding period in the management of the Properties.

4. The contracts prepared by the Selling Defendants generally violated California law because:

    a. California law required that the contracts be in the language of the non-native speakers since the sales pitches were not in English.

    b. However, the sales contracts violated the law and were in English.

vi. The enterprise was horizontally integrated because the fortunes of the individual investors are tied together by virtue of the fact that:

    1. even if an individual investor paid that person's dues to the Association in full, that investor could lose his investment if:

        a. the Association failed to collect enough from the other members to pay either the property taxes; or

        b. keep the property abated of weeds; or

        c. if there was an accident upon the property causing personal injury to a third party (since there was no casualty insurance).

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

15

2.   Further, should 60% of the Investors vote to sell, a power of attorney kicks in and an individual investor is forced to sell with LRI or Proulx having the ability to exercise such power of attorney.

3.   Finally, each grant deed is subject to CC&Rs which transfer a bundle of significant ownership rights from the individual Investor to the Association of which the Investor automatically becomes a member.

vii.  The enterprise was vertically integrated because, among other things, the promoter, LRI, utilized the Associations as a marketing tool for the sale of Interests in later Landbanks, and as a revenue tool (through the receipt of management fees),  and

1.   through purchase money mortgage interest,

2.   through profits from resale of foreclosed units,

3.   as a source of capital appreciation (through the profit of its related party, Proulx's personal interests in each Landbank), and

4.   ultimately through the brokers' commissions upon the sale, if any, of a Property.

viii.  Proulx controlled over 50% of the proxies of each Association from 2000 through 2010.

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

16

        1. As such, he controlled the voting power of each Association.

        2. As such, he effectively made all member decisions.

  ix. Because the board members were all essentially chosen by Proulx and were volunteers, they essentially did whatever Proulx suggested or had arranged prior to the board meetings.

  x. During 2008 and/or 2009, both the law firm of Gordon Silver and the law firm of Jones Waldo advised Defendant Proulx that the provision of management services to the Associations created the appearance of a federal security.

        1. On that basis, they each advised, that a new contract be drafted that provided that LRM provide only "ministerial" duties rather than management services.

  xi. This new contract was entered into in 2010 at the annual meeting.

8. FRAUDULENT SECURITIES REPRESENTATIONS.

  a. Fraudulent representations include, but are not limited to those plead herein:

  b. This is an action for securities fraud under federal law in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78u-6, and Rule 10b-5, 17 C.F.R. §240.10b-5 as well as the Securities Act of 1933.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

17

c. Certain representations were made during the sales of units in Landbanks I through III which occurred during the periods from early 2000 through the close of escrow of Landbank III on June 8, 2001.

   i. These representations were made orally by Defendant Proulx and by and through the sales people retained by Defendant Proulx to sell the units.

   ii. The representations were made at seminars sponsored by Selling Defendants.  Dinner was served at most of these seminars.

   iii. An average of 10 to 20 potential investors generally attended these seminars.

   iv. Customers were attracted through word of mouth from the friends of purchasers, especially through a rewards program which, at some point, came to be known as the "Five Star Program," which gave cash for referrals.

   v. The fraudulent representations made at these seminars were as follows:

      1. that the units would be sold at a "significant profit."

      2. that each entire respective Landbank would be sold at some point "during an initial holding-period of five years."

      3. that "the purchasers would not have to pay dues."

      4. that the "Landbank would be sold."

5. that the "investor would have a material vote in the operation of the Association should the investor chose to exercise that vote."

6. that "the investor would be entitled to a pro-rata share of the assets of the Association if and when it was dissolved."

7. That those Properties that were leased were benefited by the lease.

vi. The truth was that:

1. because Proulx has blocked each potential sale over an 11 year period, it can be inferred that he never intended to allow a sale of a Property, and therefore, he knew that there would be no profit.

2. because Proulx has blocked each potential sale over an 11 year period, it can be inferred that he never intended to allow a sale of a Property, and therefore, he knew that no Landbank would be sold at some point "during an initial holding-period of five years."

3. that even though Proulx allowed such Investors to not pay dues for the first ten years, during 2010 Proulx began a vigorous collection effort to collect dues.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

4. because Proulx has blocked each potential sale over an 11 year period, it can be inferred that he never intended to allow a sale of a Property, and therefore, he knew that the Properties never would be sold.

5. that because Proulx solicited proxies from each investor at the time of each sale, it can be inferred that he knew that no investor would have a material vote in the operation of the Association should the investor chose to exercise that vote.

6. that because each association is organized as a California mutual benefit non-profit, therefore, no investor will be entitled to a pro-rata share of the assets of the Association if, and when it was dissolved.

7. That the real reason for leasing the properties prior to the close of escrow for a Landbank for a four-year period was that by leasing the property back to the farmer for a four-year period for only one dollar per year, that effectively reduced the price that the seller of the property was willing to sell the property for to Proulx's entity.  The reason is that the amount that the seller otherwise would have paid over the next four years in lease payments (to the Associations) was used to reduce the purchase price paid by Proulx's

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

entity.  This defrauded the Associations, and hence the members.

d.  For Landbank IV to Landbank 34 (all other Landbanks other than 073) sold between 2001 and 2007, an example of the types of representations include:

    i.  An "Xplanation™ (which is a visual map and story chart that tries to make complex transactions easy to understand visually), dated March 20, 2006, which has a Section 1 entitled "Investors" and which in the same "Xplanation™ in Section 2 states that "Land Resource Concepts [a predecessor in interest to LRI] can offer the Investor ownership in a specific parcel of land that has high future profit potential."

    ii.  Website material from August 2007, that refers to:

      1.  "a high future profit potential,"

      2.  "the point of maximum appreciated value," and

      3.  "land very valuable and highly saleable to builders and developers."

e.  For Landbank 073:

    i.  That during or before 2010, and prior to May 7 of 2010, LRI and Defendant Proulx, authorized the use of a web site and Webinars representing :

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

      ii.  that there would be a "growth potential" of "357%."

     iii.  that LRI had "[s]elect[ed] land directly in the identifiable and verifiable path of growth."

     iv.  that LRI would provide for "Selling of the Property," a "Distribution of the Profits," and "Management."

     v.  that  LRI or another entity would "Market and advertise the property at the peak of the market."

     vi.  that "[a]ll profit is distributed to owners on a pro-rata basis."

f.  Actual Damages:

     i.  With the potential exception of the Units in Landbank III, the Units, based upon current resale information from LRI, are worth as much as almost ½ less than the initial purchase prices.

        1.  The total amount invested by customers in purchasing the Interests in the Landbanks was approximately $40,092,000.00.

        2.  There is almost no secondary market.

        3.  There is no formal secondary market.

     ii.  Some of the Investors have held their Investments since 2000, for over 11 years, and have been paying monthly dues each month, since 2001, to this current date.

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
138 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

1.   The total amount of dues collectible on behalf of the

Associations to date is at least $3,000,000.00.

9.   COPPOLA'S EMPLOYMENT WITH LRI.

a.   Plaintiff Coppola had been retired for a few years.  Plaintiff Coppola was

not seeking employment. In November of 2007, Plaintiff Coppola

received an invitation from LRI to apply to it to act as its attorney. LRI's

longstanding attorney, George Kuceria, had recently passed away.

b.   Plaintiff Coppola met with Defendant Proulx and LRI's then Vice

President, Lori Ohmenzetter.  They told Plaintiff Coppola that they were

interviewing some twenty to thirty other applicants.  At first Plaintiff

Coppola was concerned about the company being a land-sales company

but Defendant Proulx shared with Plaintiff Coppola the stated values of

Defendant Proulx together with how his marketing techniques differed

from most land sales companies. In particular, Defendant Proulx stated

that rather than providing facts and financial projections, he and his

company invited potential purchasers to perform their own due diligence.

Defendant Proulx also noted that because the Investments were sold

pursuant to Public Reports, that Defendant Proulx could not refer to

potential profit.

c.   Further, Proulx emphasized how much the former LRI attorney, George

Kuceria, Esq., had made through the Interests he had acquired, and how

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

Coppola could acquire Interests, including the fact that he would receive one free Interest on the third anniversary of his employment.

d.  On that basis because Plaintiff Coppola loved real estate and real estate law, Plaintiff Coppola submitted his application for employment.

e.  LRI then offered Plaintiff Coppola the position of the attorney and negotiations commenced.  Because Plaintiff Coppola did not hold a Nevada law license Plaintiff Coppola told Defendant Proulx that Plaintiff Coppola would have to become a regular W-2 employee and practice law as in-house counsel under a limited Nevada-law license. Terms were agreed upon and Plaintiff Coppola was hired as an employee.  The terms of Coppola's employment were changed many times, both initially and over time.

f.  Plaintiff Coppola became an employee of and began representing Defendant LRI as "in-house" counsel on November 27, 2007.  Plaintiff Coppola began representing the other defendants at later dates, but the records with such information are with each such respective Defendant.

g.  As required by the Nevada State Bar, Plaintiff Coppola then submitted his application to practice as in-house counsel.  When a good amount of time had passed, with no word back from the Nevada State Bar, Plaintiff Coppola inquired as to the status of his application only to find out that it

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
336 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

had been lost.  Therefore, he had to reapply.  He was granted a limited license to practice law as in house counsel for LRI.

h.  The primary duties of Plaintiff Coppola for LRI were to  ensure compliance by LRI with applicable Nevada, California, and federal real estate laws, including licensing and subdivision laws.  Coppola also was responsible for corporate compliance with Nevada employment laws, and other regulatory laws. Beginning in 2007, Coppola's duties including routinely submitting numerous papers, documents and web information on behalf of LRI, in response to inquiries by Nevada and California agencies inquiring as to the sales practices and the product sold by LRI.  Coppola had the power to hire and fire employees and, when necessary, hire outside counsel.

i.  The primary duties of Coppola for LRM until 2010, when LRM and LRI quit managing the 17 associations, were to advise on Association compliance with California law and on dues collections.  Also, in his capacity as counsel for LRM, he attended each annual associations' meeting, beginning in the spring of 2008.  There was no annual meeting in 2009.  The next annual meeting was January 30, 2010.   Those two meetings were held in the city of Emeryville, CA.

j.  Coppola implemented a system whereby every advertisement and marketing item was to be submitted, including each page of a website

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

and Webinar, to the DRE, for prior approval, so that the DRE would then

assign each item an approval code which would then be included on each

page.  Exhibit A, Email of May 7, 2010, from Ralph Coppola to Darren

Proulx, "Background on Video, Investment Contract and investment

merit."

k.  The primary duties of Coppola for Marina were to research real estate

issues and negotiate lease terms.

l.  During the calendar year 2009 through the beginning of 2010, Plaintiff

Coppola increasingly butted heads with Defendant Proulx. The general

theme of these disputes was the value system of defendant Proulx by

which he picked and chose what laws he would follow: for example;

defendant Proulx routinely, illegally taped telephone conversations and

stored them on his computer hard drive for future use; defendant Proulx

refused to implement Nevada laws concerning the protection of customer

electronic data, NRS 597.970: Restrictions on transfer of personal

information through electronic transmission, and, NRS 603A,  Security of

Personal Information; Mr. Proux refused to implement the Federal Trade

Commission and the federal financial institution regulatory agencies

rules on identity theft "red flags" and address discrepancies. The crux of

Defendant Proulx's reasoning was that it cost him too much to comply.

Additional problems arose because plaintiff Coppola desired for an

annual meeting of the associations to be held in 2009, in order to amend

the governing documents as required by law.  Defendant Proulx refuse to

have an annual meeting despite that and even though the failure to have

the annual meeting violated the governing by-laws of the Associations.

Plaintiff Coppola began to desire to resign, but the issue of how to

continue to protect the Associations presented difficulties given

Defendant Proulx's control of the voting.

m.  During 2009 and early 2010, Plaintiff Coppola kept finding what were

described to him by Defendant Proulx as "rouge" web sites.  Defendant

Proulx claimed the sites were unauthorized and were maintained by

salespeople without authorization.  These sites were much more

aggressive than the web sites Coppola had been presenting to the various

California and Nevada regulatory authorities and would have prevented

sale of the securities without SEC registration.

n.  Defendant Proulx attempted to have Plaintiff Coppola engage in a

fraudulent loan application.

o.  Proulx, frustrated with the limitations of the California subdivision laws

on advertising profit potential, in 2010, caused Coppola to arrange a

meeting with the DRE to petition a change in the regulations, which

meeting was unsuccessful.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

p. Upon the failure of that meeting, Proulx then began to look into the possibility of hiring a lobbyist to seek legislative change in the law.

q. Coppola's belief in Proulx was crumbling.

r. That, on or about May 7, 2010, Coppola finally concluded that he had been defrauded by Defendant and that Defendants had caused him to present misleading and false marketing information to Nevada and California securities divisions, together with the California Department of Real Estate.

    i. This was as a result of the discovery of the secret website and Webinar mentioned herein, including the script which Coppola then attempted to have Proulx edit with Coppola's suggestions, as attached hereto as Exhibit B "Land Resource Investments Inc. Video."

s. On May 8, 2010, Coppola resigned.

t. Even after Coppola's resignation, [Document 24-5, filed 07/26/11], on May 9, 2010 and May 10, 2010, and even thereafter, Coppola petitioned Proulx, and petitioned Pam Sosa to convince Proulx, to take down the improper advertising.  Exhibit C,  Email of May 10, 2010, from Ralph Stephen Coppola to Pam Sosa, with description and with Part I of slides from Webinars, and Exhibit D, Email of May 10, 2010, from Ralph Stephen Coppola to Pam Sosa, and with Part II of slides from Webinars

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

(the Webinar was too large for one electronic file and therefore half was sent in each of the two May 10 emails).

10. COPPOLA'S PURCHASE OF AN INTEREST.

    a.   Escrow closed for the purchase by Plaintiff Coppola's revocable intervivos trust, the R. S. Coppola Trust, dated, October 19, 1995, of which Plaintiff Coppola is the sole Trustee, of a one/200th interest in Landbank 008, on January 6, 2010.  The total consideration was $16,500 of which $14,500 was a purchase money note and $2,000.00 was a cash credit for work done for LRI, together with Title Fees of $324.60,  Escrow Fees of $150.00, documentary transfer tax of $17.60, owner's title policy of $250.00, Deed preparation of $27.00 and trust deed(s) of $30.00.  The mortgage is handled through Standard Mortgage Financial Service, account 11802R.  The note provides for monthly payments of principal and interest of $219.92, together with dues of $23.00 per month.   By reason of this investment, Plaintiff received a grant deed, dated November 3, 2009, to a 1/200% interest in Landbank 008, a copy of which deed is attached hereto as Exhibit E, and a single vote out of 200 in Cal Land Resources 008 Association, Inc. That, by reason of this investment, Plaintiff has paid annual dues to his association of $276.00 per year, commencing with the calendar year 2010.

    b.   The prior attorney for LRI was George Kuceria.

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

c.  One of the inducements to Coppola to enter into employment with LRI was the fact that the arrangement between LRI and its prior attorney, George Kuceria, included payment by interests in Landbank interests.

d.  At the time of Coppola's hiring, Proulx had told Coppola of how much Kuceria had made through such interests and how much Coppola could make.

e.  Part of Coppola's compensation was to be paid not in cash, but was to be held in an account that would be accrued and then applied towards the purchase of an interest.

f.  On this basis, Coppola began purchasing the interest in a Landbank Interest from early in his employment in 2008.

g.  Therefore, even though the paperwork to purchase the interest in Landbank 008 was not completed until 2010, the purchase of the interest constructively made in 2008 as part of Coppola's initial employment package.

h.  At the time of Coppola's purchase, the Interests were securities that were required to be registered under Nevada and federal securities law.

i.  At the time of Coppola's purchase, the Interests were securities but were not registered under Nevada or federal securities law.

11.  COPPOLA'S VESTED INTEREST (SECURITY) ACQUIRED THROUGH EMPLOYMENT

WHITE LAW
CHARTERED
LAWYERS
50TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

a.  Coppola never received the Interest (Security) that he was suppose to receive upon his third anniversary of employment.

b.  The reason that Coppola never received the interest (Security) that he was suppose to receive upon his third anniversary of employment was that he was constructively terminated approximately six months before such date on May 8, 2010.

  i.  See Exhibit F, Email from Darren Proulx to Ralph Coppola, dated May 8, 2010, entitled "Re: Resignation," whereby Proulx "accept[ed] Coppola's] resignation."

12.  CONTRADICTORY POSITIONS OF PROULX AS TO VALUE.

a.  By 2007, LRI was putting its sales seminars on the Internet and inviting the potential new customers to view the seminars through a prearranged code and internet addresses (herein "Webinars").

b.  During early 2010, the Webinars informed potential purchasers in at least one "slide" that there was a potential for growth of "357%."

c.  These Webinars and representations were being made at the same time as the 2010 annual association meeting (held on January 30, 2010).

d.  At the 2010, Annual Association Meeting, Proulx said "[t]here is no market [for the real estate]," and "[t]he reason you can't sell is there's no buyers." [page 33 of the transcript of the Association record.]

13.  COPPOLA'S RESIGNATION AND FIRING

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

a. That on or about May 5, 2010, Proulx accidentally gave to Coppola a link to a website that violated  the Public Reports issued to for each Landbank project, which Public Reports provided as follows:

    i. "NO REPRESENTATIONS MAY BE MADE BY SUBDIVIDER OR AGENT THAT THE PROPERTY HAS INVESTMENT MERIT, FUTURE APPRECIATION POTENTIAL, OR MAY BE USED FOR ANY PURPOSE."

    ii. However, the website and webinar material which was mistakenly given to Coppola by Proulx stated that the current Landbank had:

       1. Investment merit, and

       2. "growth potential" of "357%."

a. On May 7, 2010, Coppola orally advised Proulx that the Interests were securities which were required to be registered under each of federal, California, and Nevada state law.

b. On or about Friday, May 7, 2010, Plaintiff Coppola called the Nevada State Bar and requested ethic's help.  Plaintiff Coppola was advised that he should give Defendant Proulx three days to take down the advertising and make other corrections or that Plaintiff Coppola would have to resign and had the option of reporting it to the appropriate agencies.

c. Defendant Proulx responded by email, on May 7, 2010, that there was nothing wrong with the promise of a 357% return.

WHITE LAW CHARTERED LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

i. Over the prior year, Proulx had increasingly expressed his frustration with California subdivision law and what he considered the "idiocy" of it.

d. Plaintiff Coppola thereafter resigned.  A copy of Coppola's letter of resignation, dated May 8, 2010, [Document 24-5, filed 07/26/11].

e. Between May 9, 2010 and June, 2010, Coppola reported to the California Department of Corporations, Securities Division the failure to register the interests as securities with the State of California and the securities fraud in order to rectify the erroneous filings and letters that Coppola had in good faith filed prior to learning the true facts.

f. Between May 9, 2010 and June, 2010, Coppola reported to the Nevada Secretary of State, Securities Division the failure to register the interests as securities with the State of Nevada and the securities fraud in order to rectify the erroneous filings and letters that Coppola had in good faith filed prior to learning the true facts.

g. Between May 9, 2010 and June, 2010, Coppola reported to the California Department of Real Estate the filing of the misinformation by LRI with the DRE and the real estate fraud being perpetrated upon potential and existing customers in order to rectify the erroneous filings and letters that Coppola had in good faith filed prior to learning the true facts.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

h. On Saturday, June 26, 2010, Coppola reported to the SEC, by the SEC's online reporting website, that LRI's sales program, supra, was being conducted in violation of Federal and state securities laws.

i. Coppola received, on Saturday, June 26, 2010, 10:45:37 AM, the following automated response from the SEC:

1. "Thank you for your submission to the Division of Enforcement at the United States Securities and Exchange Commission in Washington, D.C. We appreciate your taking the time to contact us. This automated response confirms that you have successfully submitted information to the Division of Enforcement. You can rest assured that an attorney in the Office of Internet Enforcement will review your information promptly.

   We are always interested in hearing from members of the public, and you may be assured that the matter you have raised is being given careful consideration in view of the Commission's overall enforcement responsibilities under the federal securities laws. It is, however, the Commission's policy to conduct its inquiries on a non-public basis -- so this may be the only response that you receive. If your complaint is more in the nature of a consumer complaint (such as a dispute with your broker or a problem with your brokerage or retirement account), you should contact our Office of Investor Education and Assistance -- they may be able to help you. You may reach the Office of Investor Education and Advocacy via telephone at (202) 551-6551 or through the Web at "http://www.sec.gov/complaint.shtml ".

   The Commission conducts its investigations on a non-public basis to preserve the integrity of its investigative process as well as to protect persons against whom unfounded charges may be made or against whom the Commission determines that enforcement action is not necessary or appropriate. Subject to the provisions of the Freedom of Information Act, we cannot disclose to you any information which we may gather and we cannot confirm to you the existence or non-existence of an investigation, unless

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

made a matter of public record in proceedings brought before the Commission or in the courts.

If you are unsure where you should direct your inquiry or you want to learn more about how the SEC handles inquiries and complaints, please visit the SEC Complaint Center at "http://www.sec.gov/complaint.shtml".

We appreciate your interest in the work of the Commission and its Division of Enforcement."

a.  Thereafter, Defendant Proulx called a telephonic meeting of the boards of the Associations.

    i.  Such telephonic meeting took place in the fall of 2010.

    ii.  Coppola was given notice by Proulx that the meeting would take place.

    iii.  Proulx informed Coppola that even though Coppola was the attorney for the Associations, that Coppola would not be allowed to participate.

    iv.  Within hours of that telephonic meeting, Proulx orally notified Coppola that Proulx had been given "proxy" to remove Coppola as attorney for the Associations and to appoint a new attorney at Proulx's discretion.

b.  On February 1, 2011, which was a few months later, Defendant Proulx informed Plaintiff Coppola that:

"I could foresee situations where RSC would be a perfect fit to provide legal services to LRI or other entities . But at this time, I cannot promise or make any financial commitments to that fact. I

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

understand your familial situation with your 3 dependants and that part-time or freelance legal work would be a perfect fit for you. I expect that LRI and/or other entities will need legal services, so it could be a great fit for both parties.

I understand that you have a time constraint that you are facing and I do not want to impede or mislead you in any way. Any decisions that you need to make, should take into account the information below.

I have been thinking about the situation and I want to be straightforward and frank with you regarding the likelihood of RSC providing continued legal services to the Association. At this time, I do not believe that I will continue the engagement of your legal services with the Association. I have been authorized by the majority of the Association Board Members to terminate service and engage any suitable attorney at my sole discretion.

Darren K. Proulx"

c.  This left Plaintiff Coppola with no means to protect the Associations or its members from Defendant Proulx's actions other than by filing the instant lawsuit seven days later on February 8, 2010.

d.  As late at February 1, 2011, Proulx admitted that Coppola was professionally competent and that he would consider retaining Coppola as an attorney again.

  i.  Proulx stated in the email of February 1, 2011, that he "could foresee situations where RSC would be a perfect fit to provide legal services to LRI or other entities."

14.  SPARKS POLICE INCIDENT FACTS

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

a.   Plaintiff CELLC leased office space from Defendant Marina at 325 Harbour Cove, Sparks, NV, pursuant to an integrated written agreement entered into on March 20, 2010.

b.   The office space was Suite 219 (the "Office").

c.   At all times relevant the Office lease was fully paid.

d.   Plaintiff Coppola used the Office space as his personal office space.

e.   On Sunday, May 9, 2010, Plaintiff Coppola, went to his Office to move out.

f.   Upon arrival Plaintiff Coppola found a handwritten note from Defendant Proulx taped to the window on the door of the Office which stated something to the effect that Plaintiff Coppola should call Defendant Proulx or "Jerry" prior to entering Plaintiff Coppola's Office.  Defendant Proulx had trespassed in the Office to post the note.  By setting the alarm and changing the code, Defendant Proulx locked out Plaintiff Coppola's peaceful entry.

g.   Therefore, Plaintiff Coppola left and determined he would try and work things out with Defendant Proulx in terms of moving out Plaintiff Coppola's client files and his personal effects.

h.   Defendant Proulx, however, insisted that Defendant Proulx be given carte blanche to go through all the files and determine which ones were

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

Coppola's clients and which ones contained information relating to Proulx.

i. Wednesday, May 12, 2010, Plaintiff Coppola again went to his Office to move out in order to protect the confidentiality of his client files.

j. The sudden move out was required because Plaintiff Coppola kept various client files there not related to those of Defendants, but Defendant Proulx had threatened to illegally enter the Office and remove all of the files.

k. Plaintiff Coppola exercised his lease rights and entered the Office anyway using the key that had been provided upon lease of the Office, which thereupon set off the alarm.

l. According to the police report, for Case number 10-4906, prepared on May 12, 2010, by Officer Dutrac, the alarm to the Office went off at "1843 hours." Exhibit G, "Sparks Police Department Incident Report, Sparks Case No. 10-4906."

m. Plaintiff Coppola then removed the "bankers' boxes" of files that he had previously packed of legal files and other files.

n. Such files were a mixture of files containing work product for various clients.

o. When the alarm went off, Defendant Proulx made false oral statements to the Sparks Police Department, including:

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

      i.  that Plaintiff Coppola "was fired."

     ii.  that Defendant Proulx had informed Plaintiff Coppola that he "was not allowed back on the property."

    iii.  that Plaintiff Coppola had "refused to return keys."

    iv.  that Plaintiff Coppola "did not have permission to enter the building."

     v.  that Plaintiff Coppola "had illegally taken some files."

p.  An employee of LRI, Eugenio Perez made made false oral and written statements to the Sparks Police Department, including:

      i.  that Plaintiff Coppola "was fired."

     ii.  that Defendant Proulx had "let Stephen Coppola go from the company last Saturday, the 8th of May."

    iii.  that "I [Egenio Perez] was instructed to set the alarm with my code because Stephen [Plaintiff Coppola] had not turned in his key."

    iv.  that Plaintiff Coppola "had entered the building illegally."

     v.  that Plaintiff Coppola "had stolen some files from the law practice.

        1.  What is curious about this statement is that Mr. Perez referred to the location as being a "law practice."

q.  An employee of LRI, Eugenio Perez also made written statements to the Sparks Police Department, including:

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

        i.  that "Darren had instructed me [Egenio Perez] to watch the office and not let Stephen [Plaintiff Coppola] take the 8 or 9 boxes of company files."

       ii.  that "I [Egenio Perez] have watched the office all week and set the alarm every night."

     iii.  that "[a]t approximately 6:30 this evening Darren [Defendant Proulx] called me that the alarm was going off and he had called the police."

r.  Officer Dutrac called Plaintiff Coppola on the evening of Wednesday, May 12, 2010, to inform Plaintiff Coppola that he was to come to the Sparks Police Department to submit himself for arrest for theft and trespassing.

        i.  Plaintiff Coppola informed Officer Dutrac he would do no such thing, but instead informed Officer Dutract of the "true facts," including that Proulx and LRI were engaged in the selling of unregistered securities and securities fraud and that Proulx was fearful that Coppola had evidence he might use against Proulx.

       ii.  Officer Dutrac stated he would contact Defendant Proulx.

s.  After Officer Dutrac interviewed Plaintiff Coppola, he again contacted Defendant Proulx, who admitted to Officer Dutrac that Defendant Proulx had lied to Officer Dutrac and that the truth was that:

        i.  that Plaintiff Coppola "had resigned."

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

40

1. See Exhibit F, supra, Email from Darren Proulx to Ralph Coppola, dated May 8, 2010, entitled "Re: Resignation," whereby Proulx "accept[ed Coppola's] resignation."

ii. that Plaintiff Coppola "a valid lease."

iii. that Plaintiff Coppola "lawfully had his own set of keys."

iv. that Plaintiff Coppola "lawfully could enter the building."

t. On that basis, Officer Dutrac agreed to perform additional investigation.

u. However, Plaintiff Coppola was severely distressed as he did not know if that was the truth.

v. The case was then dropped a few days later.

w. Proulx's oral statements to the Sparks Police Department contained false statements of fact which were not privileged but which slandered Coppola's professional reputation by the above false accusations and by false accusations of incompetence.

15. RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT.

a. At all times relevant, Proulx, LRI and its salespeople and associates then conspired to and did sell unregistered securities and engaged in real estate fraud under California Subdivision laws.

b. At all times relevant, Proulx, LRI and its salespeople and associates then conspired to and did then organized the Associations so as to control the

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

ownership of the underlying real estate so that the benefit of the real estate would accrue to Proulx and not to the Investors.

c.  At all times relevant, Proulx, LRI and its salespeople and associates then conspired to and did also organize the Associations so that he would retain control of the Associations in perpetuity.

d.  Proulx, LRI and its salespeople and associates then conspired to and did commit voting fraud as a means of retaining control of the Associations.

e.  Proulx, LRI and its salespeople and associates then conspired to and did slander and libel the attorney for the Associations as a means of hiding Proulx's actions.

f.  In 2010, Proulx wrongfully purportedly terminated the attorney for the Associations as a means of hiding Proulx's actions.

g.  In 2010 and 2011, Proulx, LRI, and LRM and associates, all conspired to and wrongfully foreclose on Investors who do not pay dues who understood their agreement to be that they were not required to pay dues and who had not paid dues for ten years.

16.  BREACH OF CONTRACT AND COVENANT OF GOOD FAITH BY LRM AGAINST THE ASSOCIATIONS.

a.  Commencing in 2010, LRM entered into contracts with each Association whereby it agreed:

     i.  a.  Prohibited Acts.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

1.   01. LRM shall not enter into any contract on behalf of Association, without specific approval by the Association board.

2.   02. LRM shall make no executive type decisions, but rather shall refer any such issue to Association board for Association to determine how best to handle the situation.

a. However, LRI, LRM, through Proulx, and Proulx, routinely, conspired to and made management type decisions, such as extending leases, calling illegally noticed board meetings, making decisions regarding the collection of dues, making decisions regarding the hiring and firing of attorneys and regarding the conduct of annual meetings.

17.   VOTING FRAUD.

a. California Civil Code Section 1363.03 sets forth a very specific set of procedures which must be followed.

b. In particular California Civil Code Section 1363.03 provides that "[n]otwithstanding any other law or provision of the governing documents, elections regarding assessments legally requiring a vote, election and removal of members of the association board of directors, amendments to the governing documents, ... pursuant to Section 1363.07 shall be held by secret ballot in accordance with the procedures set forth

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

in this section, which requires the use of secret written ballets in envelopes inside envelopes.

c.  Proulx and LRM have violated this provision by conspiring to and by using electronic voting machines.

d.  Electronic voting machines are not secret written ballet in envelopes inside envelopes.

e.  Therefore, Proulx violated California Civil Code Section 1363.03.

18.  ILLEGAL ACTION BY DIRECTOR PROXY, BREACH OF CONTRACT, SLANDER AND LIBEL.

a.  California Corporation Code Section 1363.05 requires that board meeting agendas and notice be provided to all members at least thirty days before the proposed meeting.  Civil Code Section 1363.05 requires that all community associations are regulated by the "Open Meeting Act" which requires that any member of the association may attend meetings of the board of directors.

b.  Proulx and LRM violated the proceeding laws by advising the associations that they could hold, and by holding, a purported meeting by secret proxy over the course of the latter part of 2010 in which Proulx sought to remove Coppola as the attorney for the associations.

c.  California Corp. Code §7211(c) provides that " [n]o director may vote at any meeting by proxy.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

d. California Corp. Code §7211(c) provides that " [n]o director may vote at any meeting by proxy.

e. Such meeting was held without any notice to the general membership.

f. No members were allowed to attend the meeting, and in fact member Coppola was specifically told he could not attend.

g. Proulx sought and obtained a purported board vote giving Proulx, a non-board member, proxy to vote on for directors by proxy.

h. Utilizing such proxy, Proulx purportedly removed Coppola as attorney for the associations on February 1, 2011.

i. Proulx and LRM violated the proceeding laws by conspiring to and by advising the Associations that they could hold, and by holding, a purported meeting by secret proxy over the course of the latter part of 2010 in which Proulx sought to remove Coppola as the attorney for the Associations.

j. Coppola has an existing business relationship with the Associations with the probability of future economic benefit. Defendant Proulx, acting on his behalf and on behalf of LRI and LRM engaged in a course of action that has been injurious to such relationship including obtaining the vote on which purportedly gave Proulx the power to remove Coppola as attorney for the Associations. Such action by Proulx was based upon

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

slanderous statements about Coppola's legal abilities.  Proulx intended to interfere with such relationship between Coppola and the Associations.

k.   In every contract there is implied by law a covenant of good faith and fair dealing by which each party to a contract is beholden to take such further acts are necessary to be taken in good faith to carry out the intent of the parties.

l.   These actions by Proulx and LRM violated that covenant of good faith and fair dealing.

m.   Proulx, on  his own behalf and on behalf of LRI and LRM,  made oral statements to the members of the Associations' boards that Coppola should be removed as the attorney for the associations because Coppola's work was substandard and Coppola was unreliable and which slandered Coppola's professional reputation.

n.   Proulx, on  his own behalf and on behalf of LRI and LRM,  made written statements to the members of the Associations' boards that Coppola should be removed as the attorney for the associations because Coppola's work was not adequate for the needs of the Associations.

19.   BREACH OF EMPLOYMENT CONTRACT.

a.   Coppola had an oral employment contract with LRI.  Implied in that employment contract, is a covenant of good faith and fair dealing by LRI. Proulx, on  his own behalf and on behalf of LRI and LRM,  utilized

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

Coppola's services to unknowingly commit securities and real estate

violations and other violations of law as alleged above, all in frustration

of Coppola's enjoyment of his contract rights.

b.  Coppola had an oral employment contract with LRI.  LRI failed to pay

Coppola all wages due Coppola, including one week's pay during his

employment, and wages for several meetings, and wages for a seminar.

## FIRST COUNT
### (Failure to Register (US))
### (Brought By Plaintiff Coppola against all Selling Defendants)

20. Plaintiffs incorporate by reference all prior paragraphs of this Complaint

(including all paragraphs of the General Allegations and all paragraphs

of all preceding causes of action, if any) as if the same were fully set forth

herein.

21. "Selling Defendants" and each of them, participated in the sale of

Interests to the general public in violation of the requirements of the US

Securities Acts to register such securities as a result of Selling

Defendants being "promoters" by their acting as experts in the

investment choice, controlling the investments once sold, and deriving

continuing profit from the investments.

22. As a proximate result of the actions of Selling Defendants, Plaintiffs, and

each of them, have been damaged in an amount to be proven at time of

trial, which include compensatory and punitive damages and legal fees.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

## SECOND COUNT
### (Manipulation and Deceptive Devices (US))
### (Brought By Plaintiff Coppola Against All Selling Defendants)

23. Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

24. Defendants directly or indirectly, by the use of any means, including instrumentalities of interstate commerce or of the mails, used or employed, in connection with the purchase or sale of the Interests, manipulative or deceptive devices or contrivances in contravention of the rules and regulations as the Commissioner of the Securities and Exchange Commission has prescribed as necessary or appropriate in the public interest or for the protection of investors.

25. As a proximate result of the conduct of Defendants as herein alleged, Plaintiffs have incurred damages in an amount to be established at trial, which include compensatory and punitive damages and legal fees.

## THIRD COUNT
### (Fraud And Intentional Misrepresentation (Interest Sale))
### (Brought By Plaintiff Coppola Against Selling Defendants)

26. Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

48

27. Plaintiffs were induced to purchase Interests upon the representation by Selling Defendants and each of them that the Interests would be ultimately sold at the time of choosing of the Plaintiffs, when if fact it was the intent of the Selling Defendants at the time of sale of each interest to block future sale of the LandBanks and to control the Associations in such manner as would maximize Selling Defendants revenue and future sales.

28. When Selling Defendants made the above representations, they knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on these representations in the manner herein alleged.  Further, Selling Defendants, and each of them, took affirmative steps to conceal the true facts from Plaintiff.

29. Plaintiffs, at the time these representations were made by Defendants, and at the time Plaintiffs took the actions herein alleged, were unaware of the falsity of Defendants' representations and believed them to be true. In reliance on these representations, Plaintiffs were induced to and did purchase Interests from Defendant LRI.

30. Had Plaintiffs known the actual facts, Plaintiffs would not have purchased the Interests.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

31. Plaintiff's reliance on the representations of Defendants were justified because Selling Defendants represented that they had special knowledge and expertise and held a professional duty under their real estate licenses.

32. As a proximate result of the fraudulent conduct of Selling Defendants as herein alleged, Plaintiffs have incurred damages according to proof at time of trial.

33. The aforementioned conduct of Selling Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Selling Defendants with the intention on the part of the Selling Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship and conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

## FOURTH COUNT
### (Unjust Enrichment)
### (Brought By Plaintiff Coppola Against All Selling Defendants)

34. Plaintiff and each of them re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

50

35. Defendants through their wrongful conduct as described in this

Complaint, have reaped substantial gain from the sale of Interests by

them to Plaintiffs, and in so doing has caused Plaintiffs, to suffer

substantial monetary losses, all of which damages and costs were not

only foreseeable but were the intended consequences of Defendants'

collective actions.

36. Based on the facts as alleged herein and as proven at trial, in equity and

good conscience, it would be unconscionable and otherwise unjust for

Defendants to enrich themselves at the expense of Plaintiffs.

37. As a proximate result of the fraudulent conduct of Defendants as herein

alleged, Plaintiffs have incurred damages in that Plaintiffs to purchase

Interests from Defendants, and to expend other amounts, all by reason of

which Plaintiffs have been damaged in amounts according to proof at

time of trial.

## FIFTH COUNT
### (Quantum Meruit)
### (Brought By Plaintiff Coppola Against All Selling Defendants)

38. Plaintiffs and each of them re-allege and reincorporate each and every

allegation contained in the General Allegations and all previous

paragraphs of all previous sections and Causes of Action, inclusive, as

though fully set forth herein.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

39. Defendants have received through their sale and management of the Interests to Plaintiffs an item of value, namely the money expended to purchase the Interests and pay the Association dues, which were not as represented to Plaintiffs.

40. As a direct and proximate result of the actions and inactions of Defendants,  Plaintiffs have been damaged in an amount to be proven at time of trial.

## SIXTH COUNT
### (Racketeer Influenced and Corrupt Organizations (RICCO) Act)
### (Brought By All Plaintiffs Against All Defendants)

41. Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

42. Title 18 United States Code Section 1961 to 1968 make it unlawful for a person to manipulate an enterprise in such a way that the owners remain such on paper but all the benefits flow to the defendant.

43. Plaintiff's have been injured by reason of defendants investment and reinvestment of the proceeds of the payment of their purchase price to LRI and their dues to LRM which then allows the defendants to conduct the business of LRI and LRM and to prevent Plaintiffs from selling their properties because defendant Proulx, a person, who is employed by both

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

52

LRI and LRM, a person engaged in and affected interstate commerce,

who manages the enterprise, through a pattern of racketeering activity,

including but not limited to securities fraud, effectively controls

defendant's properties through control of the proxies, and prevents the

sale of defendant's properties while extorting dues from defendant's

through threatening foreclosure and improperly initiating foreclosure if

defendants do not pay their association dues, which dues create profit for

defendants.

## SEVENTH COUNT
### (Fraud And Intentional Misrepresentation (Against Proulx))
### (Brought By Plaintiff Coppola Against All Selling Defendants)

44. Plaintiff re-alleges and reincorporates each and every allegation

contained in the General Allegations and all previous paragraphs of all

previous sections and Causes of Action this Complaint, inclusive, as

though fully set forth herein.

45. Plaintiff Coppola was given one series of advertising to submit to the

California Department of Real Estate when in Proulx authorized and LRI

was using a an additional series of advertising which violated the terms

of the public reports issued to the Landbanks because the advertising

referred to the purchasers as investors and to potential profit.  Proulx

utilized this mechanism so that LRI could "fly under the radar" of the

department of real estate and Proulx could tell potential purchasers that

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

fact in LandBank III ("LB III Plaintiffs)  were induced to give to Defendants additional sums of money by Defendants and each of them upon the inducement that Defendants and each of them had the expertise to bring LandBank III to final map status and that LandBank III could be brought to final map status.

46. When Defendants made the above representations, they knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on these representations in the manner herein alleged.  Further, Defendants, and each of them, took affirmative steps to conceal the true facts from Plaintiff.  Plaintiffs, at the time these representations were made by Defendants, and at the time Plaintiffs took the actions herein alleged, were unaware of the falsity of Defendants' representations and believed them to be true.  In reliance on these representations, Plaintiffs were induced to and did purchase Interests from Defendant LRI.  Had Plaintiffs known the actual facts, Plaintiffs would not have purchased the Interests.  Plaintiff's reliance on the representations of Defendants were justified because Defendants represented that they had special knowledge and expertise and held a professional duty under their real estate licenses.

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

47. As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiffs has incurred damages according to proof at time of trial.

48. The aforementioned conduct of Defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship and conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

## EIGHTH COUNT
### (VOTING FRAUD)
**(Brought By Plaintiff Coppola Against Proulx and LRM)**

49. Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

50. California Civil Code Section 1363.03 sets forth a very specific set of procedures which must be followed, and in particular provides that " [n]otwithstanding any other law or provision of the governing documents, elections regarding assessments legally requiring a vote, election and removal of members of the association board of directors, amendments to

WHITE LAW
CHARTERED
LAWYERS
50TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

the governing documents, ... pursuant to Section 1363.07 shall be held by secret ballot in accordance with the procedures set forth in this section, which requires the use of secret written ballets in envelopes inside envelopes.  Proulx and LRM have violated this provision by using electronic voting machines.  As a proximate result of the breach of the contract by Defendants, and each of them, as herein alleged, Defendants, and each of them,  have been damaged in an amount to be proven at time of trial.

51. As a result of these actions, Proulx and LRM have violated their contract with the Associations and the contract for ministerial services between the Associations and LRM should be immediately terminated.

## NINTH COUNT
## (ILLEGAL ACTION BY DIRECTOR PROXY)
## (Brought By Plaintiff Coppola Against  Proulx and LRM)

52. Plaintiff re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

53.  California Corporation Code Section 1363.05 requires that board meeting agendas and notice be provided to all members at least thirty days before the proposed meeting.  California Corp. Code §7211(c) provides that " [n]o director may vote at any meeting by proxy.  Civil Code Section 1363.05

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

requires that all community associations are regulated by the "Open

Meeting Act" which requires that any member of the association may

attend meetings of the baord of directors.  Proulx and LRM violated the

preceding laws by advising the associations that they could hold, and by

holding, a purported meeting by secret proxy over the course of the latter

part of 2010 in which Proulx sought to remove Coppola as the attorney

for the associations.

54. As a proximate result of the breach of the contract by Defendants, and

each of them, as herein alleged, Defendants, and each of them,  have been

damaged in an amount to be proven at time of trial.

55. As a result of these actions, Proulx and LRM have violated their contract

with the Associations and the contract for ministerial services between

the Associations and LRM should be immediately terminated.

## TENTH COUNT
### (BREACH OF CONTRACT BY ILLEGAL ACTION BY DIRECTOR PROXY)
### (Brought By Plaintiff Coppola Against  Proulx and LRM)

56. Plaintiff re-alleges and reincorporates each and every allegation

contained in the General Allegations and all previous paragraphs of all

previous sections and Causes of Action this Complaint, inclusive, as

though fully set forth herein.

57. California Corporation Code Section 1363.05 requires that board meeting

agendas and notice be provided to all members at least thirty days before

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

the proposed meeting.  California Corp. Code §7211(c) provides that " [n]o

director may vote at any meeting by proxy.  Civil Code Section 1363.05

requires that all community associations are regulated by the "Open

Meeting Act" which requires that any member of the association may

attend meetings of the board of directors.

58. Proulx and LRM violated the proceeding laws by advising the

associations that they could hold, and by holding, a purported meeting by

secret proxy over the course of the latter part of 2010 in which Proulx

sought to remove Coppola as the attorney for the associations.

59. As a proximate result of the breach of the contract by Defendants, and

each of them, as herein alleged, Defendants, and each of them,  have been

damaged in an amount to be proven at time of trial.

60. As a result of these actions, Proulx and LRM have violated their contract

with the Associations and the contract for ministerial services between

the Associations and LRM should be immediately terminated.

## ELEVENTH COUNT
### (ILLEGAL PROXY)
**(Brought By Plaintiff Coppola Against  Proulx and LRM)**

61. Plaintiff re-alleges and reincorporates each and every allegation

contained in the General Allegations and all previous paragraphs of all

previous sections and Causes of Action this Complaint, inclusive, as

though fully set forth herein.

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

58

62. On or about April 26, 2011, Proulx and LRM jointly solicited proxies on behalf of Proulx.  The soliciation of proxies on behalf of Proulx by LRM violates Cilvil Code Section 1363.03(d)1)(A) which limits proxies to members acting as members and not to management type companies.  Since Proulx is soliciting proxies through his management-type company he does not have standing to act as a proxy holder.

63. As a proximate illegal action of Defendants, and each of them, as herein alleged, Defendants, and each of them,  have been damaged in an amount to be proven at time of trial.

64. As a result of these actions, Proulx and LRM have violated their contract with the Associations and the contract for ministerial services between the Associations and LRM should be immediately terminated.

65. As a result of these actions of Proulx and LRM, any vote held with such proxies should be declared null and void.

## TWELFTH COUNT
### (NV SALE OF UNREGISTERED STOCK)
### (Brought By Plaintiff Coppola Against All Defendants)

66. Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

59

67. LRI is an issuer of the Interests which constitute securities under Nevada securities laws.  LRI offered such Interests and solicited offers and accepted orders.  Such Interests were sold both at full price and at discount without having either registered such securities or obtained an order of exemption pursuant to Nevada Revised Statute 90.470  to persons in Nevada ("Nevada Plaintiffs").

68. As a proximate result of the conduct of Defendants as herein alleged, Nevada Plaintiffs has incurred damages in amounts according to proof at time of trial, and which include compensatory and punitive damages.

## THIRTEENTH COUNT
### (NV FAILURE TO FILE SECURITIES ADVERTISEMENTS)
### (Brought By Plaintiff Coppola Against All Defendants)

69. Nevada Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

70. LRI is an issuer of the Interests which constitute securities under Nevada securities laws.  LRI offered such Interests, solicited offers and accepted orders at full price and at discount without having first filed a true copy of each advertisement with the office of the Administrator prior to publication pursuant to Nevada Revised Statute 90.560.

WHITE LAW
CHARTERED
LAWYERS
50TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

71. As a proximate result of the conduct of Defendants as herein alleged, Nevada Plaintiffs have incurred damages in amounts according to proof at time of trial, and which include compensatory and punitive damages and legal fees.

## FOURTEENTH COUNT
### (NV FALSE SECURITIES ADVERTISING)
### (Brought By Plaintiff Coppola Against All Defendants)

72. Nevada Plaintiffs and each of them re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

73. LRI is an issuer of the Interests which constitute securities under Nevada securities laws.   LRI offered such Interests, solicited offers and accepted orders at full price and at a discount by means of written and oral communications which included untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,  in violation of Nevada Revised Statute 90.570.

74. As a proximate result of the conduct of Defendants as herein alleged, Nevada Plaintiffs have incurred damages according to proof at time of trial, and which include compensatory and punitive damages.

## FIFTEENTH COUNT

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

### (Intentional Infliction of Emotional Distress)
### (Brought By Plaintiff Coppola Against Proulx)

75. Plaintiffs re-allege and reincorporate each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action this Complaint, inclusive, as though fully set forth herein.

76. Defendant Proulx made false reports to the Sparks Police Department in which he knowingly made the false accusations which he knew to be false that Coppola had broken into premises which Coppola had no right to enter, when in fact Coppola held a valid lease of said premises, that Coppola had used stolen employee keys to enter said premises when in fact such keys were the leasehold keys, that Proulx and his companies had fired Coppola when in fact Coppola had resigned, that Coppola had stolen materials when in fact no materials had been stolen.   Defendant Proulx's behavior was outrageous because making false statements to the police is a crime in itself and exceeds the bounds of common decency. Proulx  knew that plaintiff was susceptible to injuries though mental distress, or because Defendant Proulx acted intentionally or unreasonably with the recognition that the aforementioned acts were likely to result in such conduct of Proulx was outrageous.  Proulx acted with substantial certainty or disregard that such actions could result in

WHITE LAW
CHARTERED
LAWYERS
50TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

mental distress.  Such conduct of Proulx was directed at Coppola.
Proulx's actions were the cause of the mental distress of Coppola which
was serious and enduring as Coppola had to worry for several days that
he was going to be arrested at any time by the Sparks Police Department.

77. As a proximate result of the acts of Proulx, as herein alleged, Plaintiff
Coppola has been damaged in an amount to be proven at time of trial,
and which include compensatory and punitive damages.

## SIXTEENTH COUNT
### (Covenant of Good Faith and Fair Dealing)
### (Brought By Plaintiff Coppola Against All Defendants)

78. Plaintiffs re-allege and reincorporate each and every allegation contained
in the General Allegations and all previous paragraphs of all previous
sections and Causes of Action this Complaint, inclusive, as though fully
set forth herein.

79. In every contract there is implied by law a covenant of good faith and fair
dealing by which each party to a contract is beholden to take such further
acts are necessary to be taken in good faith to carry out the intent of the
parties.

80. Implied into the contracts between Plaintiff Coppola and Defendants is
the implied promise that Defendants would not interfere with Plaintiff
Coppola's contracts with the Associations.

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

81. Defendants have breached the covenant of good faith and fair dealing tortiously interfering in said contracts.

82. As a proximate result of the breach of the contract by Defendants, as herein alleged, Plaintiff Coppola has been damaged in an amount to be proven at time of trial.

**SEVENTEENTH COUNT**
**(MISUSE OF PROCESS)**
**(Brought By Plaintiff Coppola Against All Defendants)**

83. Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

84. Defendant Proulx made false reports to the Sparks Police Department in which he knowingly made the false accusations which he knew to be false that Coppola had broken into premises which Coppola had no right to enter, when in fact Coppola held a valid lease of said premises, that Coppola had used stolen employee keys to enter said premises when in fact such keys were the leasehold keys, that Proulx and his companies had fired Coppola when in fact Coppola had resigned, that Coppola had stolen materials when in fact no materials had been stolen.

85. Such acts of Defendants were a willful misuse of the power of the state with an improper purpose.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

86. By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, and which include compensatory and punitive damages.

## EIGHTEENTH COUNT
### (Intentional Interference with Prospective Economic Advantage)
### (Brought By Plaintiff Coppola Against All Defendants)

87. Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

88. Plaintiff Coppola has an existing business relationship with the Associations with the probability of future economic benefit.  Defendant Proulx, acting on his behalf and on behalf of LRI and LRM has engaged in a course of action that has been injurious to such relationship including obtaining a vote which purportedly removed Plaintiff Coppola as attorney for the Associations.  Such action by Proulx was based upon slanderous statements about Coppola's legal abilities.  Proulx intended to interfere with such relationship between Coppola and the Associations.

89. By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, and which include compensatory and punitive damages.

## NINETEENTH COUNT

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

**(Slander Per Se)**
**(Brought By Plaintiff Coppola Against all Defendants)**

90. Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

91. Proulx's oral statements to the Sparks Police Department contained false statements of fact which were not privileged.  Proulx, on  his own behalf and on behalf of LRI and LRM,  made oral statements to the members of the Associations' boards that Coppola should be removed as the attorney for the associations because Coppola's work was substandard and Coppola was unreliable.

92. By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, and which include compensatory damages.

### TWENTIETH COUNT
**(Libel Per Se)**
**(Brought By Plaintiff Coppola Against all Defendants)**

93. Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

94. Proulx, on his own behalf and on behalf of LRI and LRM, made written statements to the members of the Associations' boards that Coppola should be removed as the attorney for the associations because Coppola's work was not adequate for the needs of the Associations.

95. By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, and which include compensatory damages.

### TWENTY FIRST COUNT
**(Employer's Breach of Implied Covenant of Good Faith and Fair Dealing)**
**(Brought By Plaintiff Coppola Against all Defendants)**

96. Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

97. Coppola had an oral employment contract with LRI. Implied in that employment contract, is a covenant of good faith and fair dealing by LRI. Proulx, on his own behalf and on behalf of LRI and LRM, utilized Coppola's services to commit securities and real estate violations and other violations of law, all in frustration of Coppola's enjoyment of his contract rights.

98. By their actions, Defendants have harmed Plaintiff Coppola in an amount to be proven at time of trial, and which include compensatory damages.

### TWENTY SECOND COUNT

**(Wages)**
**(Brought By Plaintiff Coppola Against LRI)**

99. Plaintiff Coppola re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous sections and Causes of Action, inclusive, as though fully set forth herein.

100. Coppola had an oral employment contract with LRI.  LRI failed to pay Coppola all wages due Coppola.

101. By their actions, LRI has harmed Plaintiff Coppola in an amount to be proven at time of trial, and which include compensatory damages.

## TWENTY THIRD COUNT
**(Retaliation-Dodd-Frank)**
**(Brought By Plaintiff Coppola Against LRI, LRM, Proulx)**

102. Coppola incorporates by reference and realleges each allegation set forth above.

103. The Securities Whistleblower Incentives and Protection provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6, passed in July 2010, states that no employer may discharge a whistleblower because of any lawful act done by the whistleblower in providing information to the SEC regarding potential violations of Section 10(b) or in making disclosures that are required or protected under the Sarbanes-Oxley Act, the Securities Exchange Act of 1934 (15

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

U.S.C. 78a et seq.), or any other law, rule, or regulation subject to the

jurisdiction of the Commission.

104. "The term 'whistleblower' means any individual who provides, or 2 or

more individuals acting jointly who provide, information relating to a

violation of the securities laws to the Commission, in a manner

established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-

6(a)(6) (emphasis added).

105. The statute contains a private cause of action for whistleblowers

alleging retaliatory discharge or other discrimination. § 78u-6(h)(1)(B)(i).

106. Coppola reported information concerning Proulx's violation of Section

10(b) of the Exchange Act to the SEC on Saturday, June 26, 2010,

10:45:37 AM.

107. Proulx caused the 17 associations to discharge Coppola on or after

February 1, 2011.

108. The sole reason prompting Proulx's said conduct was revenge for

Coppola's having reported LRI and LRM securities violations to the SEC.

109. As a result of Proulx's violation of Dodd-Frank whistleblower statute,

Coppola  has been injured in an amount in excess of $10,000 and is

entitled to be reinstated as counsel for the 17 associations.

**PRAYER**

WHITE LAW
CHARTERED
LAWYERS
10TH CENTURY BLDG.
135 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

**WHEREFORE**, Plaintiffs pray as follows with regard to each of the above causes of action which may be asserted by the one or more of the various Plaintiffs:

AS TO ALL CAUSES OF ACTION:

1.   For general, specific, exemplary and punitive damages according to proof at time of trial;

2.   For attorneys' fees and costs according to proof;

3.   For interest as allowed by law;

4.   For cost of suit herein;

5. For reinstatement of Plaintiff Ralph Stephen Coppola as counsel for the 17 associations; and,

6.   For such other and further relief as the court deems just.

Dated:  October 17, 2011

John White, Esq.
Attorney for Plaintiffs

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

INDEX OF EXHIBITS

| Exhibit | Description | No. of Pages, including cover sheet |
|---------|-------------|-------------------------------------|
| A | E-mail Dated May 27, 2010 from Plaintiff to Defendant (entitled Background on Video, Investment Contract and Investment Merit) | 3 |
| B | Printed Document entitled "Land Resource Investments, Inc. Video | 38 |
| C | E-mail dated  May 10, 2010 from Plaintiff to Pam Sosa with attaching Part 1 | 28 |
| D | E-mail dated  May 10, 2010 from Plaintiff to Pam Sosa,  attaching continuation, named Part II | 30 |
| E | Doc. No. 20100015186 entitled Grant Deed and Irrevocable Power of Attorney | 8 |
| F | E-mail Dated May 8, 2010 entitled Resignation | 2 |
| G | Sparks Police Department Incident Report dated May 12, 2010 | 20 |

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228