Robert A. Koenig (NV SBN 3203)
Ryan Kerbow (NV SBN 11403)
ALESSI & KOENIG, LLC
9500 W. Flamingo, Suite 205
Las Vegas, Nevada 89147
Phone: (702) 222-4033
Fax:    (702) 254-9044
Attorney for Defendants DARREN K. PROULX;
LAND RESOURCE INVESTMENTS, INC;
LAND RESOURCE MANAGEMENT, INC; and
MARINA COMMERCIAL OFFICES, LLC

## UNITED STATES FEDERAL DISTRICT COURT

## FOR THE DISTRICT OF NEVADA - NORTHERN DIVISION

| | |
|---|---|
| RALPH STEPHEN COPPOLA; COPPOLA ENTERPRISES, LLC; AND RALPH STEPHEN COPPOLA, TRUSTEE OF THE R.S. COPPOLA TRUST DATED OCTOBER 19, 1995;<br><br>Plaintiffs,<br><br>vs.<br><br>DARREN K. PROULX; LAND RESOURCE INVESTMENTS, INC., LAND RESOURCE MANAGEMENT, INC.; MARINA COMMERCIAL OFFICES, LLC; and DOES I to XX,<br><br>Defendants. | Case No. 3:2011-CV-00074<br><br>DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR FOR PARTIAL SUMMARY JUDGMENT; REQUEST FOR JUDICIAL NOTICE |

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR FOR PARTIAL SUMMARY JUDGMENT

COME NOW, Defendants DARREN K. PROULX, LAND RESOURCE

INVESTMENTS, INC., LAND RESOURCE MANAGEMENT, INC., and MARINA

COMMERCIAL OFFICES, LLC, by and through their counsel of record, Alessi & Koenig,

LLC, and, pursuant to FRCP 12(b)(6), hereby move to dismiss Plaintiffs' Second Amended

1   Complaint for its failure to state a claim upon which relief can be granted, or in the alternative,

2   move for partial summary judgment pursuant to FRCP 56.

3        Defendants' motion is made and based upon the attached Memorandum of Points and

4   Authorities, the pleadings and papers on file herein, and any argument of counsel the court may

5   consider at the hearing on this Motion.

6

7

8   **I.   INTRODUCTION AND SUMMARY OF ARGUMENT**

9        Land Resource Investments, Inc. (hereinafter, "LRI"), headed by Defendant Darren

10  Proulx, is in the business of selling fractional interests in parcels of real property.  Land Resource

11  Management, Inc. (hereinafter "LRM"), also headed by Mr. Proulx, engages in the management

12  of the property owners associations that LRI forms for the properties it sells.  Mr. Coppola

13

14  (hereinafter, "Plaintiff") is an attorney licensed in the State of California.  He served as counsel

15  for LRI and LRM from November of 2007 until his resignation in May of 2010.  He also served

16  as general counsel for the property owners associations that LRI formed and that LRI and LRM

17  managed.

18

19       Since his resignation, Plaintiff has engaged in a determined effort to harm his former

20  clients.  Namely, he has filed complaints against LRI and Darren Proulx with the following state

21  and federal agencies: the Office of the Nevada Labor Commissioner, the Nevada Secretary of

22  State, the Nevada Department of Real Estate, the California Department of Corporations –

23

24  Securities Regulation Division, the California Department of Real Estate, the U.S. Securities and

25  Exchange Commission, and the U.S. Equal Employment Opportunity Commission.  Plaintiff

26  now brings the present lawsuit – consisting of twenty three causes of action – against Darren

27  Proulx and his companies.

28

Like the complaints Plaintiff filed against Defendants with state and federal agencies, the present litigation concerns the subject matter of the legal representation Plaintiff provided for Defendants. For example, as counsel for LRI, Plaintiff argued to multiple state agencies that LRI's sale of interests in real property does not fall within the purview of federal and state securities regulations. Every state agency that has inquired into the issue has been persuaded to call off any investigation into LRI. Plaintiff brings the present lawsuit on the grounds that LRI's sale of interests in real property *does* violate federal and state securities laws. Plaintiff thereby takes the *opposite* position to what he argued as counsel for LRI.

In his pleadings, Plaintiff styles himself as a whistle blower. He includes a cause of action, "Retaliation-Dodd-Frank," alleging that Defendant Proulx is liable for retaliatory discharge for "caus[ing] the 17 associations to discharge Coppola" as "revenge for Coppola's having reported LRI and LRM securities violations to the SEC." (Second Amended Complaint, page 69, lines 17-22.) In reality, Plaintiff is simply a man with a grudge. He left his position with LRI and LRM (after his alleged "constructive termination") determined to cause Defendants as much harm as possible. He now takes a position on whether LRI's property interests fall within the purview of securities regulations that flatly contradicts the position he took as Defendants' attorney. As evidenced throughout the complaint, Plaintiff believes he is free to disclose any and all confidential attorney-client communications to achieve his goal of harming Defendants. He is further willing to blatantly engage in the unlicensed practice of law, filing multiple "Motions for Joinder," along with a reply to Defendants' opposition to the Motions for Joinder, on behalf of a handful of land bank owners. He believes he can engage in these egregious ethical violations and get away with it by providing the Court with a favorable news paper article about his father who is a medical doctor. (See Opposition to Counter Motion

3

for Summary Judgment, doc. 27, page 9, paragraph 10, wherein Plaintiff refers to the article and notes that "the apple does not fall far from the tree.")

As an attorney licensed in California, Plaintiff is bound to the ethical requirements of the State Bar of California. Plaintiff points to the final several months out of his three-year representation of LRI, a brief period during which time the State Bar of Nevada authorized Plaintiff under Nevada's multi-jurisdictional rules to practice in a limited capacity as corporate counsel for LRI. Plaintiff posits that, somehow, his brief status with the Nevada State Bar as corporate counsel for LRI allows him to bring the present lawsuit against his former clients under Nevada's ethical rules, which are slightly different from California's.

In reality, the present lawsuit constitutes an egregious violation of the ethical requirements to which attorneys are held. Plaintiff trammels upon the duties of loyalty and confidentiality that are fundamental to the attorney-client relationship. These fiduciary obligations prohibit Plaintiff from (1) engaging in adverse litigation against a former client where client confidences may be compromised, or (2) taking any action which harms a former client with respect to the subject matter of the legal representation the attorney provided.

If the Court dismisses Plaintiff's federal causes of action, the Court will lose the ability to exercise subject matter jurisdiction over the state law claims. Of the Second Amended Complaint's twenty-three causes of action, only four are based on federal law. These are: the first and second causes of action (federal securities laws); the sixth cause of action (RICCO Act); and the twenty third cause of action (Retaliation-Dodd-Frank). As shown through the Affidavit of Darren Proulx, on file in this Court as document 24, filed on July 26, 2011, the first three causes of action fail as a matter of law because Plaintiff's ethical duties of confidentiality and loyalty prohibit Plaintiff from bringing these causes of action against his former clients.

Further, Plaintiff has failed to state a cause of action for retaliation under the Dodd-Frank Act because he has failed to allege that Defendants altered the conditions of his employment in retaliation for Plaintiff's reporting of LRI and LRM to the Securities and Exchange Commission. In fact, Plaintiff alleges that *he already resigned* from LRI and LRM before he made any report to said commission.

In sum, all of Plaintiff's federal causes of action fail as a matter of law. As a result, Defendants respectfully request that this Court grant judgment in favor of Defendants as a matter of law on those causes of action and dismiss the remaining causes of action for lack of subject matter jurisdiction.

## II.   **FACTUAL BACKGROUND**

### A. **Land Resource Investment, Inc.**

LRI sells a product which is describes as "land banking." LRI describes land banking as the process of buying and then holding real estate located in the path of urban growth for future sale. (Affidavit of Darren Proulx.)

Specifically, LRI purchases or options a large parcel of undeveloped real estate situated on the outskirts of a major metropolitan area (a "Property"). LRI adopts and records Covenants, Conditions and Restrictions ("CC&Rs") that are appurtenant to a Property. LRI then applies to the California Department of Real Estate ("DRE") for permission to subdivide a property into an undivided interest subdivision. Once approved, the DRE issues a Public Report authorizing the sale of the real estate interests. LRI acts as an incorporator and files Articles of Incorporation for a California Non-Profit Mutual Benefit Corporation (an "Association"), and adopts Bylaws for

the Association. The purpose of the Association is to provide the purchasers of the real estate interests a mechanism to manage a Property themselves. (Affidavit of Darren Proulx.)

Upon a close of escrow, each purchaser of a real estate interest receives a separate grant deed to his or her undivided fee simple ownership interest in the real estate guaranteed by a standard CLTA policy of title insurance. By virtue of the CC&Rs, each undivided fees simple ownership interest includes one membership interest in the Association. The owners of the real estate interest in a Property use the Association to provide and coordinate certain ministerial services such as paying property taxes, buying insurance, paying for accounting and tax services, keeping a Property fee of weeds, etc. The owners are responsible to pay a pro-rata share of the dues of the Association. The CC&Rs provide a mechanism for enforcing the payment of dues. (Affidavit of Darren Proulx.)

At present, there are seventeen (17) Associations. Each Association is named a variation of "Cal Land Resources ### Association, Inc.," with the numerical portion of the name different for each Association. (Affidavit of Darren Proulx.)

Each owner may freely sell, transfer and/or assign his or her undivided fee simple interest in the real estate to any other party at any time without restriction. Further, the CC&Rs provide a mechanism by which to sell the entire parcel, at which time all owners will receive a pro-rata distribution of the proceeds from the sale. (Affidavit of Darren Proulx.)

Defendant, Land Resource Management, Inc. ("LRM"), is a company headed by Defendant Darren Proulx. Most of the Associations have hired LRM to perform management duties. (Affidavit of Darren Proulx.)

**B. Plaintiff Stephen Coppola's Legal Representation Of LRI, LRM And The Associations**

On or around November 27, 2007, LRI hired Plaintiff Stephen Coppola ("Plaintiff") to provide general counsel for the businesses. Plaintiff is a California-licensed attorney living in Reno, Nevada. In or around January of 2010, Plaintiff applied for admission to the Nevada State Bar pursuant to Nevada's multijurisdictional laws which allow out-of-state attorneys to practice law in Nevada while providing in-house counsel for a Nevada company. The Nevada State Bar issued Plaintiff a bar number, 11343C, with the "C" indicating Plaintiff's limited ability to practice as in-house counsel for LRI (Affidavit of Darren Proulx.)

During his tenure as counsel for LRI, Plaintiff also provided general legal services for LRM. In or around March of 2010, the Associations also hired Plaintiff to perform general legal services. With respect to Plaintiff's simultaneous representation of LRI, LRM and the Associations, Plaintiff generated a conflict of interest waiver which the Associations signed. (Affidavit of Darren Proulx.)

Whether state or federal securities laws apply to LRI's sale of real estate interests is an issue that has arisen multiple times since LRI retained Plaintiff as general counsel. The issue first arose in or around December 2007 when the Nevada Secretary of State, Securities Division ("Nevada Securities Division"), contacted LRI and Mr. Proulx regarding an investigation into whether LRI's sale of real estate interests violated Nevada's securities laws. LRI hired the law firm of Gordon & Silver, Ltd. to generate a response for the Nevada Securities Division. The efforts of Gordon & Silver, Ltd., with assistance from Plaintiff who helped coordinate between LRI and Gordon & Silver, Ltd., culminated in a thorough legal opinion letter explaining why the property interests LRI sells are not securities subject to federal or state securities laws. After the legal opinion letter was submitted to the Nevada Securities Division, the Nevada Securities

Division sent LRI and Mr. Proulx a notice that it would be closing the investigation. (Affidavit of Darren Proulx.)

On multiple subsequent occasions, Plaintiff provided legal representation for LRI with respect to the issue of whether LRI's sale of property interests falls within securities laws. Those occasions include the following:

1.      On July 2, 2008, Plaintiff generated and signed a legal opinion letter, similar to the legal opinion authored by Gordon & Silver, Ltd., which was submitted to the State of Arizona, Department of Real Estate. Like the Gordon & Silver, Ltd. legal opinion, Plaintiff's legal opinion letter concluded that LRI's property interests were not securities. The letter reads, in part: "Therefore, since virtually the same analysis applies under Arizona securities law, as the federal law, the LandBank interests are not securities." (Affidavit of Darren Proulx, Exhibit 6.)

2.      In March of 2009, Plaintiff generated and signed a similar legal opinion letter submitted to the State of California, Department of Real Estate. That letter concluded: "For all the above reasons, we respectfully request that you determine that the Real Estate Interests are not securities and that therefore the DRE has sole authority over the advertising by LRI in connection with the sale of the Real Estate Interests." (Affidavit of Darren Proulx, Exhibit 7.)

3.      In March of 2010, Plaintiff generated and signed a letter to the State of Arizona, Department of Real Estate. This letter provided notice of LRI's intent to sell subdivided land and a request for an order of exemption from Arizona's requirement that a public report regarding the land be issued because a similar report had already been issued from the State of California, Department of Real Estate. The letter stated, in part, "Please find enclosed a separate letter addressed to you as to why we do no believe the sale of the undivided interests in the

Subdivision constitutes the sale of a security for either Federal or Arizona securities law purposes." (Affidavit of Darren Proulx, Exhibit 8.)

Plaintiff resigned as counsel for LRI in a letter dated May 8, 2010.  In Plaintiff's resignation letter, he accused Mr. Proulx of violating numerous state and federal laws. (Affidavit of Darren Proulx, Exhibit 5.)

### III.   STATEMENT OF UNCONTROVERTED FACTS

1.      LAND RESOURCE INVESTMENTS, INC. (hereinafter, "LRI") was a California corporation authorized to do business in Nevada as a foreign corporation.  The corporation was dissolved in February of 2011. **(Affidavit of Darren Proulx.)**

2.      LAND RESOURCE MANAGEMENT, INC. (hereinafter "LRM") is a Nevada corporation duly organized and authorized to do business in the State of Nevada. **(Affidavit of Darren Proulx.)**

3.      DARREN PROULX is the Chief Executive Officer of LRI and LRM. **(Affidavit of Darren Proulx.)**

4.      Plaintiff is an attorney licensed to practice in California.

5.      On or about November 27, 2007, LRI retained Plaintiff to serve as general legal counsel. **(Affidavit of Darren Proulx, Exhibit "1")** Plaintiff signed a retainer agreement and confidentiality agreement with LRI dated November 27, 2007 and November 28, 2008, respectively. **(Affidavit of Darren Proulx Exhibit "2.")**

6.      During his tenure as counsel for LRI, Mr. Coppola also provided general legal counsel for Land Resource Management, Inc. **(Affidavit of Darren Proulx, Exhibit 3.)**

7.      In or around March of 2010, the Associations hired Mr. Coppola to provide general legal counsel. **(Affidavit of Darren Proulx, Exhibit 3.)**

8.      In or around January of 2010, Plaintiff registered with the State Bar of Nevada as in-house counsel for LRI.  He was given the Nevada State Bar number 11343C.  **(Affidavit of Darren Proulx, Exhibit "4.")**

9.      Plaintiff continued to act as counsel for LRI and LRM until he resigned in May of 2010.  **(Affidavit of Darren Proulx, Exhibit "5.")**

10.     In July of 2008, Plaintiff generated and signed a legal opinion letter on behalf of LRI which was submitted to the State of Arizona, Department of Real Estate.  Plaintiff's legal opinion letter argued that the LRI's sale of property interests did not fall within Arizona's securities laws.  The concluding sentence of the letter reads: "Therefore, since virtually the same analysis applies under Arizona securities law, as the federal law, the LandBank interests are not securities."  **(Affidavit of Darren Proulx, Exhibit "6.")**

11.     In March of 2009, Plaintiff generated and signed a legal opinion letter on behalf of LRI which was submitted to the State of California, Department of Real Estate.  **(Affidavit of Darren Proulx, Exhibit "7.")**  Plaintiff's legal opinion letter argued that LRI's sale of property interests did not fall within Arizona's securities laws.  The concluding sentence of that letter reads: "For all the above reasons, we respectfully request that you determine that the Real Estate Interests are not securities and that therefore the DRE has sole authority over the advertising by LRI in connection with the sale of the Real Estate Interests."  **(Affidavit of Darren Proulx, Exhibit "7.")**

12.     In March of 2010, Plaintiff generated and signed a letter which was submitted to the State of Arizona, Department of Real Estate.  This letter provided notice of LRI's intent to sell

subdivided land and requested an order that LRI would be exempt from Arizona's requirement that a public report regarding the land be issued. The letter reads, in part, "Please find enclosed a separate letter addressed to you as to why we do no believe the sale of the undivided interests in the Subdivision constitutes the sale of a security for either Federal or Arizona securities law purposes." **(Affidavit of Darren Proulx, Exhibit "8.")**

13.     Plaintiff is not currently licensed to practice law in Nevada in any capacity.

14.     Subsequent to Plaintiff's resignation as legal counsel for LRI, Plaintiff filed complaints against LRI with the following government agencies:

   • Office of the Nevada Labor Commissioner

   • Nevada Secretary of State

   • Nevada Department of Real Estate

   • California Department of Corporations – Securities Regulation Division

   • California Department of Real Estate

   • U.S. Securities and Exchange Commission

   • U.S. Equal Employment Opportunity Commission

**(Affidavit of Darren Proulx, Exhibit "9.")**

15.     The complaints Plaintiff filed with the Nevada Secretary of State, California Department of Corporations – Securities Regulation Division, and U.S. Securities Exchange Commission all concern subject matter within the scope of Plaintiff's legal representation of LRI and LRM. **(Affidavit of Darren Proulx, Exhibits "10" and "11.")**

## IV.   LEGAL STANDARD

### A. Legal Standard For Motions To Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (Ashcroft v. Iqbal, 556 U.S. 662, ——, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir.2008).) This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions." (Iqbal, 129 S.Ct. at 1949.) Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (Id.) (citing Twombly, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. (Id. at 1950.)

### B. Legal Standard for Motions for Summary Judgment

FRCP 12(d) provides:

RESULT OF PRESENTING MATTERS OUTSIDE THE PLEADINGS.  If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

1    Summary judgment is appropriate "if the pleadings, depositions, answers to

2  interrogatories and admissions on file, together with the affidavits, if any, show that there is no

3  genuine issue of material fact and that the moving party is entitled to judgment as a matter of

4  law." Fed. R. Civ. Pro. 56(c).  The party moving for summary judgment has the initial burden

5  of showing the absence of a genuine issue of material fact. (See Adickes v. S.H. Kress & Co.,

6  398 U.S. 144, 26 L.Ed.2d 142, 90 S.Ct. 1598 (1970); Zoslaw v. MCA Distrib. Corp., 693 F.2d

7  870, 883 (9th Cir. 1982), cert. denied, 460 U.S. 1085, 76 L.Ed.2d 349, 103 S.Ct. 1777 (1983).)

8  A material issue of fact is one that affects the outcome of the litigation and requires a trial to

9  resolve the differing versions of the truth.  (See Admiralty Fund v. Hugh Johnson & Co., 677

10  F.2d 1301, 105-06 (9th Cir. 1982).)  The movant's burden is met by presenting evidence which,

11  if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to

12  the respondent to set forth specific facts demonstrating that there is a genuine issue for trial.

13  (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).)

14    If the party seeking summary judgment meets its burden, then summary judgment will

15  be granted unless there is significant probative evidence tending to support the opponent's legal

16  theory. (First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290, 20 L.Ed.2d 569, 88 S.Ct. 1575

17  (1968), reh'g denied, 393 U.S. 901, 21 L.Ed.2d 188, 89 S.Ct. 63 (1968); Commodity Futures

18  Trading Comm'n v. Savage, 611 F.2d 270 (9th Cir. 1979).)  Parties seeking to defeat summary

19  judgment cannot stand on their pleadings once the movant has submitted affidavits or other

20  similar materials.  Affidavits that do not affirmatively demonstrate personal knowledge are

21  insufficient.  (British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978), cert.

22  denied, 440 U.S. 981, 60 L.Ed.2d 241, 99 S.Ct. 1790 (1979), reh'g denied, 441 U.S. 968, 60

23  L.Ed.2d 1074, 99 S.Ct. 2420 (1979).)  Likewise, "legal memoranda and oral argument are not

evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." (Id.)

## V. **ARGUMENT**

### A. **In Bringing The Present Lawsuit, Plaintiff Has Violated Fiduciary Obligations Owed To Defendants As Their Former Counsel**

As an attorney licensed with the State Bar of California, Plaintiff is governed by California's rules of professional conduct. Research reveals two cases from California case law that are essentially on point.

i. <u>Styles v. Mumbert: An Attorney May Not Become The Opposing Party In A Lawsuit Against His Former Client In A Lawsuit Where The Attorney Possesses Client Confidences</u>

In <u>Styles v Mumbert</u>, 164 Cal. App. 4th 1163 (2008), an attorney, Pagkas, represented Mumbert, a defendant in a civil case which resulted in a default judgment against Mumbert in the amount of $730,466. (<u>Styles</u>, 164 Cal. App. 4th at 1166). The default judgment resulted because terminating sanctions were issued against Mumbert because of Pagkas's admitted inattention to the case. (Id.) After hiring new counsel, and after new counsel was unable to have the terminating sanctions set aside, Mumbert appealed from the default judgment. (Id.) Pagkas then purchased the rights to the judgment against Mumbert and filed a motion to substitute into the appeal as respondent. (Id.)

The court held: "Pagkas's attempt to substitute into the appeal as respondent violates his fiduciary duty to Mumbert. The proposed substitution also violates the relevant Rules of Professional Conduct and the Business and Professions Codes. [...]" (Id.) The court continued:

Few precepts are more firmly entrenched than the fiduciary nature of the attorney-client relationship, which must be of the highest character. (Frazier v. Superior Court (2002) 97 Cal.App.4th 23, 35, 118 Cal.Rptr.2d 129, citing Yorn v. Superior Court for City and County of San Francisco (1979) 90 Cal.App.3d 669, 675, 153 Cal.Rptr. 295.)  So fundamental is this precept that an attorney continues to owe a former client a fiduciary duty even after the termination of the relationship. (Zador Corp. v. Kwan (1995) 31 Cal.App.4th 1285, 1293, 37 Cal.Rptr.2d 754.) For example, an attorney is forever forbidden from using, against the former client, any information acquired during such relationship, or from acting in a way which will injure the former client in matters involving such former representation. (Frazier v. Superior Court, supra, 97 Cal.App.4th at p. 35, 118 Cal.Rptr.2d 129; Yorn v. Superior Court, supra, 90 Cal.App.3d at p. 675, 153 Cal.Rptr. 295.)  These duties continue after the termination of the relationship in order to protect the sanctity of the confidential relationship between and attorney and client. (People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc. (1999) 20 Cal.4th 1135, 1147, 86 Cal.Rptr.2d 816, 980 P.2d 371; Jeffry v. Pounds (1977) 67 Cal.App.3d 6, 9, 136 Cal.Rptr. 373.)

Therefore, even though Pagkas no longer represents Mumbert, he continues to owe Mumbert the duty to protect their prior confidential relationship.  Where a substantial legal and factual relationship exists between a former representation and the attorney's current position, a presumption arises that the attorney possesses confidential information about the former client which would be compromised if an attorney were allowed to take an adverse position after the representation ended. (Fox Searchlight Pictures, Inc. v. Paladino (2001) 89 Cal.App.4th 294, 300, 106 Cal.Rptr.2d 906; People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra, 20 Cal.4th 1135, 86 Cal.Rptr.2d 816, 980 P.2d 371.)  Typically, this becomes an issue where an attorney seeks to represent multiple adverse parties in successive representations. In those cases, the former client can step in and prevent the attorney from representing his adversary in order to safeguard his confidences. (City and County of San Francisco v. Cobra Solutions, Inc. (2006) 38 Cal.4th 839, 847, 43 Cal.Rptr.3d 771, 135 P.3d 20.)

Here, Pagkas is not only attempting to represent the opposing side, his is trying to be the opposing side in the very same litigation in which he represented Mumbert. There is more than merely a "substantial" legal and factual relationship between the prior representation and the current appeal. (Fox Searchlight Pictures, Inc. v. Paladino, supra, 89 Cal.App.4th at p. 300, 106 Cal.Rptr.2d 906.) Since the appeal is from the judgment in which Pagkas represented Mumbert, it is the same case. Under any analysis, this scenario not only raises the presumption, but establishes for a certainty that Pagkas possesses confidential information adverse to Mumbert, which would be compromised if his motion were granted. Therefore, by objecting, Mumbert can prevent Pagkas from stepping into the shoes of his adversary in order to safeguard his confidences. The duty of confidentiality of client information involves public policies of paramount importance. (In Re Jordan (1974) 12 Cal.3d 575, 116 Cal.Rptr. 371, 526 P.2d 523.) The preservation of confidentiality contributes to the trust that is the hallmark of the client-lawyer relationship. (Rule 3–100, Discussion § 1.) Pagkas may not reveal or use confidential information, gained through his prior representation of Mumbert, in this appeal because it would be contrary to public policy and would undermine the very nature of the attorney client relationship.

(Id. at 1167-68.)

The court in Styles focused on the presumption that an attorney possesses confidential information concerning his former client as a basis for disallowing the attorney from becoming his former client's adversary. However, there are also broader grounds. Namely, an attorney is prohibited from acting in any way which harms a former client with respect to a matter in which the attorney represented the client.

ii. People ex. Rel. Deukmejian v. Brown: An Attorney May Not Harm A Former Client With Respect To The Subject Matter Of Legal Representation The Attorney Provided

The issue of harming a former client arose in <u>People ex rel. Deukmejian v. Brown</u>, 29 Cal. 3d 150 (1981). There, the California Attorney General recommended that the Governor sign into law the State Employer-Employee Relations Act ("SEERA") which the legislature had adopted. Later, the Pacific Legal Foundation and the Public Employees Service Association filed a petition for writ of mandate seeking to have SEERA declared unconstitutional. (<u>Id.</u>) A summons was served on the defendants, including the Governor and the State Personnel Board. (<u>Id.</u>) As counsel to the State Personnel Board, the Attorney General met with the board and outlined the board's legal options. (<u>Id.</u>) The Attorney General subsequently withdrew as counsel for his state clients as he believed a potential conflict of interest existed. (<u>Id.</u>) The Attorney General then filed an independent petition for writ of mandate in the Court of Appeal against the Governor and other state agencies asking that SEERA be declared unconstitutional. (<u>Id.</u>)

In finding the Attorney General's actions to be in violation of the rules of professional conduct, the discussed the case <u>Wutchumna Water Co. v. Bailey</u> 216 Cal. 564, 573-574 [15 P.2d 505] (1932), as follows:

> In [<u>Wutchumna</u>], this court declared that "an attorney is forbidden to do either of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any manner in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship." While the record here does not reveal whether the Attorney General acquired any knowledge or information from his clients, the prohibition is in the disjunctive: he may not use information or "do anything which will injuriously affect his former client." Unquestionably the Attorney General is now acting adversely to the position of his statutory clients, one of which consulted him regarding this specific matter.

(Id. at 155-56.)

The present case is similar to both <u>Styles</u> and <u>Deukmejian</u>.


iii. <u>Plaintiff Is Attempting To Harm Defendants With Respect To Legal Issues For</u>
<u>Which He Represented Defendants And About Which He Possesses Confidential</u>
<u>Information</u>

The indisputable facts show that Plaintiff is attempting to harm his former clients with respect to the subject matter of legal representation he provided.  Further, the nature of Plaintiff's representation of Defendants establishes for a certainty that Plaintiff possesses confidential information adverse to Defendants

Plaintiff's first cause of action, titled "Failure to Register (US), alleges as follows:

•21.  "Selling Defendants" and each of them, participated in the sale of Interests to the general public in violation of the requirements of the US Securities Acts to register such securities [...]"

(Second Amended Complaint, page 47, lines 17-20.)

Plaintiff's second cause of action, titled "Manipulation and Deceptive Devices (US)," alleges as follows:

24. "Defendants directly or indirectly, by the use of any means, including instrumentalities of interstate commerce or of the mails, used or employed, in connection with the purchase or sale of the Interests, manipulative or deceptive devices in contravention of the rules and regulations as the Commissioner of the Securities and Exchange Commission has prescribed as necessary or appropriate in the public interest or for the protection of investors."

(Second Amended Complaint, page 48, lines 8 through 17.)

Plaintiffs' sixth cause of action, titled "Racketeer Influenced and Corrupt Organizations (RICCO) Act," alleges as follows:

• Defendants engaged in a "pattern of racketeering activity, including but not limited to securities fraud […]"

(Second Amended Complaint, page 54, lines 3 - 4.)

Plaintiffs' lawsuit brings a legal challenge to the core business practices LRI, a business for which he provided legal counsel – even serving as in-house counsel – for approximately two and one half years. As in Mumbert, "Under any analysis, this scenario not only raises the presumption, but establishes for a certainty that [Plaintiff] possesses confidential information adverse to [Defendants] […]"

Furthermore, Defendants have provided the Court with three examples of legal opinions submitted to state agencies which Plaintiff generated and signed, and which conclude that LRI's sale of interest in parcels of real estate does not fall within the purview of securities regulations. **(Affidavit of Darren Proulx, Exhibits "6," "7" and "8.")** Plaintiffs' lawsuit addresses the *exact subject* of Plaintiff's legal representation and takes the *exact opposite* position to what Plaintiff argued as counsel for LRI.

It is difficult to conceive of a more blatant violation of the precept that an attorney is forbidden from doing "anything which will injuriously affect his former client in any manner in which he formerly represented him." (Wutchumna Water Co. v. Bailey 216 Cal. 564, 573-574 [15 P.2d 505] (1932).) As the court stated in Mumbert, allowing the present litigation to continue "would be contrary to public policy and would undermine the very nature of the attorney client relationship." (Mumbert, 164 Cal. App. 4th at 1168.)

19

## B. Plaintiff's Cause Of Action Under The Dodd-Frank Act Fails As A Matter Of Law

The Dodd-Frank Act provides that "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or an any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower [...]"  (15 U.S.C. section 78u-6(h)(1)(A).)  Here, Plaintiff alleges:

   (1) He was an employee of LRI and LRM from November of 2007 to May of 2010.
      (Second Amended Complaint, page 24, lines 17-19 and page 28 line 19.);

   (2) "Coppola reported information concerning Proulx's violation of Section 10(b) of the
      Exchange Act to the SEC on Saturday, June 26, 2010."  (Second Amended
      Complaint, page 69, lines 13-16.)

   (3) In response, "Proulx caused the 17 associations to discharge Coppola on or after
      February 1, 2011" as "revenge" for Plaintiff's reporting LRI and LRM to the SEC.
      (Second Amended Complaint, page 69, lines 17-22.)

Several of the elements are absent for a cause of action for retaliation under the Dodd-Frank Act.  First, Plaintiff fails to allege that he had an employment relationship with the associations.  In reality, the board of directors for the associations signed a retainer agreement with authorized Plaintiff to perform certain legal services (an agreement which Plaintiff does not attach to the complaint), but Plaintiff was never an employee of any association.  Second, Plaintiff fails to allege that the conditions of his employment at LRI or LRM were in any way altered in retaliation for Plaintiff's purported whistle blowing.  In fact, Plaintiff alleges that he resigned prior to his reporting of LRI and LRM to the Securities and Exchange Commission, and prior to Defendant Proulx purportedly "causing" the associations to "discharge" Plaintiff.

In sum, Defendants were unable to retaliate against Plaintiff by altering the terms or conditions of Plaintiff's employment in violation of the Dodd-Frank Act because Defendants did not employ Plaintiff at the time of the alleged retaliation. Further, Plaintiff was never employed with the associations, nor does he allege that he was so employed. Therefore, Plaintiff has failed to state a claim as a matter of law.

## VI. CONCLUSION

As in Styles and Deukmejian, the Court cannot allow Plaintiff to continue any further. This lawsuit, and particularly, Plaintiff's securities causes of action, constitute a serious breach of the fiduciary responsibilities Plaintiff owes to his former clients. Further, the cause of action under the Dodd-Frank Act for retaliation fails as a matter of law. As such, all of Plaintiff's federal causes of action must be dismissed. This leaves the Court without subject matter jurisdiction to hear Plaintiff's case.

DATED this 5th day of December, 2011.

ALESSI & KOENIG, LLC

Robert A. Koenig (NV SBN 3203)
Ryan Kerbow (NV SBN 11403)
ALESSI & KOENIG, LLC
9500 W. Flamingo, Suite #205
Las Vegas, Nevada 89147
Phone: (702) 222-4033
Fax:    (702) 254-9044
Attorney for Defendants

## REQUEST FOR JUDICIAL NOTICE

Defendants DARREN K. PROULX, LAND RESOURCE INVESTMENTS, INC.,

LAND RESOURCE MANAGEMENT, INC., and MARINA COMMERCIAL OFFICES, LLC,

by and through their counsel of record, Alessi & Koenig, LLC, hereby request the Court to take

judicial notice of DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY

JUDGMENT; COUNTER MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;

MOTION FOR JUDGMENT ON THE PLEADINGS, AFFIDAVIT IN SUPPORT, filed on July

26, 2011 as document 24 in the instant case.  In particular, Defendants request that this Court

take judicial notice of the AFFIDAVIT OF DARREN PROULX attached to said pleading and

the supporting exhibits referenced in that affidavit.

DATED this 5th day of December, 2011.


ALESSI & KOENIG, LLC


Robert A. Koenig (NV SBN 3203)
Ryan Kerbow (NV SBN 11403)
ALESSI & KOENIG, LLC
9500 W. Flamingo, Suite #205
Las Vegas, Nevada  89147
Phone: (702) 222-4033
Fax:    (702) 254-9044
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July, 2011, I electronically filed the foregoing DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR FOR PARTIAL SUMMARY JUDGMENT; REQUEST FOR JUDICIAL NOTICE with the Clerk of the Court by using the CM/ECF system, and that service will be accomplished on all counsel and persons requesting notice by the court CM/ECF system.

An employee of Alessi & Koenig, LLC