UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RALPH STEPHEN COPPOLA; and RALPH
STEPHEN COPPOLA, trustee of the R.S.
COPPOLA TRUST DATED OCTOBER 19,
1995,

    Plaintiffs,

v.

DARREN K. PROULX; LAND RESOURCE
INVESTMENTS, INC.; LAND RESOURCE
MANAGEMENT, INC.; and MARINA
COMMERCIAL OFFICES, LLC,

    Defendants.

3:11-CV-00074-LRH-VPC

ORDER

Before the court is plaintiff Ralph Stephen Coppola's Second Amended Motion for a Temporary Restraining Order (#105[1]).

## I.   Facts and Procedural History

The facts and procedural history of this action have not changed since they were recounted in this court's Order denying Coppola's First Amended Motion for a Temporary Restraining Order (#104). Defendant Land Resource Investments, Inc. ("LRI") is a California corporation in the business of selling fractional interests in undivided parcels of real property. Defendant Land

---

[1] Refers to the court's docket entry number.

Resource Management, Inc. ("LRM") is a Nevada corporation that performs services for the property owners associations that LRI forms for the properties it sells. Defendant Marina Commercial Offices, LLC ("Marina") is a Nevada company that owns the real estate in Sparks, Nevada where LRI and LRM have offices. Defendant Darren Proulx ("Proulx") is a Nevada resident, the sole shareholder and CEO of LRI, the sole shareholder and president of LRM, and the sole and managing member of Marina.

Plaintiff Coppola is a Nevada resident who was employed as in-house counsel for LRI from November 27, 2007 to May 8, 2010. Coppola is a member of the California bar and served as LRI's in-house counsel in Nevada under a limited Nevada law license. In his capacity as counsel, Coppola also represented the property owners associations that were formed to manage the undivided property that LRI sells in fractional interests. Coppola is also himself a purchaser of these interests.

The property owners associations are responsible for paying property taxes, buying insurance, paying for accounting and tax services, as well as for other services relating to the undivided land. The real property owners–the owners of the fractional interests–are each granted one membership interest in the related property owners association through the operation of restrictive covenants.

The property owners associations will have an annual meeting on September 22, 2012, provided that a quorum of association members submit proxy ballots. Coppola now moves to prevent Defendants from "participating, managing, organizing, attending, orchestrating, providing support, voting proxies or otherwise communicating with the boards or attorneys of the [a]ssociations" regarding the September 22 association meeting.

**II.   Discussion**

A court may grant a temporary restraining order upon a showing that (1) irreparable harm will likely occur to the petitioning party absent an injunction, (2) the balance of equities favors the

1 petitioner, (3) an injunction is in the public's interest, and (4) the petitioner is likely to succeed on
2 the merits. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).
3 However, a plaintiff may be awarded a temporary restraining order by establishing "that serious
4 questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's
5 favor" so long as the plaintiff shows that irreparable harm is likely and that an injunction is in the
6 public's interest. *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1049 (9th Cir. 2010)
7 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). To be irreparable, the
8 potential harm must be beyond the reach of a legal or equitable remedy following trial. *See Los*
9 *Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980).

10 Here, Coppola claims that he is a member of "Landbank 008"–that is, he is entitled to an
11 interest in at least one of the associations–and therefore that he will suffer harm if the associations
12 meet on September 22.[2] He claims that the "sanctity" and "legitima[cy]" of his vote will be
13 compromised by the meeting's use of electronic rather than paper ballots, in violation of California
14 law. (Second Amended Motion for Temporary Restraining Order (#105), p. 9:7-8, 9:22.) He claims
15 that the legitimacy of his vote is undermined by defendant Proulx's solicitation of proxy votes, in
16 violation of California law and the associations' bylaws. (*Id*. at 10:20, 12:17-18.) And he claims
17 that he will be injured because the attorneys representing the associations have a conflict of interest
18 because they also represent defendant Proulx. (*Id*. at 14:3-7.)
19 ///

---

[2] Coppola has still not identified the property owners association or associations in which he has an interest by virtue of his membership in Landbank 008. Yet "[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Perhaps anticipating this problem, Coppola claims that the associations' bylaws are all identical and that the associations act in lockstep such that injury to one association is effectively injury to all associations. (Second Amended Motion for Temporary Restraining Order (#105) at 9:23-23, 10:21-22, 11:4-5, 12:19-20, 14:6-7.) This bare allegation is not sufficient to demonstrate that Coppola would likely prevail on the merits with respect to the associations in which Coppola does not have an interest. Therefore, the court addresses this Order to any injunctions relating to the association(s) in which Coppola may have an interest.

Coppola has not demonstrated that an injunction is appropriate to right these alleged wrongs. First, Coppola has not alleged the "concrete and particularized" harm for which an injunction is appropriate. *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Coppola's alleged harms revolve around the legitimacy of the votes cast at the September 22 meeting, but Coppola has not indicated how an illegitimate vote would harm him. Coppola's only specific injury is that "Proulx is seeking further authority to foreclose on people who have not paid [a]ssociation dues," but Coppola does not allege that he is one of these people. (Second Amended Motion for Temporary Restraining Order (#105) at 14:24-25.) Nor does he explain how an illegitimate vote on this authority would harm him even if he had not paid the correct dues. Without a concrete and particularized injury, moreover, Coppola is unable to demonstrate that legal and equitable remedies following a trial are inadequate. *NFL*, 634 F.2d at 1202 (noting that the petitioner has the burden of showing that the complained-of harm is not remediable by legal remedies like damages). Thus, Coppola has not made the "clear showing" necessary to justify the "extraordinary remedy" of a temporary restraining order. *Winter*, 555 U.S. at 22,

Second, even assuming Coppola is likely to prevail on the merits, Coppola has elected a disproportionate remedy. In deciding whether to grant a temporary restraining order, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987).  Here, for example, Coppola seeks to prevent *all* communication between Defendants and the associations in order to remedy proxy ballot violations and a potential conflict of interest. This remedy is excessive in relation to these alleged injuries. Therefore, Coppola has not shown that the balance of hardships weighs in his favor. *See Dogloo, Inc. v. Doskocil Manufacturing Co., Inc.*, 893 F. Supp. 911, 917 (C.D. Cal. 1995).

///

///

IT IS THEREFORE ORDERED that Plaintiff's Second Amended Motion for a Temporary Restraining Order (#105) is DENIED.

IT IS SO ORDERED.

DATED this 21st day of September, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE